PROVIDED TO
CHARLOTTE CI
ON 5/20/2020 FOR MAILING

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT IN AND FOR OKEECHOBEE

COUNTY, FLORIDA

472020CA000098

REGINAL L. HOLSTON,
             Plaintiff,

V.

MARK HARRISS, RYAN ENGLISH, SERGEANT

MAGUIRE, DAVID BARRON, LARS SEVERSON,

NURSE E. ORTIZ, D. BROWN, A. WEISS, J. CRUZADO,

L. DUGAN-MCCLURE, NURSE ROMULUS, B. REMBERT,

A. ESCHEVARRIA, SERGEANT SELLERS, CAPTAIN WELLS,

C. CHRISTMAN, THOMAS REID, RICKY DIXON, INSPECTOR BATY,

W. CANTY, SERGEANT ACOSTA, H.N. BHADSA, S. SIEGLER, TRINITY

FOODSERVICES, INC., AND CENNRION OF FLORIDA,
                Defendants.

FILED FOR RECORD
OKEECHOBEE COUNTY FL
2020 JUN -1 PM 1:04
SHARON ROBERTSON
CLERK OF CIRCUIT COURT

VERIFIED CIVIL RIGHTS COMPLAINT FOR TORTURE AND DEMAND FOR JURY

TRIAL

COMES NOW Reginal Holston, pro se, and sues the defendants above styled

and charges as follows:

I. JURISDICTION

A. Federal question

   1. This court has statutory jurisdiction under the following

statutes:

EXHIBIT A

28 U.S.C. 1331, 28 U.S.C. 1343, 42 U.S.C. 1983, and 18 U.S.C. 1964(c).

B. Supplemental Jurisdiction

1. This court has supplemental jurisdiction to decide pendent claims, pendent party claims, inter alies, that arise from a common nucleus of operative fact. 28 U.S.C. 1367. All conditions precedent have been satisfied.

2. This court has state common law jurisdiction. Section 2.01, Florida Statutes (2019).

## II. VENUE

A. District

1. The tortious acts in this case were committed at Okeechobee Correctional Institution in Okeechobee Florida, a city with Okeechobee county and the territorial jurisdiction of the Southern District of Florida.

## III. PARTIES

A. Plaintiff

2. Reginal L. Holston was at all times germane hereto a prisoner under execution of sentence and resident at Okeechobee Correctional Institution.

2

B. Defendants:

1.  Mark Harriss is employed at Okeechobee Correctional Institution (OCI) as colonel and chief of security and did act under color of law at all times germane hereto and in bad faith.

2. Sergeant Maguire is employed at OCI as a correctional officer sergeant and did act under color of state law at all times germane hereto and did act in bad faith.

3. David Barron is employed at OCI as a correctional officer sergeant and did act under color of state law at all times germane hereto and did act in bad faith.

4. Lars Severson is employed at OCI as a Warden and is charged with the care, custody, and control of inmates. At all times germane hereto, he did act under color of state law and in bad faith.

5. Nurse Romulus is employed by Centurion Healthcare Services of Florida, LLC and is an agent of Florida Department of Corrections (FDOC) and provider medical services to prisoners. At all times germane hereto, she did act under color of state law and in bad faith.

3

6. E. Ortiz is employed by Centurion Healthcare Services of Florida, LLC and is an agent of FDOC and provides medical services to prisoners. At all times germane hereto, he did act under color of state law and in bad faith. (Ex. B)

7. D. Brown is employed by Centurion Healthcare Services of Florida, LLC and is an agent of FDOC and provides medical services to prisoners. At all times germane hereto, he did act under color of state law and in bad faith.

8. A. Weiss is employed by Trinity Food Services Incorporated and is an agent of FDOC and is the food service supervisor or director and is responsible for feeding ███ inmates at OCI. At all times germane hereto, A. Weiss did act under color of state law and in bad faith.

9. J. Cruzado is a certified correctional officer employed at OCI and did act under color of state law at all times germane hereto. Further, he did act in bad faith.

10. L. Dugan-McClure ("McClure" or "Dugan-McClure") is a correctional officer sergeant who is employed at OCI and did act under color of state law at

4

all times germane hereto. Further, he did act in bad faith.

11. D. Rembert is a correctional officer sergeant employed at OCI. She is responsible for keeping track and inventory of inmates property. At all times germane hereto, she did act under color of state law and in bad faith.

12. Sergeant Eschevarria is a correctional officer sergeant employed at OCI; and at all times germane hereto, he did act under color of state law and in bad faith. (Ex. F)

13. Sergeant Sellers is a correctional officer sergeant employed at OCI; and at all times germane hereto, he did act under color of state law and in bad faith.

14. Captain Wells is a correctional officer captain employed at OCI; and at all times germane hereto, he did act under color of state law and in bad faith.

15. C. Christman is a correctional officer employed at OCI; and at all times germane hereto, he did act under color of state law and in bad faith.

5

16. Thomas Reid is the regional director who oversees at least five prisons, including OCI. He is responsible for employee terminations, disciplinary actions, and uses of force. He is employed by the FDOC. At all times germane hereto, he did act under color of state law and in bad faith.

17. Ricky Dixon is the Deputy Secretary of Institutions in FDOC. He is responsible for creating and implementing use of force policy. He oversees the five Regional directors. He is the final authority respecting employee discipline and use of force determinations, inter alia. He is employed by FDOC. At all times germane hereto, he did act under color of state law and in bad faith.

18. Inspector Baty is a certified law enforcement officer who is employed by the Inspector General's office within the FDOC. The inspector's duties are statutory and include investigating crime and uses of force, ensuring proper living conditions including quality of the food served. At all times germane hereto, he did act under color of state law and did act in bad faith.

19. W. Canty is a correctional officer sergeant employed at OCI. At all times germane hereto, he did act under color of state law and in bad faith.

6

20. Sergeant Acosta is a correctional officer sergeant employed at "OCI". At all times germane hereto, he did act under color of state law and in bad faith

21. H.N. Bhodja is a licensed medical physician employed by Centurion of Florida, LLC and is an agent of FDOC. At all times germane hereto, he did act under color of state law and in bad faith (Ex. B) compare with (Ex. C) and (Ex. D).

22. S. Siegler is employed at "OCI" as the assistant warden of programs At all times germane hereto, he did act under color of state law and in bad faith.

23. Centurion of Florida is the statewide privatized healthcare provider that "DOC" has contracted with to provide healthcare services for prisoner in DOC's custody. Centurion does act under color of state law and in bad faith.

24. Trinity Food Services incorporated is the statewide privatized food service and canteen provider that "DOC" has contracted with to provide feeding and canteen operations for inmates in DOC's custody. Trinity does act under color of state law and in bad faith.

25. Ryan English is a classification officer employed at Charlotte correctional institution and did act under color of state law and in bad faith at all times germane hereto.

## IV. GENERAL ALLEGATIONS

### A. FACTS

1. On December 20, 2019, Mr. Holston proceeded to medical and was met by nurse Remulus who refused him wound care.

2. Mr. Holston then advised that he intended to exercise his first Amendment right by filing an administrative grievance against her with the Florida Department of Health. She then promptly provided her name, sarcastically and said I got you.

3. Mr. Holston then left medical and proceeded to the law library.

4. After leaving the law library, Mr. Holston then met Colonel Harriss and inquired about sending 7,000 dollars home to his family.

5. Colonel Harriss advised that he authorizes special withdrawals everyday.

6. Colonel Harriss then inquired as to where Mr. Holston acquired so much money.

7. In reply, Mr. Holston rede him that he

8

settled a Federal lawsuit in Holston v. Laflam, et al,
8:14-cv-704-T-35JSS. Further, that the mercy was
legal and authorized by Federal Judge Scriver and
the Attorney General.

8. He then inquired as to whether Mr. Holston was
a jailhouse lawyer writ writer; whereto Mr. Holston
responded affirmatively.

9. Angrily, he then said "Well, you aint gon
be writing no writs and harassing my officers
on this compound... You aint gon spend none of that
money on my compound. No pussy ass judge,
Attorney General, or jury is gon run my compound.
Umma fix you to where you can't write no writs"
or words to that effect and did use substantially
similar language.

10. The next day, on December 21, 2019, Mr. Holston
exited his cell—117L in g dorm wing one and
proceeded to the officers station to have his
special withdrawal signed by the officer.

11. As Mr. Holston waited on the officer and after
Mr. Holston had given the officer the special withdrawal
form to sign, the officer picked up the phone and          9

Said "Zena"

12. He then copied information off the form and handed it back to him.

13. The officer then summoned gang members to the window and posted Mr. Holston's family information on the window.

14. The inmates then requested special withdrawal forms.

15. Mr. Holston then quickly departed the dorm to go see the colonel.

16. As Mr. Holston proceeded through center gate and into zone one, he observed colonel Harris and sergeant Maguire standing in front of the chapel who kept glancing at him, furtively.

17. Mr. Holston proceeded through zone one and egressed medical and was met by Nurse Romulus who denied him wound care; and he the egressed medical and proceeded to the law library.

18. As Mr. Holston approached the law library, he

10.

observed Sergeant Maguire and Colonel Harriss still standing in front of the chapel casting furtive glances at him.

19. Upon arriving at the law library, Mr. Holston waited for Sergeant Maguire to permit him to ingress, since Maguire was the security officer assigned to zone one.

20. After a few minutes, Maguire proceeded to approach the law library; whereupon, Mr. Holston explained that he needed to see the Colonel; and Maguire advised that the Colonel had to leave.

21. By that time, the Colonel was walking toward the front gate in a nervously hurriedly and furtive manner.

22. Mr. Holston was allowed to ingress the law library where he awaited the Colonel's return from the gatehouse.

23. About five minutes later, Mr. Holston observed the Colonel egress the gatehouse and ingress or regress zone one.

11

24. At that time, Mr. Holston requested the Librarian to egress the library, and he summoned Maguire.

25. Sergeants Maguire and Barron then appeared and opened the door; and as Mr. Holston exited, the Colonel was approaching.

26. Mr. Holston requested to speak with the Colonel; and by that time, the Colonel was in hearing distance, and when Mr. Holston asked the Colonel to sign and approve his special withdrawal request, said Colonel stated that he was not approving any special withdrawals on the weekend.

27. Maguire and Barron began to escort Mr. Holston toward medical and Centergate, while Colonel Harris furtively and nervously turned toward the front gate.

28. As they approached medical, Maguire stated that he hated "fuckboy jailhouse lawyers" and that he was going to cut his "fucking hands off" or words to that effect.

29. Whereat, Maguire did give Mr. Holston an ultimatum: "either go through centergate and let the gang members stab you up or we can do it our way—meaning let the correction officers kill Mr. Holston.

30. Before Mr. Holston could respond, Barron then pepper sprayed Mr. Holston.

31. Mr. Holston immediately fell to the ground in complete submission.

32. Maguire then placed his knee in Mr. Holston's back and began punching Mr. Holston in his eyes with clenched fists maliciously and repeatedly and continually called him a nigger.

33. As Maguire moved down to Mr. Holston's rearend, Barron moved in and placed his knee in Mr. Holston's back and handcuffed Mr. Holston. Ramulus looked out of the medical window.

34. Maguire then pulled Mr. Holston's pants down and sadistically inserted either his hand or an object in Mr. Holston anorectal cavity; Mr. Holston did experience extreme pain and discomfort.

13

35. After that violent episode, both Maguire and Barron walked Mr. Holston into medical where they met nurse Romulus.

36. Maguire then stated "Is this the one?" And observing Mr. Holston's beat up condition, gleefully replied, with an evil, malicious and sadistic grin, "Yes!"

37. Maguire and Barron then ushered Mr. Holston out of medical to Bravo dormitory and into wing one.

38. Maguire placed Mr. Holston in shower B-3, which is the decontamination shower, and removed the handcuffs.

39. After consulting with Harris, Wells, Barron, Bugan-McClure, J. Cruzado, Christmas, and nurse Ortiz, and instead of having Mr. Holston disrobe and decontaminate as required by law, Maguire ordered Mr. Holston to recuff up while Mr. Holston was still covered in pepper spray.

40. As Maguire placed Mr. Holston in handcuffs

14

a second time while Mr. Holston was covered and drenched in pepper spray. Cruzado, Dugan-Mccara, Christmas, Wells, Nurse Ortiz, and Bacon employed the "blocking technique"- this is a tactic that prison officials engage in to prevent and avoid being surveilled by cameras in a dorm wherein they form a tight huddle or group around a door or inmate so as to block the camera's view and recording of their illegal actions.

41. Wells instructed Maguire to "put em on tight" or words to that effect, whereupon, Maguire put the cuffs on until the clicking stopped.

42. Whereupon, Mr. Holston's hands instantly became numb.

43. Maguire did maliciously and sadistically tighten the handcuffs past the last notch to cause Mr. Holston significant and permanent injury at the behest of Wells.

44. Maguire then hitched and attached Mr. Holston's manacled hands to a handcuff cable or hitch so as to restrict Mr. Holston's movement.

15

45. Upon hitching and attaching Mr. Holston to the handcuff cable or hitch, all moved backward and the handcuffs began to heat up and burn Mr. Holston's wrists, in a heinous, atrocious, and cruel manner.

46. Mr. Holston began screaming, yelling, and begging Defendants to stop because he was burning and it was hurting. They all laughed

47. The heat cooled down and Ortiz and Maguire began to began amputating Mr. Holston's hands by cutting him on the outside of his wrists.

48. When Mr. Holston began to pull away, Maguire pulled the hitch wire or cable to scrape off the burned skin in an effort to cause further injury to Mr. Holston in an atrocious, malicious, and heinous fashion.

49. They then backed away and turned up the heat again, and Mr. Holston's wrists began to burn again, in a cruel and unusual manner

50. While burning, Mr. Holston continually

16

tried to pull and break the hitching cable.

51. When the cuffs cooled down again, colonel Harriss repeated the same pulling tactic maguire had done in a malicious effort to cause Mr. Holston further injury by scraping the burned skin off his wrists in a cruel and sadistic manner. They did record some on their phones

52. After a short tug of war with colonel Harriss Mr. Holston, who was handcuffed behind his back the entire time, pulled colonel Harriss' arm through the flap and colonel Harriss cut his arm on the shower flap in his sadistic attempt to inflict harm on Mr. Holston.

53. Colonel Harriss then departed to clean himself up. He then instructed that the torture continue.

54. Mr. Holston continued to burn and pull to free himself from the burning excruciating torture. All the while, they all laughed gleefully and recorded it.

55. After much pulling, Mr. Holston miraculously pulled the hitching cable loose; and the entire time, Mr. Holston was

handcuffed behind his back.

56. Wells then ordered Cruzado to pepper spray Mr. Holston, maliciously and sadistically. And he did carry out said evil order

57. After awhile, Wells ordered Cruzado to pepper spray Mr. Holston a second time, maliciously and sadistically, while cuffed behind his back.

58. At all times, Mr. Holston was handcuffed behind his back and compliant and fretful.

59. Maguin, Cruzado, and others did leave and depart and retun in riot or extraction team gear i.e., helmets, shields, padding, etc to extract Mr. Holston, who was handcuffed behind his back the entire time, from the 4x6 feet shower.

60. All said extraction team members did open said shower and enter and began to beat Mr. Holston after throwing him to the floor, srcelly.

61. After that, said extraction team violently and forcibly removed said compliant and burned

18

Mr. Holston from the decontamination cell.

62. Instead of decontaminating Mr. Holston, they moved Mr. Holston to cell B1102 — an empty cell without a bunk — threw him on the floor violently and maliciously, torturously, and sadistically sodomized and beat him while he burned from the electrocutionary hot hand cuffs intensified atrociously by the pepper spray he was drenched in.

63. Mr. Holston was beat into oblivion or until he passed out.

64. They then violently lifted Mr. Holston off the floor and dragged him to the outside of the decontamination shower, cut his clothes off of him, and hosed him down — Bull corner style.

65. All the while, Mr. Holston was handcuffed behind his back in excessively tight handcuffs.

66. Then, they ushered Mr. Holston back to cell B1102 and threw him in the empty with only boxers on with feces and blood all over his waist and burned skin.

67. At no time did any of the Defendants escort Mr. Holston to see a nurse or doctor for a post use of force exam, as required by law. (Ex. B)

68. Nurse E. Ortiz was present at all times and did participate in the cruel and tortuous acts.

69. E. Ortiz did state to another while Mr. Holston was in cell B1102 " when he sticks his arms out just slice him" and Mr. Holston did observe him retrieve a scalpel like object from his pocket.

70. Both Ortiz and Dugan-McClure did terrorize Mr. Holston into refusing medical treatment whereby Dugan McClure threatened to put Mr. Holston back on the hitch or handcuff cable (Ex. B)

71. Ortiz did fail to report Mr. Holston's injuries on the required diagram of injury and Emergency Room Record in an effort to conceal their collusion. (Ex. B) but see (Ex. C and D).

72. Harriss and Wells did "obtain or use" Mr. Holston's property, Feloniously, whereby they

20

placed mr. Holston on strip and deprived him of
all clothing, bedding, and property for over 72
hours.

73. On December 24, 2019, Mr. Holston was
taken to medical to see nurse J. Louis and Dr.
Bhadjaby W. Conty (Ex. C)

74 W. Conty did refuse to allow nurse Louis
to properly treat Mr. Holston and directed her not
to cover his wounds. (Ex. C)

75. Nurse Louis did determine that mr.
Holston had deep wounds in each wrist and one
wrist had an incision in his left wrist that
was 2 cm deep and in the right wrist
1.5 cm deep and that Mr. Holston needed sutures
and antibiotics further that infection set in. (Ex. C)

76. Mr. Holston then saw Dr. H.N. Bhadja
who superficially examined Mr. Holston and
stated that the wounds were superficial and
self inflicted and did not so much as prescribe
any antibiotics, albeit he needed antibiotics. (Ex.C)

77. He merely directed nurse Louis to wrap Mr.

21

Holston's wrists up which ensured that infections would set in. (Ex. C)

78. Ortiz and Brown continued to wrap mr. Holston's severe cuts and burns while infection set in and festered, despite Nurse Bowers instructions not to.

79. Mr. Holston's wound began to smell of putrefaction. (Ex. D)

80. They designedly failed to alert anyone to mr Holston's infectious state. (Ex. C) and (Ex. D)

81. They did use their medical training to cause mr. Holston death or bone infection.

82. A female nurse saw his wound and scheduled him to see Dr. Bhadja, and she began him taking the antibiotic levaFloxacin until he saw Dr Bhadja. (Ex. D)

83. When he saw Dr Bhadja, both wrists were smelling putrid and were running with pus. (Ex. D)

84. Dr. Bhadja then commented that "the cuffs were too tight" and prescribed an insufficient 14 day antibiotic regimen of levaFloxacin.

22

85. The nurses took photos of the badly infected wounds and sent them to the wound care specialist.

86. At the end of the 14 day antibiotic regimen, pictures were taken of the wounds ~~and sent them~~ and sent to the wound care specialist.

87. As part of Mr. Holston's wound care, his wounds had to be packed with betadine strips to rid his wrists of the infections. (EX. e)

88. Dr. Bhaja deliberately and conspiratorially refused to suture Mr. Holston's wrists with deep incision wounds.

89. Mr. Holston's burn wounds and deep cuts were so infected, the wound care specialist ordered a complex procedure that required (1) washing and scrubbing the wounds, (2) spraying a disinfectant spray on the wounds, (3) application of an antibacterial gel for open deep burns and cuts, (4) packing the wounds with gauze drenched in dakins solution, and (5) a final wrap with dry gauze. (Ex. e).

90. A week after Mr. Holston stopped taking the antibiotics, he became infected again; an Noe at charlotte correctional Insti...

the Brevard county jail continued the antibiotic regimen. (Ex. e)

91. McClure, Harriss, Wells, Escheverra, Acosta, Rembert, and sellers Feloniously "obtained or used" Mr. Holston's property for well over 30 days. (Ex. f)

92. Mr. Holston was placed in cell B1102 and made to sleep on the floor without clothing, any bedding, or a bunk for over 3 days.

93. Further, Severson, Siegler, Harriss and others all observed Mr. Holston's abused state and sleeping on the floor and did conspire and confederate to leave him in such miserably wretched state.

94. A. Weiss and severson did refuse to feed Mr. Holston a full coarse meal and Feloniously "obtain or use" his coffee, milk, and chicken on the bone along with acosta, McClure, W. conly and others.

95. Conly, Acosta, McClure and others conspired to leave Mr. Holston in an infectious state by their not reporting his dangerously infectious condition and his obviously abused state to the proper authorities

24

96 Additionally, in violation of his privacy rights, Caty, McCura, Acosta, and others would conspiratorily supervise Mr. Holston's medical visits to ensure that Mr. Holston did not report any abuse; and they would report Mr. Holston's condition back to Harriss.

97. As further retaliation and concealment of their unlawful and unconstitutional excessive uses of force, Wells, Siegler, Harriss, and Severson agreed and combined to write him false disciplinary reports for battery and place him on close management one without due process of law.

98. All Defendants falsified disciplinary, incident, use of force, medical, Mins, and E.A.C reports or did fail to report their actions or Mr. Holston's severe injuries to conceal and hide their tortuously illegal conduct, in violation of section 944.35 (4)(b), Fla. stat.

99. Mr. Holston suffered — and continues to suffer — significant and severe burns around his wrists; permanently unsightly cut wounds on the outside of both of his wrists; numbness in his hands and digits; stiffness in his fingers; swelling of his joints in his digits; and pain in his wrists and hands; infections and swelling of his hands

25

100. Mr. Holston has suffered—and continues to suffer—extreme discomfort, nightmares, night sweats, lack of mobility in his wrists; lack of the ability to grab and hold objects; pain and suffering; embarrassment; wounded feelings; mental and emotional distress and mental anguish. Further, he suffers from arthritis (Ex. e) (prescribing Prednisone to relieve swelling and Ibuprofen for 30 days)

101. On January 22, 2020, Mr. Holston was advised Captain Rodriguez that the Attorney General's ("AG") was conducting a PREA investigation, and Rodriguez took pictures of Mr. Holston's wounds and forwarded them to the "AG's" office by 5:00 p.m. that day.

102. Then, on January 30, 2020, Mr. Holston was transferred to Charlotte C.I. While doing his intake, Mr. English was present and requested to know the name of the Colonel at Okeechobee C.I., and Mr. Holston responded "Mark Harriss." He then rejoined "that used to be my sergeant," (with emphasis).

103. English then said, "those of you assigned to my dorm are advised I will not be answering questions about you if your family calls. If they call and ask how you're doing, I will not answer their questions. So tell them don't call," or words to that effect.

104. Mr. English is assigned as Golf dorm's classification officer.

105. All of Mr. Holston's property, including his law books, was missing, as they inventoried Mr. Holston's property.

106. Mr. Holston was assigned to and was taken to Golf

26

dorm.

107. On February 3, 2020, Mr. Holston filed a retaliation grievance on Mr. English with central office in Tallahassee.

108. On February 6, 2020, Mr. Holston transferred to the Brevard County Jail, and Mr. English failed to send Mr. Holston's funds in retaliation. See Holston v. Hardy, et al, 05-2020-CA-024711 (Brevard County pending).

109. On April 21, 2020, Mr. Holston with a demand letter under 772.11(1), Fla. Stat. whereby he knowingly "obtained or used" Mr. Holston's funds, to wit: 10,500 dollars, with felonious intent to temporarily deprive Mr. Holston of the use or right to said property in violation of Sections: 877.014(1) and 772.102(1)(a) 20, Fla. Stat.

110. Later that day, English appeared at Mr. Holston's cell door and threatened to write Mr. Holston a Disciplinary Report for extortion.

111. On April 27, 2020, Mr. Holston filed a second grievance for retaliation based on the April 21, 2020 retaliatory threat.

112. On April 29, 2020, Mr. Holston was served a retaliatory Disciplinary Report ("DR") for extortion (#510-200794)(Ex. H) that contained false allegations allegedly contained or written in Mr. Holston's demand letter; specifically, Mr. English falsely alleged that Mr. Holston's letter threatened to "arrest" him or have him arrested. To be sure, the word "arrest" appears nowhere in Mr. Holston's letter attached to Ex. H. The allegation was ignominiously false and contrived.

113. Holston was subsequently advised that the DR was dismissed.

114. On May 5, 2020, Mr. Holston filed a third grievance based on retaliation relating to the dismissed retaliatory false DR.

27

## V. LEGAL THEORIES

**A. Count One:** First Amendment Retaliation

1. This is an action for First and Fourteenth Amendment retaliation pursuant to 42 U.S.C. 1983.

2. All conditions precedent have been satisfied.

3. Paragraphs I-III. B.1-3, 5-6, 9, 14-15; IV. A. 1-100 are realleged.

4. Mr. Holston did engage in constitutionally protected speech by filing grievances and then filed his legal actions in case number: Holston v. Leflore, et al, 8:14-cv-704-T-35JSS and Holston v. Leflore, et al, 8:15-cv-2157-T-36MAP

5. On December 20, 2019, Mr. Holston did advise Nurse Romulus that he intended to exercise his right to file a grievance against her for her failing to give him wound care.

6. With retaliatory animus, Harriss, Wells, Maguire, Burren, Ortiz did with evil intent maliciously sodomize, pepper spray, beat, steal his food and property and deny him access to medical care, inter alia.

7. Such retaliatory actions had the effect of terrorizing and intimidating Mr. Holston and would likely deter a person of ordinary firmness from engaging in such constitutionally protected speech.

8. Defendants engaged in such evil acts for the simple reason Mr. Holston engaged in the constitutionally protected activity stated above.

9. The Defendants did have evil motive or intent and such acts were characterized by reckless or callous indifference to Mr. Holston's federally protected rights.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.

**B Count Two:** Constitutional Sexual Harassment: Maguire — Medical: Romulus, Harriss, and Burren.

1. This is an action under the 14th Amendment for sexual harassment pursuant to 42 U.S.C. 1983

2. Paragraphs I-III. B. 1-3, 5; IV. A. 1-37, 97-100 are realleged.

3. Maguire did abuse his power by conducting an illegal, unconstitutional body cavity search under the pretense of searching for contraband.

4. Burren held Mr. Holston down and handcuffed him while Harriss stood afar and looked on and Romulus watch through the window.

5. Maguires actions were an abuse of power and said unconstitutional

28

bodily integrity and did violate his right to privacy.

6. Defendants did have malicious and evil intent and did display a reckless and callous disregard for Mr. Holston's federally protected right to freedom from unreasonable intrusion into Mr. Holston's bodily integrity

7. Mr. Holston has suffered severe emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.

C. Count Three: Constitutional Sexual Harassment: Maguire – B1102L: Harriss, Wells, Barren, McClure, Christman, Cruzado, and others.

1. This is an action for Constitutional sexual harassment under the 14th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I–III. B.1–3, 6, 9–10, 14–15; IV. A.1–100; V. B.3, 5–7 are realleged

3. Defendants Barren, Cruzado, and others did forceably take Mr. Holston in empty cell B1102L and hold Mr. Holston down while Maguire did a body cavity search and beat and punch Mr. Holston while he was in restraints.

4. Mr. Holston was still drenched in at least three doses of pepper spray.

5. McClure and others stood and watched with glee.

6. Said acts were egregious and outrageous

7. Such actions may be said to shock the contemporary conscience.

8. Accordingly, said acts offend those canons of decency and fairness that express notions of justice.

9. Such acts were malicious and sadistic

10. Maguire did abuse his power.

11. He did exhibit a willful, wanton, deliberate, and reckless disregard for Mr. Holston's federally protected rights.

12. Mr. Holston suffered severe emotional distress and mental anguish in light such acts of cruelty.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.

D. Count Four: 8TH Amend Excessive Force- Maguire: medical

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983

2. Paragraphs I, II, III A 2, III B 2, IV A 1-32, 98-100 are realleged.

3. All conditions precedent have been satisfied.

4. Maguire did maliciously and sadistically beat and punch Mc Holton in the face and eyes without any provocation and any penological justification and for the very purpose of causing and inflicting pain and cruel and unusual punishment.

5. Further, he did falsify use of force, incident, misc, and E.A.C. reports to conceal his actions or did omit to file said lawfully required reports to conceal his actions.

6. Mc Holton did suffer and sustain two black eyes, a swollen face, mental and emotional distress, physical discomfort, pain and humiliation.

WHEREFORE, premises considered, Mc Holton Demands compensatory and punitive damages, costs,

30

and a trial by jury.

E. Count Five: 8th Amend. Excessive Force - Maguire Buggery.

1. This is an action for excessive force under the 8th Amendment for buggery pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A.1, III. B.2, IV. A.1-34, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Maguire did maliciously and sadistically bugger and sodomize Mr. Holston in front of medical without his consent.

5. Said buggery and sodomization constitutes excessive, unlawful, and unconstitutional force as a matter of constitutional law, since it could not have served any physical purpose.

6. Said force was employed to cause Mr. Holston shame, harm, discomfort, pain, humiliation, and embarrassment which Mr. Holston did suffer.

7. Additionally, Mr. Holston suffered mental and emotional injury.

31

WHEREFORE, premises considered, Mr. Holston Demands five million dollars in compensatory damages, five million dollars in punitive damages, costs, and a trial by jury.

**E. Count Six:** 8TH Amend. Excessive Force - Maguire - Buggery - B1102

1. This is an action for excessive force under the 8th Amendment for buggery in cell B1102 pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1, III. B2, IV.A.2-67, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Maguire did maliciously and sadistically bugger and sodomize Mr. Holston in empty cell B1102 without his consent. Further, Maguire did falsify his reports.

5. Said buggery and sodomization constitutes excessive, unlawful, and unconstitutional force as a matter of constitutional law, since it could not have served any penological purpose.

6. Said force was employed to cause Mr. Holston, shame, harm, discomfort, pain, humiliation, and utter embarrassment which Mr. Holston did suffer in addition to mental and emotional injury.

WHEREFORE, premises considered, Mr. Holston Demands five million dollars in compensatory damages, five million dollars in punitive damages, costs, and a trial by jury.

32

**G. Count seven:** 8th Amend. Excessive Force - Maguire: B1102

1. This is an action for excessive force under the 8th Amendment in cell B1102 pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A.1, III. B.1-2, 14, IV. A.1-6, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Maguire did maliciously and sadistically beat mr Holston while he was handcuffed behind his back and compliant, while he was on the floor.

5. Said force was gratuitous and without penological justification and was done at the behest and direction of Harriss and wells.

6. Further, Said force was intended to — and did cause — humiliation, shame, wounded feelings, embarrassment, pain and discomfort, mental and emotional distress. Loss of feeling in both hands, permanent scarring, and limited vision in his left eye. Also, arthritis.

WHEREFORE, premises considered, Mr. Holston prays for compensatory and punitive damages, costs, and a trial by jury.

33

## H. Count Eight: 8th Amend. Excessive Force - Maguire: Tight Cuffs

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A. 1, III. B. 1-2, 14, IV. A. 1-43, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. At the behest of Wells and Harriss, Maguire did maliciously and sadistically tighten both handcuffs around Mr. Holston's forearm just above his wrists.

5. Said excessively tightened cuffs did cut off all circulation to Mr. Holston's hands. Further, said excessively tightened cuffs caused Mr. Holston significant pain, discomfort, and injury.

6. Mr. Holston now suffers from arthritis, swelling, and numbness in his hands. He cannot grasp tightly, he has poor circulation in both hands. He cannot write for extended periods. His hand become cold and rigid. He experiences pain in them in cold weather. These are permanent injuries.

7. Mr. Holston has suffered mental, emotional, and psychic trauma as a result of Defendants' actions.

WHEREFORE, premises considered, Mr. Holston prays for compensatory and punitive damages, costs, and a trial by jury.

34

I. Count Nine: 8th Amend. Excessive Force—Maguire: Burning

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A. 1, III. B. 2, IV. A. 1-55, 97-100 are realleged

3. All conditions precedent have been satisfied.

4. Maguire did torturously, evilly, atrociously, heinously, cruelly, maliciously and sadistically burn Mr. Holston while he was handcuffed behind his back with excessively tight handcuffs to ensure continuity of the burning. Further, said acts were satanic and inhumane.

5. Said burning of Mr. Holston's arms were done without any phological or legal justification and was done to make Mr. Holston just plain old suffer while all present watched with glee and recorded it on their cell phones.

6. Mr. Holston suffered burn marks around his wrists 360° that form continuous circles. Additionally he suffered nerve damage, swelling, numbness, loss of a tight grip, and pain in his hands. Further he was prescribed Prednisone and ibuprofen (Ex. D and E)

7. Mr. Holston has suffered mental and emotional injury.

WHEREFORE, premises considered, Mr. Holston prays for compensatory and punitive damages, costs, and a trial by jury.

35

J. COUNT TEN: 8TH Amend. Excessive Force- Maguire and Ortiz. Left wrist.

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A.1, III. B.2, 6', IV. A.1-47, 97-100 are realleged and incorporated by reference.

3. All conditions precedent have been satisfied.

4. Maguire did maliciously and sadistically cut Mr. Holston's left wrist in an abortive attempt to amputate his writ writing hand. (Ex. C and Ex. D)

5. Said evil and sadistic cutting of his hand was done without any penological justification and for the sole purpose of torturing him for exercising his first Amendment rights.

6. Mr. Holston suffered infections, permanent scarring, nerve damage, arthritis, swelling, and joint and hand stiffness in addition to numbness and pain.

7. Further, Mr. Holston has suffered emotional and mental distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

36

K. Counter Eleven: 8Th Amend. Excessive Force- Maguire and ortiz: right wrist.

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1, III.B.2, 6; IV.A.1-47, 97-100; V.J.3, 5-7 are realleged.

3. Maguire did maliciously and sadistically cut Mr. Holston's right wrist in an abortive attempt to amputate his writ writing hand. (EX. C and EX. D)

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

L. COUNT Twelve: 8TH Amend. Excessive Force - Maguire: extraction beating in shower

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, ■ II, III. A. 1, III. B. 2.; IV. A. 1-60, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Maguire did maliciously and sadistically beat and punch Mr. Holston in his face and about the head repeatedly. (EX. B)

5. Said beating served no legitimate penological purpose except to cause him pain and discomfort.

6. Mr. Holston suffered physical pain, emotional distress, two black eyes, a broken tooth, and partial blindness in his left eye, inter alia, and arthritis.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.

M. Count Thirteen: 8th Amend. Excessive Force- J. Cruzado: First Pepper spray.

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983

2. Paragraphs I, II, III.A.1, III.B.9; IV.1 A.1-56, 97-100 are realleged.

3. All conditions precedent have been satisfied

4. J. Cruzado did maliciously and sadistically pepper spray Mr. Holston while he was burned, beaten, and still drenched in the pepper spray Burton sprayed him within front of medical.

5. Said act was done without any penological justification and was designed to further inflict cruel, unusual, and inhumane treatment and to make him suffer needlessly.

6. Mr. Holston suffered physical pain and discomfort, humiliation, emotional and mental distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

39

N. Count Fourteen: 8th Amend. Excessive Force - J. Cruzado: Second pepper spray.

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragrgraphs V.M.1-6 are realleged.

3. All conditions precedent have been satisfied.

4. J. Cruzado did maliciously and sadistically pepper spray Mr. Holston a second time while he was cuffed behind his back and compliant, which was done at the command, behest, and direction of wells.

5. Said malicious act was done without any pretense of legal or penological justification and was inflicted to impose cruel and unusual punishment on Mr. Holston and for the sole purpose of causing Mr. Holston pain and unbearable suffering.

6. Mr. Holston suffered physical pain, burning, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

O. Count Fifteen: 8th Amend. Excessive Force - D. Barron: Pepper Spray in front of medical.

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A.1; III.B.3; IV. A 1-33, 97-100 are realleged.

3. All conditions precedent have bee complied with or satisfied.

4. David Barron did maliciously and sadistically pepper spray Mr. Holston against his will while he was non resisting and compliant.

5. said act was done without provocation, legal vindication, or penological justification and was intended to inflict cruel, unusual, and inhumane punishment and for the very purpose of torture.

6. Mr. Holston did suffer physical pain, discomfort, humiliation mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

P. count Sixteen: 8th Amend. Cruel and unusual conditions of confinement.

1. This is an action under the 8th Amendment for cruel and unusual conditions of confinement pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A.1; III. B.1-15, 18-22; IV. A. 1-100 are realleged.

3. All conditions precedent have been satisfied.

4. All Defendants collectively deprived mr. 1b1ston of life's basic necessities, maliciously and sadistically.

5. They did deprive him of his property without due process of law.

6. They required him to sleep on the floor without bedding for over seven days. They required him to sleep on the floor for over 30 days. See log# 404-2001-0113

7. They stole his food and deprived him of nutritious meal conducive to meaningful healing of his severe wounds.

8. They fed him insects in his food. See log# 404-2001-008

9. They stole all his law books to prevent him from petitioning for redress and deprived him of law library access.

10. They cruelly deprived him of meaningful and proper          42

access to medical care by denying him sutures and prophylactic antibiotics to prevent infections in his deep wounds that subsequently became infected twice while under the nurses' and doctors care. (Ex. D and Ex. E)

11. Mr. Holston was accused of battering a Colonel and sergeant Barron on the same day; and instead of transferring Mr. Holston to another prison, like all other prisoners accused of battery on a correctional officer, within 24 hours, they deliberately kept Mr. Holston at their institution to commit torturous acts on him and deprive him of due process of law.

12. They did torture Mr. Holston for over 30 days and deprive him of life's basic necessities; Said deprivations were intolerable in a civilized society and did exceed the bounds of any measure of civilized decency and did shock the conscience.

13. Further, said cruel and unusual acts of deprivations, along with their falsifying records were outrageous and were not within the concept of ordered liberty. compare (Ex. B) with (Ex. C) and (Ex. D).

14. The defendants repeatedly required Mr. Holston to sleep with the light on.

15. Mr. Holston suffered physical pain, discomfort, mental and emotional distress

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.          43

Q. Count seventeen: 8TH Amend. excessive force— Maguire: Pulling

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1; III.B.2; IV.A.1–50, 97–100 are realleged.

3. All conditions precedent have been satisfied.

4. Maguire did maliciously and sadistically pull the metal hitch wire Mr. Holston was hitched to after his skin or wrists were seared from the excessively hot handcuffs to scrape the burned skin off to torture him and to cause him additional excruciating injury and pain. (EX. C and EX. D)

5. Mr. Holston suffered additional injury and pain, emotional and mental injury or distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury

44

R. Count Eighteen: 8th Amnd. excessive Force- colonel Harriss: Pulling.

1. This is an action for excessive force under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1, III.B.1, IV.A.1-55, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Mark Harriss did maliciously and sadistically pull the metal hitch wire Mr. Holston was hitched to after his skin or wrists were seared from the excessively hot handcuffs to scrape the burned skin off to torture him and to cause him additional excruciating injury and pain.

5. Mark Harriss did deliberately fail to note or investigate Mr. Holston's condition but promptly referred him for cm and wrote him a falsified disciplinary report to conceal his own illegal and unconstitutional conduct.

6. Mr. Holston suffered additional physical injury and scarring from Harriss's sadistic pulling of the hitch wire; also, Mr. Holston suffered pain, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory and punitive damages, costs, and a trial by jury.

45

S. Count Nineteen: Failure to Intervene 8TH Amend. and stop Maguire: medical beating.

1. This is an action for failure to intervene in 8th Amend. violation pursuant to 42 u.s.c. 1983.

2. Paragraphs V.D.2-6 are realleged; III.B.3 is realleged.

3. All conditions precedent have been complied with

4. David Barron was present when Maguire use malicious and sadistic force on Mr. Holston and could have intervened and stopped or prevented said force.

5. Because he failed to intervene, Mr. Holston suffered significant injury.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

T. Count Twenty: Failure to intervene 8th Amnd. and stop Maguire: medical buggery.

1. This is an action for failure to intervene in 8th Amnd. violation pursuant to 42 U.S.C. 1983.

2. Paragraphs V.E.2; III.B.3; and V.E.4-7 are realleged.

3. All conditions precedent have been satisfied.

4. David Barron was present when Maguire buggered Mr. Holston in front of medical. He failure to intervene and stop Maguire from using excessive force in sodomizing Mr. Holston.

5. Had Barron intervened and stopped Maguire, Mr. Holston would not have suffered injury.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

47

U. Count Twenty <u>one</u>: Failure to Intervene 8TH Amend. and stop Maguire: beating in cell B1102

1. This is an action for Failure to intervene under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs V.G.2-6; and III.B.3 are realleged.

3. All conditions precedent have been complied with.

4. David Barron was present when Maguire brutally beat Mr. Holston while he was on the Floor and cuffed behind his back and still drenched in pepper spray in cell B1102.

5. Barron failed to intervene and stop or prevent the malicious and sadistic beating, whereby Mr. Holston Suffered physical and mental injury.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory damages, costs, and a trial by jury.

V. Count Twenty two: Failure to Intervene 8TH Amend. and stop Maguire: Shower beating

1. This is an action for Failure to intervene in 8th Amendment violation pursuant to 42 U.S.C 1983.

2. Paragraphs I, II, III.A.1; III.B.3; IV.A.1-61, 97-100 are realleged.

45

3. All conditions precedent have been complied with.

4. David Barron was present as an extraction team member when Maguire maliciously and sadistically beat Mr. Holston while he was handcuffed behind his back in shower B-3 and drenched in pepper spray.

5. Barron failed to intervene and prevent Mr. Holston's injury. As a result of Barron's non Feasance, Mr. Holston suffered physical and mental injury or trauma.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages and a trial by jury.

W. COUNT TWENTY THREE : Failure to Intervene 8TH Amnd. and Stop Maguire: Buggery - B1102.

1. This is an action for failure to intervene in 8th Amendment Buggery in cell B1102 pursuant to 42 U.S.C. 1983.

2. Paragraphs III. B.3; and IV. A. 97-100; and V.F. 2-6 are realleged.

3. All conditions precedent have been satisfied.

4. David Barron was present with Maguire when he maliciously sodomized and buggered Mr. Holston in cell B1102 while he was cuff behind his back and compliant

5. Because of his non Feasance, Mr. Holston suffered physical                    49

and emotional trauma

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

X. Count Twenty Four: Failure to Intervene 8TH Amend. Stop Harriss' pulling.

1. This is an action for Failure to intervene in 8TH Amendment excessive force pulling. pursuant to 42 U.S.C. 1983.

2. Paragraphs III. B. 3 and IV. A. 1-55, 97-100   are realleged. Paragraphs I, II, III. A. 1 are realleged.

3. All conditions precedent have been satisfied.

4. Barron was present when Harriss mal.ciously and sadistically pulled the hitchwire to sadistically scrape the scared skin off Mr. Holston's wrists to and did cause him more pain, injury, and suffering.

5. Because Barron failure to intervene where he had ample opportunity but failed to do so. Consequently, Mr. Holston suffered physical, mental, and emotional injury.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

50

## Y. Count Twenty Five: Failure to Intervene 8th Amend. Stop maguire pulling.

1. This is an action for Failure to Intervene in 8th Amendment excessive force pulling pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1; III.B.3; IV.A.1-55, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Barron was present when maguire pulled the hitchwire maliciously to scrape the seared and burned skin off Mr. Holston's wrists to sadistically cause him further injury and did cause him further permanent scarring.

5. Because of Barron's deliberate nonfeasance, Mr. Holston sustained additional physical scarring mental and emotional injury.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

## Z. Count Twenty Six: Failure to Intervene 8th Amend. Left wrist cutting.

1. This is an action for Failure to Intervene in 8th Amendment excessive force cutting pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1; III.B.3; IV.A.1-47, 97-100

51

are realleged.

3. All conditions precedent have been Satisfied.

4. Barron was present when Maguire and Ortiz maliciously and Sadistically attempted to amputate his left ~~hand~~ with a medical tool provided by Ortiz.

5. Barron deliberately Failed to stop and prevent them from cutting Mr. Holston's wrist; and as a result of his non Feasance and Failure to report said evil act, Mr. Holston suffered physical scarring and mental and emotional injury.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

Aa. Count Twenty Seven: Failure to Intervene 8th Amend. Right wrist Cutting.

1. Paragraphs V.Z. 1-3, 5 are realleged.

2. All conditions precedent have been satisfied

3. Barron was present when maguire and ortiz sadistically and maliciously attempted to amputate his right hand with a medical tool provided by ortiz.

4. Barron deliberately Failed to stop and prevent them From cutting Mr. Holston's wrist; and as a result of his non Feasance and failure to report said evil act, Mr. Holston

52

suffered physical scarring, mental, and emotional injury.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

<u>Ab. Count Twenty Eight:</u> Failure to Intervene 8th Amend. cruzado- pepper spray: First spray.

1. This is an action for ~~excessive force under~~ Failure to intervene under the 8th Amendment pursuant to 42 USC. 1983.

2. Paragraphs I, II, III. A.1; III. B.3; IV.A.1-50, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Barron was present when Wells ordered Cruzado to pepper spray Mr. Holston maliciously and sadistically while he was still drenched in the pepper spray Barron sprayed him with and while he was handcuffed behind his back.

5. Barron deliberately failed to take any action to stop or prevent Cruzado's excessively sadistic force; Mr. Holston suffered physical pain, scarring, mental, and emotional injuries, as a result of Barron's nonfeasance.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

53

<u>Ac. Count Twenty nine</u>: Failure to Intervene 8th Amend. Cruzado-pepper spray: Second spray.

1. Paragraphs V. Ab. 1-3, 5 are realleged.

2. Wells did order Cruzado to pepper spray Mr. Holston a second time maliciously and sadistically while he was drenched in the pepper spray from the first two sprays; further, Barron was present and failed to take any action to help or protect Mr. Holston.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory damages, costs, and a trial by jury.

<u>Ad. Count Thirty</u>: Failure to Intervene 8th Amend, Maguire: Burning.

1. This is an action for Failure to Intervene under 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A. 1; III. B. 3; IV. A. 1-55, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Barron was present the entire time wells, maguire, and Harriss delivered electric heat to Mr. Holston's manacled hands. Further, he deliberately failed to intervene and stop said sadistic act.

5. Mr. Holston suffered physical pain and scarring, mental, and emotional distress.

54

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

<u>Ae. Count Thirty one:</u> Failure to Intervene 8ᵀᴴ Amend. Maguire: Tight cuffs.

1. This is an action for Failure to Intervene under the 8ᵀᴴ Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A. 1; III. B. 3; IV. A. 1-55, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Barron was present when Wells instructed Maguire to tighten the handcuffs. And when Maguire tightened the handcuffs, Barron stood by and did nothing.

5. Because of Barron's nonfeasance, Mr. Holston suffered permanent scarring, nerve damage, swelling, arthritis, numbness, coldness in his hands and fingers. (Ex. C, Ex. D, and Ex. e).

6. Mr. Holston suffered emotional and mental trauma.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

<u>Af. Count Thirty Two:</u> Failure to Intervene 8ᵀᴴ Amend. Barron: pepper spray-

55

1. This is an action for Failure to Intervene under the 8th Amendment 42 U.S.C. 1983.

2. Paragraphs I, II, III. A.1; III.B.2; IV.A.1-30, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Maguire was present when Barron maliciously and sadistically pepper sprayed Mr. Holston; and Maguire could and should have intervened but did not.

5. Because of Maguire's deliberate nonfeasance, Mr. Holston suffered mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

Ag. Count Thirty Three: Failure to Intervene 8th Amend. Cruzado: First. Pepper Spray.

1. This is an action for Failure to Intervene under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1; III.B.2; IV.A.1-58, 97-100 are realleged

3. All conditions precedent have been satisfied.

4. Maguire was present when Wells directed Cruzado to maliciously pepper spray Mr. Holston while he was cuffed behind his back.

56

5. Maguire failed to intervene and prevent said sadistic use of force where he had the ability to do so.

6. Because of Maguire's nonfeasance, Mr. Holston was subjected to excessive force and suffered mentally and emotionally.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and ~~punitive~~ damages, costs, and a trial by jury.

Ah. Count Thirty Four: Failure to Intervene 8th Amend. Cruzado: Second pepper spray.

1. This is an action for Failure to Intervene under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs V. Ag.2-6 are realleged.

3. All conditions precedent have been satisfied.

4. Because of Maguire's nonfeasance, Mr. Holston endured excessive force, mental and emotional damage

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

Ai. Count Thirty Five: Failure to Intervene 8th Amend. Harriss: pulling.

1. This is an action for Failure to Intervene under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1; III.B.2; IV.A.1-55, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. maguire was present when Harriss maliciously pulled the hitch wire to sadistically scrape the burned skin off of Mr. Holston's burned wrist to cause him additional pain and suffering.

5. Because of maguire's nonfeasance, Mr. Holston was subjected to additional excessive force, pain, injury, and suffering; mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

Aj. Count Thirty Six: Failure to Intervene 8th Amend. Cruzado: First pepper spray.

1. This is an action for Failure to Intervene under the 8th Amend. pursuant to 42 U.S.c. 1983.

2. Paragraphs I, II, III.A.1; III.B.14; IV.A.1-58, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Wells was present and directed cruzado to pepper spray Mr. Holston maliciously and sadistically, and cruzado did carry out said cruel act.

5. Well could have but did not intervene and stop or prevent          58

the excessive force that he ordered.

6. Mr. Holston suffered mentally, emotionally, and physically.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

AK. Count Thirty seven: Failure to Intervene 8TH Amend. Cruzado: Second Pepper Spray.

1. Paragraphs V. Aj. 1-6 are realleged.

2. Wells did order Cruzado to maliciously and sadistically Pepper spray Mr. Holston a second time and was present when Cruzado carried out said cruel order.

3. Wells could have but did not stop or prevent the excessive use of force.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

AL. Count Thirty Eight: Failure to Intervene 8TH Amend. Maguire: pulling

1. This is an action for Failure to Intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1; III.B.14; IV.A.1-48,97-100 are realleged.

3. All Conditions precedent have been satisfied.

859

4. Wells was present when Maguire pulled the hitchwire maliciously to cause him unnecessary pain and could have - but did not - intervene and stop or prevent the gratuitous use of force.

5. Mr. Holston suffered additional injury, pain, suffering, emotional, and mental distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

Am. count Thirty Nine: Failure to Intervene 8TH Amend. Harriss: pulling.

1. This is an action for Failure to Intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1; III.B.14; IV.A.1-55, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Wells was present when Harriss entered and began pulling the hitch wire and did nothing to stop the malicious use of force.

5. Because of Well's non feasance, Mr. Holston suffered additional physical and mental injury. (Ex. C, Ex. D, Ex. E).

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

Aa. count Fourty: Failure to Intervene 8TH Amend. Maguire: shower

60

1. This is an action for Failure to Intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A. 2; III. B. 14; IV. A. 1-60, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Wells was present when Maguire beat and struck Mr. Holston with clenched fist and Wells deliberately failed to intervene and stop Maguire's malicious and sadistic force.

5. Because of Wells's nonfeasance, Mr. Holston suffered two black eyes, nerve damage in his hands, arthritis, mental and emotional damage.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

40. COUNT Forty one: Failure to Intervene 8TH Amend. Maguire: B1102

1. This is an action for Failure to Intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A.1; III. B.14; IV. A.1-66, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Wells was present and did supervise Maguire's malicious beating of Mr. Holston while he was on the floor and handcuffed behind his back on the floor, and he was still drenched in pepper spray.

5. Wells did fail to intervene and stop Maguire's excessive use of force; and because of his nonfeasance, Mr. Holston suffered a broken bottom tooth, physical pain and scarring, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

## Ag. Count Fourty Two: Failure to Intervene 8TH Amend. Maguire: Buggery-31102

1. This is an action for Failure to Intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III.A.1; III.B.14; IV.A.1-66 & 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Wells was present when Maguire maliciously and sadistically buggered Mr. Holston against his will while he was handcuffed behind his back and helpless.

5. Wells could have intervened and stop said cruel and unusual act but failed to do so; and because of his nonfeasance, Mr. Holston suffered physical pain, emotional, and mental distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

## Ag. count Fourty Three: Failure to Intervene under the 8TH Amend. Maguire: Tight cuffs

1. This is an action for Failure to Intervene under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A. 1; III. B. 14; IV. A. 1-66, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Wells was present and instructed Maguire to tighten the handcuffs, and Maguire maliciously tightened the handcuff past the last notch.

5. Wells could have prevented Maguire's malicious act, but he failed to intervene; because of his nonfeasance, Mr. Holston suffers swollen digits, arthritis, permanent scarring, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

<u>Ar. County Fourty Four</u>: Failure to Intervene 8th Amnd. Maguire: Burning.

1. This is an action for Failure to Intervene under the 8th Amendment pursuant 42 U.S.C. 1983.

2. Paragraphs V. A4, 2-5 are realleged

3. Wells was present and authorized the burning of Mr. Holston's wrists. Which was malicious and sadistic. Wells intentionally refused to turn the electricity or power off and failed to do so.

63

4. Because of Wells nonfeasance, Mr. Holston suffers arthritis in both hands, swelling, horrible burn scars; numbness in his hands and digits, pain, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

As Count Fourty Five: Failure to Intervene 8th Amend. Maguire: Tight cuffs.

1. This is an action for Failure to Intervene under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A.1; III. B. 1; IV. A.1- 55, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Harriss was present when wells and maguire tightned the handcuffs maliciously and sadistically, and instead of removing the excessively tight handcuffs, he yanked and pulled the hitch wire to which Mr. Holston was attached to cause Mr. Holston further injury and pain.

5. Because of Harriss' nonfeasance and direct participation thriny Mr. Holston suffered arthritis, swelling, horrible scarring, nerve damage, pain, mental, and emotional damage, inter alia.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

64

At. Count Fourty Six: Failure to Intervene 8TH Amend. Maguire: Burning.

1. This is an action for ~~Failure to Inter~~ Vue under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs V. As. 2-5 are realleged

3. Harriss was present when Maguire and Wells electrocuted and burned Mr. Holston maliciously and sadistically. Harriss could have-but did not- stop the burning.

4. Because of Harriss' nonfeasance, Mr. Holston suffered arthritis, horrible burn scars, numbness in his hands and digits, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands Compensatery damages, costs, and a trial by jury.

A u Count Fourty Seven: Failure to Intervene 8TH Amend. Maguire: Medical Beating.

1. This is an action for Failure to Intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I, II, III. A. 1, III. B. 1, IV. A. 1-34, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Harriss was present when Maguire maliciously beat m. Holston while he was in front of medical and on the ground compliant

265

and nonresisting.

5. Harriss deliberately failed to intervene and because of his nonfeasance, Mr. Holston suffered two black eyes, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

~~A. Count Fourty-Eight~~: Failure to Intervene 8TH Amend. Maguire: medical buggery

1. This is an action ~~████~~ for Failure to Intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I-II, III. A.1, III. B.1; IV. A.1-34, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Harriss was present and stood and watched as Maguire buggered Mr. Holston and Barron held him down and Harris could have - but did not-prevent or stop the malicious acts.

5. Because of Harriss' nonfeasance, Mr. Holston suffered buggery, pain, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

66

AW. Count Forty Nine: Failure to Intervene 8TH Amend. Barron: medical pepper spray.

1. Paragraphs V. AU. 1-5 are realleged.

2. Harriss was present when Barron maliciously pepper sprayed Mr. Holston and failed to prevent or stop same.

3. Because of Harriss' nonfeasance, Mr. Holston suffered pain, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory damages, Costs, and a trial by jury.

AX. Count Fifty: Failure to Intervene 8TH Amend. maguire and ortiz: Left wrist.

1. This is an action for failure to Intervene under the 8TH Amendment pursuant 42 U.S.C. 1983.

2. Paragraphs I-III. A. 1-B. 1; IV. A. 1-55, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Harriss was present when Maguire and ortiz attempted to amputate Mr. Holston's left wrist maliciously, and Harriss did nothing to stop or prevent said excessive force.

5. Because of Harriss's willful nonfeasance, Mr. Holston sustained injuries to his wrist, horrible scaring, infections, pain, numbness, arthritis, mental, and emotional damage.

67

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

**A y. Count Fifty one:** Failure to Intervene 8th Amend. Maguire and ortiz: Right wrist.

1. Paragraphs V. A.x. 1-5 are realleged.

2. Harriss was present when Maguire and ortiz attempted to amputate Mr. Holston's right wrist maliciously and sadistically. Harriss could have intervened and stopped or prevented injury but chose not to.

3. Because of Harriss' nonfeasance, Mr. Holston suffered permanent scarring, pain, arthritis, numbness, swelling, infections, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

**A z. Count Fifty Two:** Failure to Intervene 8th Amend. Maguire: shower

1. This is an action for Failure to Intervene under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I - II, III.A.1; III.A.15; IV.A.1-60, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Christman was present when the extraction team and

Maguire entr shower B-3 and began to beat and strike Mr. Holston while he was on the Floor in the Shower.

5. Christman could have stopped and prevented the excessive force but declined to do so; because of his nonfeasance, Mr. Holston suffered two black eyes, physical pain, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

<u>Ba. Count Fifty Three:</u> Failure to Intervene 8TH Amend. Maguire: B1102 Beating.

1. This is an action for failure to Intervene under the 8TH Amendment pursuant.

2. Paragraphs I - III. A.1; III. B. 15; IV. A. 1-65, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Christman was present when Maguire and the cell extraction team Maliciously threw Mr. Holston in Cell B1102 on the Floor while he was handcuffed behind his back and still drenched in pepper spray.

5. Christman deliberately failed to act to stop or prevent the excessive force; and because of his willful nonfeasance, Mr. Holston suffered pain, two black eyes, a broken tooth, bruising, mental, and emotional distress, inter alia.

69

WHEREFORE, premises considered, Mr. Holston Demand compensatory damages, Costs, and a trial by jury.

**Bb. Count Fifty Four:** Failure to Intervene 8TH Amend. Maguire: Buggery in Bilo2

1. This is an action for Failure to Intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III.B.15; IV.A.1-67; 97-100 are realleged.

3. All Conditions precedent have been Satisfied.

4. Christman was present and did record Maguire's malicious and Sadistic buggery and deliberately failed to stop or prevent the excessive use of force on Mr. Holston.

5. Because of Christman's nonfeasance, Mr. Holston suffered pain, mental, and emotional trauma.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

**BC. Count Fifty Five:** Failure to Intervene  8TH Amend. Maguire: Tight Cuffs.

1. Paragraphs V. Bb. 1-5 are realleged.

2. Christman was present when Wells maliciously directed Maguire to tighten the handcuffs wherein maguire did maliciously tighten the handcuffs past the last notch around Mr. Holsto's wrists,  70

3. Christman could have – and should have – intervene, but he purposely decline to do so.

4. Because of Christman's nonfeasance, Mr. Holston suffers from arthritis, numbness, coldness, pain, and swelling in his hands, joints, and digits, mental and emotional damages

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

Bd. Count Fifty Six: Failure to Intervene 8ᵗʰ Amnd. Maguire: Heated/Hot cuffs.

1. Paragraphs V. Bc. 1-4 are realleged

2. Christman was present when Maguire, wells, and Harriss funneled electricity to the tightend cuffs around Mr. Holston's wrists maliciously and sadistically and could have intervened and stopped the burning but he did not.

3. Because of Christman's nonfeasance, Mr. Holston suffered severe burns from the cuffs, arthritis, swelling, pain, emotional, and mental distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

Be. Count Fifty Seven: Failure to Intervene 8ᵗʰ Amnd. Cruzado: First Pepper Spray.

71

1. This is an action for Failure to Intervene under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III. A.1; III. A.15; IV. A.1-58, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Christman was present when Wells maliciously ordered Cruzado to sadistically pepper spray Mr. Holston while he was cuffed behind his back in extremely tight cuffs and drenched in Barron's pepper spray; and Christman could have intervened and stopped the excessive force but chose not to.

5. Because of Christman's nonfeasance respecting this first pepper spray, Mr. Holston suffered pain, discomfort, mental, and emotional distress, inter alia.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

8F. Count Fifty Eight: Failure to Intervene 8th Amend. Cruzado: Second pepper spray.

1. Paragraphs V. Be. 1-5 are realleged.

2. Christman was present the second time Wells ordered Cruzado to maliciously pepper spray Mr. Holston while he was cuffed behind his back in extremely tight cuffs and still drenched in pepper spray from both Cruzado and Barron. Christman could have - but did not intervene and prevent Cruzado's excessive force.

72

3. Because of christman's non feasance, Mr. Holston suffered excessive force, pain, mental, and emotional distress, inter alia.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

Bg. Count Fifty Nine: Failure to Intervene 8TH Amend. maguire: shower.

1. This is an action for failure to intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III B.9; IV.A.1-60,97-100 are realleged.

3. All conditions precedent have been complied with.

4. Cruzado was present when maguire maliciously beat mr. Holston while he was handcuffed behind his back, on the floor, and drenched in pepper spray.

5. Cruzado could have intervened and stopped said excessive force, but he did not whereby Mr. Holston Sustained two black eyes, physical bruising and pain, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

Bh. Count Sixty: Failure to Intervene 8TH Amend. Maguire: B1102 beating.

1. This is an action for failure to intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

73

2. Paragraphs I-III.A.1; III.B.9; IV.A.1-63, 97-100 are realleged.

3. All conditions precedent have been satisfied.

4. Cruzado was present when Maguire maliciously beat and struck Mr. Holston repeatedly while he was in cell B1102 on the floor, handcuffed behind his back with excessive tight handcuffs, and still drenched in three different pepper sprays; and Cruzado could have intervened and stopped the sadistic beating but he chose not to.

5. Mr. Holston suffered two black eyes, physical pain and bruising, mental, and emotional distress, because of Cruzado's nonfeasance.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

<u>Bi. Count Sixty one:</u> Failure to Intervene 8th Amnd. Maguire: Buggery in B1102.

1. Paragraphs V.Bh.1-5 are realleged

2. Cruzado was present when Maguire maliciously buggered and sodomized Mr. Holston; Cruzado could have but did not intervene while they were in cell B1102.

3. Because of Cruzado's nonfeasance, Mr. Holston suffered physical pain, mental, and emotional trauma

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

74

Bj. COUNT SIXTY TWO: Failure to Intervene 8th Amend. Maguire: Tight cuffs.

1. Paragraphs V.Bh.1-5 are realleged.

2. Cruzado was present when Wells instructed Maguire to tighten the cuffs around Mr. Holston's wrists maliciously and to the point of utter numbness; and Cruzado was present when Maguire did sadistically tighten said cuffs.

3. Cruzado could have—but did not—intervened and because of his nonfeasance, Mr. Holston suffered arthritis, swelling, nerve damage in his hands and digits, mental, and emotional damages.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

BK. Count Sixty Three: Failure to Intervene 8th Amend. Maguire: Hot cuffs.

1. Paragraphs V.Bj.1-3 are realleged.

2. Cruzado was present when Maguire, Wells, and Harriss funneled electricity to Mr. Holston's cuffs that were air tight on his wrists and burned his wrists in a brand like manner;

3. Cruzado deliberately failed to intervene and turn the power off; and because of his nonfeasance, Mr. Holston suffered horrible burning, scarring, numbness, arthritis, coldness in his hands and digits, mental, and emotional distress. (EX. C, Ex. D, and Ex. E)

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

75

BI. Count Sixty Four: Failure to Intervene 8th Amend. Maguire and ortiz: Left wrist cut.

1. Paragraphs V. BK. 1-3 are realleged.

2. Cruzado was present when maguire and ortiz proceeded to cut Mr. Holston's left wrist while he was handcuffed behind his back and drenched in pepper spray; Cruzado could have intervened but did not.

3. Because of Cruzado's non feasance, Mr. Holston suffered pain, horrible scarring on the outside of his left wrist, infections, numbness in his hands and digit, arthritis therein; mental, and emotional distress, inter alia.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

Bm. Count Sixty Five: Failure to Intervene 8th Amend. Maguire and ortiz: right wrist.

1. Paragraphs V. BI. 1-3 are realleged.

2. Cruzado was present when maguire and ortiz proceeded to cut mr. Holston's right wrist while he was handcuffed behind his back and drenched in pepper spray; Cruzado could have intervened but did not.

3. Because of cruzado's nonfeasance, mr. Holston suffered pain, horrible scarring on the outside of his right wrist, infections,

numbness, arthritis, in his hands and digits, mental, and emotional distress, inter alia.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

Bn. Count Sixty Six: Failure to Intervene 8TH Amend. Maguire: Shower.

1. This is an action for Failure to Intervene under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III.B.10; IV.A.1-60, 97-100 are realleged.

3. McClure was present was Maguire maliciously beat Mr. Holston in decontamination shower B-3; and McClure deliberately failed to intervene.

4. Because of McClure's Failure to Intervene, Mr. Holston suffered two black eyes, pain, burning, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

Bo. Count Sixty Seven: Failure to Intervene 8TH Amend. Maguire: Beating Bil02.

1. Paragraphs V. Bn. 1-4 are realleged.

2. McClure was present when Maguire maliciously beat Mr. Holston in cell Bil02 after throwing him to the ground while he was handcuffed behind his back and still drenched in pepper

77

Spray.

3. McClure could have-but did not intervene and stop the sadistic use of force whereby Mr. Holston suffered two black eyes, pain, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

Bp. Count Sixty Eight: Failure to Intervene 8TH Amend. Maguire: Buggery in B1102.

1. Paragraphs V.Bn. 1-4 are realleged.

2. McClure was present when maguire maliciously and sadistically buggered and sodomized Mr. Holston while he was handcuffed behind his back, drenched in pepper spray, and helpless. McClure could have intervened-but he chose not to.

3. Because of McClure's nonfeasance, Mr. Holston suffered pain, humiliation, embarrassment, mental, and emotional damage.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury

Bg. Count Sixty Nine: Failure to Intervene 8TH Amend. Maguire: Hot cuffs.

1. Paragraphs V.Bn. 1-4 are realleged.

2. McClure was present when Maguire, Wells, and Harriss burned

78

Mr. Holston with airtight hot cuffs while he was drenched in pepper spray. McClure could have intervened but he chose not to.

3. Because of McClure's nonfeasance, Mr. Holston suffered excessive force, horribly burned wrists, scarring, numbness, arthritis, coldness in his digits and hands, pain, emotional, and mental distress. (Ex. C, D, and E).

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

Bc. Count seventy: Failure to Intervene 8th Amnd. Maguire: Tight cuffs.

1. Paragraph V. Bn. 1-4 are realleged.

2. McClure was present when Wells maliciously directed Maguire to sadistically tighten the handcuffs to ensure continuity of the electrical burn. McClure could have-but did not- intervene and turn off the electricity and stop the electrocutionary burn. (Exs. C, D, and E)

3. Because of McClure's nonfeasance, Mr. Holston suffered needless pain and suffering, horribly burned wrists, scarring, numbness, arthritis, stiffness, and coldness in his hands and digits, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

Bs. Count seventy one: Failure to Intervene 8th Amnd. ~~Maguire:~~ Cruzado: First pepper spray.

1. Paragraphs V. Bn. 1-4 are realleged.

79

2. McClure was present when Wells maliciously directed Cruzado to sadistically pepper spray Mr. Holston while he was handcuffed behind his back and still drenched in Barron's pepper spray; and McClure could have - but did not - intervene and stopped Cruzado's excessive force.

3. Because of McClure's nonfeasance, Mr. Holston suffered pain, mental, and emotional injury or distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

**Bt. Count seventy Two**: Failure to Intervene 8ᵗʰ Amnd. Cruzado: second pepper spray.

1. Paragraphs V. Bn. 1-7 are realleged

2. McClure was present the second time Wells maliciously directed Cruzado to sadistically pepper spray Mr. Holston a second time while he was drenched in the first two pepper spray liquids and was cuffed behind his back; McClure could have intervened and stopped Cruzado's excessive force but chose not to.

3. Because of McClure's nonfeasance, Mr. Holston endured excessive force, pain and discomfort, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

**Bu. Count seventy Three**: Failure to Intervene 8ᵗʰ Amnd. Harris: pulling.    80

1. Paragraphs V.B.n.1-4 are realleged.

2. McClure was present when Harriss proceeded to continually pull the metal hitch wire to maliciously and sadistically scrape the burned skin off Mr. Holston's wrists to inflict wanton pain on him; McClure could have intervened and stopped Harriss's excessive and unnecessary use of force, but he chose not to.

3. Because of McClure's nonfeasance, Mr. Holston suffered excessive force, additional painful injury, scarring, pain, discomfort, mental, and emotional distress, arthritis, swelling, stiffness numbness, coldness in his hands and digits.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages, costs, and a trial by jury.

**B.v. Count seventy four:** Failure to Intervene 8th Amend. Maguire: Pulling

1. Paragraph V.B.n.1-4 are realleged.

2. McClure was present when Maguire proceeded to continually pull the metal hitch wire to maliciously and sadistically scrape the burned skin off Mr. Holston's wrists to sadistically inflict wanton pain on him; McClure could have intervened and stopped Maguire's excessive and unnecessary use of force, but he chose not to.

3. Because of McClure's nonfeasance, Mr. Holston suffered excessive force, additional painful injury, scarring, pain, swelling, arthritis, stiffness, numbness, coldness in his hands and digits, discomfort, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory damages, costs, and a trial by jury.

**BW. Count Seventy Five:** Failure to Intervene 8th Amend. Maguire and Ortiz left cut.

1. Paragraphs V. Bn. 1-4 are realleged.

2. McClure was present when Maguire and Ortiz maliciously and sadistically proceeded to amputate Mr. Holston's left hand or wrist. McClure could have intervened but declined to do so.

3. Because of McClure's nonfeasance, Mr. Holston suffered an abortive amputation of his left hand, scarring, numbness, arthritis, stiffness, and coldness in his left hand and digits, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory damages, costs, and a trial by jury.

**BX. Count Seventy Six:** Failure to Intervene 8th Amend. Maguire and Ortiz Right cut.

1. Paragraphs V. Bn. 1-4; and V. BW. 2-3 are realleged.

2. McClure was present when Maguire and Ortiz maliciously and sadistically proceeded to amputate Mr. Holston's right hand or wrist. McClure could have intervened but declined to do so.

3. Because of McClure's nonfeasance, Mr. Holston suffered an abortive amputation of his left hand, scarring, numbness, arthritis, stiffness,

and coldness in his right hand and digits, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

<u>By. Count Seventy Seven</u>: Deliberate indifference 8TH Amnd. Dr. Bnadja: Cursory medical care and Infection number one.

1. This is an action for Deliberate Indifference under the 8TH Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III. A.1; III.B.21; IV.A.1-100 are realleged.

3. On December 24, 2019, Mr. Holston appeared to see Dr. Bnadja as a result of the excessive use of force that occurred on December 21, 2019.

4. Dr. Bnadja performed the most cursory review of Mr. Holston's injuries and despite Mr. Holston's burned wrists and deep cuts, he refused to provide any antibiotics and refused to suture Mr. Holston's deep wounds. Compare (EX. B) with (EX. C) and (EX. D)

5. Dr. Bnadja knew that infections were going to set in and could possibly enter his bones causing surgical amputation or death.

6. Said Dr. conspiratorially, maliciously, deliberately, and indifferently, refused to suture the wounds and take the medically necessary steps to prevent said infections and prevent further injury. (EX. C) and (EX. D)

7. As a result of said Dr.'s deliberate indifference to Mr. Holston's      83

serious medical condition and need, Mr. Holston suffered a serious infection that required an insufficient 14 day antibiotic medicinal regimen.

8. Further, because Dr. Bhadja failed to suture Mr. Holston's deep cuts on the outside of Mr. Holston's wrists, Mr. Holston has unsightly scars on both wrists. Said deliberate indifference was cruel and unusual.

9. Mr. Holston has suffered pain, wounded feelings, additional injury, arthritis, numbness, stiffness in his hands and digits, emotional, and mental distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

<u>BZ. Count Seventy Eight</u>: Deliberate Indifference 8TH Amend. E. Ortiz.

1. This is an action for deliberate indifference under the 8th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I - III. A. 1; III. B 6; IV. A. 1 - 100 are realleged.

3. Ortiz knew Mr. Holston needed sutures and was developing an infection in both wrist wounds. (EX. B) Compare with (EX. O).

4. Despite nurse barkers instructions not to cover the wounds, he still wrapped the wounds which caused the infection to worsen.

84

5. Ortiz deliberately failed to properly care for Mr. Holston's wounds and deliberately failed to notify the doctor that Mr. Holston was suffering from an acute, potentially life threatening infection. Compare (Ex. B) with (Ex. C) and (Ex. D)

6. Said infections were obvious because of their putrid smell and drainage. Mr. Holston's medical need was serious. (Ex. D)

7. Ortiz knew of Mr. Holston's infectious condition and deliberately and indifferently failed to act and thereby exacerbated his condition in a cruel and unusual fashion. (Ex. D)

8. Because of his deliberate indifference, Mr. Holston suffered an acutely infectious condition, additional scarring, pain, additional wound care and wound scrubbing, and additional healing time. Additionally, Mr. Holston suffered mentally and emotionally. (Ex. D)

WHEREFORE, premises considered, Mr. Holston ~~suffers~~ Demands compensatory damages, costs, and a trial by jury.

Re. ~~Count seventy Nine:~~ Deliberate Indifference 8th Amend. D. Brown

1. This is an action for deliberate indifference under the 8th Amendment pursuant to 42 U.S.C. 1983

2. Paragraphs I-III. A. 1; III. B. 7; IV. A. 1-100 are realleged.

3. Brown knew Mr. Holston needed sutures in his deep wounds and was developing infections in his wrist wounds. (Ex. D)

85

4. Despite Nurse Bowers instructions not to cover the wounds, he continually covered the wounds to exacerbate the infectious conditions in his wrists.

5. Brown knew of Mr. Holston objectively serious infections inasmuch that he explained that if a wound smells rotten or sweet there's infection and while telling Mr. Holston that, Mr. Holston's wounds were smelling putrid. Brown deliberately failed to notify the doctor of Mr. Holston's infectious state conditions. (Ex. D)

6. While Mr. Holston and Nurse Velozquez were in medical, Mr. Holston confronted Brown about his failure to alert officials to Mr. Holston's condition and his failure to scrub out the infections. He then replied that he doesn't do anything without an order—implying that he was well aware of the infectious conditions. (EX. D)

7. Said deliberate failures to notify the doctor of Mr. Holston's objectively serious medical conditions and his failures to clean the wound properly were cruel and unusual.

8. Because of Brown's deliberate indifference, Mr. Holston suffered an acutely infectious condition, additional: scarring, pain, woundcare, wound scrubbing, and healing time. Additionally, Mr. Holston suffered mentally and emotionally. (EX. D)

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.

<u>Cb. Count Eighty:</u> Deliberate Indifference 8th Amend. Dr. Brodju: Second Infection.

86

1. Paragraphs V. By. 1-7 are realleged.

2. After Mr. Holston's 14 day regimen of Levafloxacin, expired, Dr. Bhadja knew of Mr. Holston's objectively serious medical condition, and he ignored it.

3. Bhadja deliberately refused to provide Mr. Holston antibiotics for Mr. Holston's deep wounds.

4. Mr. Holston developed infections in his wrists a second time while under the care of Dr. Bhadja. (Ex. E)

5. Dr. Bhadja knew that a second infection would develop and deliberately ignored same.

6. Mr. Holston's second infections were objectively serious medical condition.

7. Dr. Bhadja refused to prescribe antibiotics whereby Dr. Noe and Drs. at Brevard County jail prescribed Mr. Holston antibiotics. (Ex. E)

8. As a result of Dr. Bhadja's deliberate indifference to Mr. Holston's objectively serious medical conditions, Mr. Holston suffered a second life threatening infections. (Ex. E)

9. Mr. Holston suffered additional: scarring, pain, discomfort, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory   87

Damages, costs, and a trial by jury.

CC. Count Eighty one: Constitutional False Imprisonment: Cell B1102.

1. This is an action for Constitutional False imprisonment under 42 U.S.C. 1983.

2. Paragraphs I–III.A.1; III.B.1-3, 6,9-10, 14-15; IV.A.1-100 are realleged.

3. All Defendants did remove Mr. Holston from shower B-3 without decontaminating him against his will, while he was handcuffed behind his back with air tight cuffs.

4. They did collectively wave him to cell B1102 an empty cell. Violently threw him on the floor and beat him and held him against his will and did unlawfully restrain him without lawful authority and in violation of use of force protocol.

5. Said unlawful restraint was unreasonable and unwarranted under the circumstances and in violation of due process, since they knew they could not beat Mr. Holston maliciously and with deliberate indifference.

6. Mr. Holston suffered mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

Ed. Count Eight Two: 1983 Conspiracy: Excessive Force: maguire - medical.    88

1. This is an action for Conspiracy to commit 8th Amendment excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III.B.1-3,5; IV.A.1-100 are realleged.

3. Paragraphs V.D. 2-6 are realleged.

4. Harris, Barron, and Romulus did agree and combine with Maguire to inflict cruel and unusual punishment on Mr. Holston. In furtherance of said agreement, Maguire did maliciously and sadistically beat Mr. Holston. Additionally, all failed to report said force and did falsify reports to conceal said agreement and malicious force.

5. Mr. Holston suffered physically, mentally, and emotionally.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

Ce. Count Eighty Three: 1983 Conspiracy: Excessive force: Maguire — medical Buggery.

1. This is an action for a Conspiracy to commit 8th Amendment excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III.B.1-3; IV.A.1-37; V.E.1-7 are realleged.

3. Harris and Barron agreed and combined with Maguire to use excessive force on Mr. Holston by sodomizing him and buggery. In furtherance of their combination or agreement, all failure to report the excessive force and did falsify their reports under Fla.

89

Admin. Code r. 33-602.210 to conceal their agreement.

4. Mr. Holston suffered physically, mentally, and emotionally.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

CF. Count Eighty Four: 1983 Conspiracy: Excessive Force: Maguire - B1102 Buggery.

1. This is an action for conspiracy to commit excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III. A.1; III.B. 1-3, 6, 9-10, 14-15; IV. A. 1-71, 97-100; V. F. 4-6 are realleged.

3. Harness, McClure, ortiz, cruzado, Barron, christman, and wells did agree and combine with maguire to sodomize and bugger Mr. Holston maliciously and sadistically. In furtherance of their agreement, they did fail to file their reports and did falsify the reports they were required to file under Fla. Admin. Code r. 33-602.210 to conceal their agreement and maguire did use excessive force on Mr. Holston by sodomizing him.

4. Mr. Holston suffered physically, mentally, and emotionally.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, jointly and severally, costs, and a jury trial.

CG Count Eighty Five: 1983 Conspiracy: Excessive Force: Maguire - Shower

90

1. This is an action for conspiracy to commit excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, 14-15; IV.A.1-60, 97-100; V.L.1-6 are realleged.

3. Wells, Harris, Cruzado, Ortiz, McClure, Christman, Barron, and Maguire did agree and combine to beat and forcibly extract Mr. Holston from shower B-3 while he was drenched in pepper spray, and cuffed behind his back; in furtherance of said agreement and combination, all did fail to report said excessive force and abuse and did file false reports that were required under Fl. Admin. Code r. 33-602.210 in order to conceal their combination.

4. Mr. Holston suffered physically, mentally, and emotionally.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

Ch. Count Eighty Six: 1983 Conspiracy: Excessive Force: Maguire - B1102

1. This is an action for conspiracy to commit excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, 14-15; IV.A.1-63, 97-100; V.G.2-6 are realleged.

3. Wells, Harris, Cruzado, Ortiz, McClure, Christman, Barron, and Maguire did agree and combine to maliciously beat Mr. Holston while he was secluded, on the floor, handcuffed behind his back, and drenched in pepper spray with air

91

tight cuffs on. In furtherance of said agreement, all did fail to report said excessive force and did falsify the reports required under Fla. Admin. Code r. 33-602.210 to conceal their combination.

4. Mr. Holston suffered physically and mentally and emotionally.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

Ci. Count Eighty Seven: 1983 Conspiracy: Excessive Force: Maguire-Tight Cuffs.

1. This is an action for conspiracy to commit excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III.B. 1-3, 6, 9-10, 14-15; IV.A.1-43, 97-100; V.H.1-7 are realleged.

3. Wells, Harris, Cruzado, Ortiz, McClure, Christman, Burren, and Maguire did agree and combine to maliciously tighten the handcuffs around Mr. Holston's wrists to facilitate the electrochution org burn and to produce continuity of the burn and to insure the metal made contact with his skin while he was still drenched in pepper spray; and in furtherance of their agreement and collusion, all failed to report the abuse as required by the use of force code and did file false reports under Fla. Admin. Code r. 33-602.210 to conceal their combination. Additionally, Maguire did in fact excessively tighten the cuffs.

4. Mr. Holston suffered physically, mentally, and emotionally.

WHEREFORE, premises considered, Mr. Holston demands                    92

compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

Cj. Count Eighty Eight: 1983 Conspiracy: Excessive Force: Maguire-Burning

1. Paragraphs I-III. A.1; III.B.1-3,6,9-10,14-15, IV.A. 1-55, 97-100; V.I 2-6 are realleged. Paragraph V. Ci. 1 is realleged.

2. Wells, Harriss, Cruzado, ortiz, McClure, Christman, Barron, and maguire did agree and combine to burn and brand Mr. Holston with cuffs whereby maguire did burn Mr. Holston with electrecutionary heated cuffs. In furtherance of their collusive agreement and combination, all did fail to report the excessive force and abuse and did file false reports under Fla. Admin. Code r. 33-602.210 to conceal their collusive confederation and agreement.

3. Mr. Holston suffered physically, emotionally, and mentally.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

CK. Count Eighty Nine: 1983 Conspiracy: Excessive Force: Maguire: left Wrist.

1. Paragraphs I-III. A.1; III.B.1-3,6,9-10,14-15; IV.A. 1-47, 97-100; V. Ci.1 are realleged.

2. Wells, Harriss, Cruzado, ortiz, McClure, Christman, Barron, and maguire did agree, collude, and combine to amputate Mr. Holston's hands whereby maguire and ortiz did proceed to amputate Mr. Holston's left hand by cutting his left wrist. In furtherance of said agreement, ortiz

93

did provide a sharp scalpel like apparatus for said amputation; additionally, he deliberately failed to note Mr. Holston's injuries on the diagram of injury and allowed Mr. Holston to become infected. All confederates failed to report Mr. Holston's injuries and abuse and all did falsify records and reports in furtherance of said agreement and to conceal same. Compare (EX. B) with (EX. D) and (EX. ).

3. Mr. Holston suffered physical scarring, infections, pain, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

CI. Count Ninety: 1983 Conspiracy: Excessive Force: Maguire: Right Wrist

1. Paragraphs I-III. A.1; III. B.1-3, 6, 9-10, 14-15; IV. A.1-47, 97-100; V.K. 2-3; V. Ck. 1-3 are realleged.

2. Wells, Harriss, Cruzado, Ortiz, McClure, Christman, Barron, and Maguire did agree and combine to amputate Mr. Holston's right hand whereby Maguire and Ortiz did attempt maliciously amputate Mr. Holston's right hand. Further, and in furtherance of said combination, Ortiz deliberately failed to record Mr. Holston's wrist injuries on the diagram of injury and allowed Mr. Holston to become infected without alerting the Dr. All confederates did fail to report Mr. Holston's injuries and abuse; and they did falsify the reports required by Fla. Admin. Code r. 33-602.210(9)(a); F.S. 944.35(4)(a), (b)

3. Mr. Holston suffered physical scarring, pain, mental, and emotional distress.

94

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, jointly and severally, Costs, and a trial by jury.

Cm. Count Ninety one: 1983 Conspiracy: Excessive Force: Barron-pepper spray.

1. This is an action for conspiracy to commit excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III. A.1; III.B.1-3, 5; IV. A.1-37, 97-100; V.0.2-6 are realleged.

3. Romulus, Harris, Barron, and maguire did agree and combine to pepper spray, maliciously and sadistically, Mr. Holston whereby Barron did pepper spray Mr. Holston. In furtherance of said Combination, Barron maliciously pepper sprayed mr Holston, Harris, Barron, and maguire Failed to report mr Holston's black eyes and injuries and did falsify reports required by Fla. Admin. Code r. 33-602.210

4. Mr. Holston suffered physical pain, discomfort, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, jointly and severally, Costs, and a trial by jury.

Cn. Count Ninety Two: 1983 Conspiracy: Excessive Force: J. Cruzado: First Pepper spray.

1. This is an action for conspiracy to commit excessive force pursuant to 42. U.S.C. 1983.

95

2. Paragraphs I-III.A.1; III.B.1-3,6,9-10, 14-15; IV. A.1-56, 97-100; V. M.2-6 are realleged.

3. Wells, Harriss, Barron, McClure, Ortiz, Maguire, Christman, and Cruzado did agree and combine to inflict excessive force on Mr. Holston whereby Cruzado did pepper spray Mr. Holston maliciously and sadistically. In furtherance of said agreement, all failed to report the incident and filed false reports required under Fla. Admin. Code r. 33-602.210 to conceal their agreement and collusion.

4. Mr. Holston suffered physical pain, burning, mental and emotional distress, and discomfort.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

Co. Count Ninety Three: 1983 Conspiracy: Excessive Force: J. Cruzado: Second pepper spray.

1. This is an action for conspiracy to commit excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, 14-15; IV.A.1-57, 97-100; V.M. 2-6 are realleged. Paragraphs V.N. 2-6 are realleged.

3. Wells, Harriss, Barron, McClure, Ortiz, Maguire, Christman, and Cruzado did agree and combine to inflict malicious and sadistic force on Mr. Holston whereby Wells directed Cruzado to sadistically pepper spray Mr. Holston a second time while he was handcuffed behind his back and still drenched in the pepper spray from Barron and Cruzado's first pepper spray. In

96

Case 2:20-cv-14421-AMC   Document 1-1   Entered on FLSD Docket 11/30/2020   Page 97 of 246

furtherance of said collusive agreement, all defendents did intentionally fail to report their malicious acts and did falsify use of force reports required by Fla. Adm.n. Code r. 33-602.210 to conceal and prevent detection of their agreement collusion, and confederation.

4. Mr. Holston suffered physical burning, pain, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

CP. Count Ninety Four: 1983 Conspiracy: Excessive Force: Harriss: pulling

1. This is an action for conspiracy to commit excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, 14-15; IV.A.1-55, 97-100; V.R.2-6 are realleged.

3. Harriss, Wells, Enzoda, McClure, Ortiz, Barren, Maguire, and Christman all agreed and combined to use excessive, sadistic force on Mr. Holston while he was handcuffed behind his back, hitched to the gate, and still drenched in pepper spray. In furtherance of their collusion, Harriss deliberately failed to investigate, report, and alert the inspector. He wrote Mr. Holston false disciplinary report and a false cm recommendation or referral, then sat in judgment of his own cm referral and recommended Mr. Holston for cm one in violation of due process. He then agreed with others to prevent a "mandatory transfer" and kept Mr. Holston at that prison for over 30 days and tortured him. Further, he authorized the non-reporting of Maguire, who he directed to perform such evil acts, of the incident and

97

others. He approved the filing of false reports required by Fla. Admin. Code r. 33-602.210 to conceal their collusion. He also authorized Captain Rodriguez to dismantle the electrical wiring to shower B-4. All Defendants did falsify use of force and incident report to conceal their action. Harriss did secure transfer of Mr. Holston to Charlotte C.I. where his friend Mr. English would be Mr. Holston's classification officer.

4. Mr. Holston suffered physically, emotionally, and mentally.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

Cg. Count Ninety Five: 1983 Conspiracy: Excessive Force: Maguire: pulling.

1. This is an action for conspiracy to commit excessive force pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III.A.1, III.B.1-3,6,9-10,14-15; IV.A.1-50,97-100; V. Q.2-5 are realleged.

3. Harriss, Wells, Cruzado, Christman, Ortiz, Bannon, McClure, and Maguire did agree and combine to inflict malicious and sadistic force on Mr. Holston whereby Maguire did maliciously pull the hiten wire in and effort to scrape the burned skin off Mr. Holston's wrists in order to cause him further painful injury; and in furtherance of said collusive agreement, All defendants failed to report the abuse, and Mr. Holston's injuries; and they did file false incident and use of force reports mandated by Fla. Admin. Code r. 33-602.210.

98

4. Mr. Holston suffered additional physical injury, pain and suffering, discomfort, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory or punitive damages, jointly and severally, costs, and a trial by jury

Cr. Count Ninety Six: Common law False imprisonment: Cell B1102

1. This is an action for common law civil false imprisonment under 28 U.S.C. 1367.

2. Paragraphs V.CC.2-6 are realleged.

3. Defendants Harris, Barnes, McClure, Maguire, Christman, ortiz, Wells, and Cruzado did intentionally confine Mr. Holston against his will in cell B1102 while he was handcuffed behind his back and drenched in pepper spray.

4. Said unlawful and illegal restraint was unreasonable and unwarranted under the circumstances.

5. Mr. Holston suffered mentally and emotionally.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and ~~punitive~~ damages, costs, and a trial by jury.

Cs. Count Ninety seven: Common law conspiracy: False Imprisonment: Cell B1102

1. ~~This is an action~~ for common law civil conspiracy to

99

commit false imprisonment under 28 U.S.C. 1367.

2. Paragraphs V. Cr. 2-5 are realleged.

3. Harriss, Wells, Cuzedo, Ortiz, Maguire, McClure, Barron, Christman all agreed and combined to falsely imprison Mr. Holston against his will in Cell B1102; and in furtherance of their collusive agreement, all did unlawfully restrain Mr. Holston in said cell and did falsify their incident and use of force reports.

4. Their restraint was unreasonable and unwarranted under the circumstances.

5. Mr. Holston suffered mentally and emotionally.

WHEREFORE, premises considered, ~~plaintiff~~ Mr. Holston Demands Compensatory and ~~██████~~ damages, jointly and severally, costs, and a trial by jury.

Ct. Count Ninety Eight: Common law civil battery: Excessive force: Maguire: Buggery - medical.

1. This is an action for common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. E. 2-7 are realleged.

3. Maguire did intentionally shove an object in Mr. Holston's rectal cavity against his will and did injure him.

4. Mr. Holston suffered mentally and emotionally.

100

WHEREFORE, premises considered, Mr. Holston Demands 5,000,000 dollars, ~~compensatory and punitive~~ damages, costs, and a trial by jury.

CV. Count Ninety Nine: Aiding ~~and~~ and Abetting Common law civil battery:
Maguire: Buggery: medical.

1. This is an action for aiding and abetting common law civil battery
under 28 U.S.C. 1367.

2. Paragraphs I-III. A.1; III.B.1-3, 5; IV.A.1-34, 97-100; V.E.2-7 are
realleged.

3. Harriss and ~~Barron~~ Barron did aid and abet Maguire's Sexual battery
where they were present and deliberately failed to intervene and Romulus.
Barron held Mr. Holston down and all failed to report it, the Sexual
battery, and Filed False incident and use of force reports, and provided Substantial assistance.

4. Mr. Holston suffered mentally, physically, and mentally.

WHEREFORE, premises considered, Mr. Holston Demands 10,000,000 in
compensatory damages, ~~punitive damages, $250,000~~ costs, and a trial
by jury.

CV. Count 100: Concerted action: common law civil battery: Maguire:
Buggery: medical/ Implied concerted action: common law civil battery

1. This is an action for concerted action to commit common law
civil battery under 28 U.S.C. 1367.

2. Paragraphs V.Cv. 2-4 are realleged.                                    101

3. Harriss, Barron, maguire, and Romulus did from a common plan or design intentionally bugger Mr. Holston against his will and all did provide substantial assistance or ratified each other's acts; and in furtherance of said common plan or design, all failed to report the abuse or falsified incident, use of force, and disciplinary reports to conceal their plan or design. Or they did engage or implied concerted action.

4. Mr. Holston suffered physical, mental, and emotional injury and distress.

WHEREFORE, premises considered, Mr. Holston Demands 20,000,000 dollars in compensatory damages, ~~────────────────~~ ~~────~~, costs, and a trial by jury.

**CW. Count 101:** Conspiracy to commit common law civil battery: Maguire: Buggery: medical.

1. This is an action for common law civil **conspiracy** to commit civil battery by buggery.

2. Paragraphs V. cw. 2-4 are realleged.

3. Harriss, Barron, maguire, and Romulus did agree and combine to maliciously and sadistically, intentionally touch Mr. Holston against his will in front of medical whereby maguire did insert an object in Mr. Holston's anorectal cavity; and in furtherance thereof, all did conceal facts and deliberately failed to report said abuse and did file false use of force and incident reports to conceal their collusive agreement and combination.

4. Mr. Holston did suffer physical pain, discomfort, humiliation, embarrassment, mental, and severe emotional distress.

WHEREFORE, premises considered, Mr. Holston demands 25,000,000 dollars in compensatory damages, ▬▬▬▬▬▬▬▬, costs, and a trial by jury.

CX. Count 102: ▬▬▬▬▬▬ Common law civil battery: Maguire: Buggery: B1102.

1. This is an action for common law civil battery by Buggery.

2. Paragraphs V, F.2-6 are realleged.

3. Maguire did maliciously and sadistically intentionally insert an object in Mr. Holston's anorectal cavity against his will in cell B1102

4. Mr. Holston suffered physical pain, humiliation, embarrassment, shame, severe mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston demands 5,000,000 in compensatory damages, ▬▬▬▬▬▬▬, costs, and a trial by jury.

CX. Count 103: Aiding and Abetting common law civil battery: Maguire: Buggery: B1102.

1. This is an action for aiding and abetting common law civil battery by Buggery under 28 U.S.C. 1367.

103

2. Paragraphs I, II, III.A.1, III.B.1-3, 6, 9-10, 14-15; IV.A.1-67, 97-100; V.C.1. 2-3 are realleged.

3. Maguire, Harris, Christman, Barron, ortiz, McClure, Cruzada, and wells did aid, abet, help, assist, and provide substential assistance to maguire whereby they did hold mr Holston down, refuse to intervene, failed to report the abuse, and or filed false use of force and incident reports in order to help and assist maguire in the commission of said tortious conduct and were and are principals in the first degree.

4. Mr. Holston did suffer severe mental and emotional distress.

WHEREFORE, premises considered, mr. Holston Demands 10,000,000 dollars in compensatory damages, ~~████████████████████~~, costs, and a trial.

C2. COUNT 104: concerted action: Common law civil battery: Maguire: Buggery: B1102/ Implied concerted action: common law civil battery.

1. This is an action for concerted action to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V.C.2. 2-4 are realleged.

3. Maguire, Harris, Christman, Barron, ortiz, McClure, Cruzada, and wells did form and from a common plan or design intentionally touch mr. Holster against his will by punetrating his anorectal cavity. said acts were ratified and approved by each Defendant and each provided substential assistance to one another.

104

4. Because of the nature of their employment association, Mr. Holston pleads that an implied concert of action to commit common law civil battery must necessarily grow out of their peculiar relationship.

5. Mr. Holston suffered physically, mentally, and emotionally.

WHEREFORE, premises considered, Mr. Holston Demands 20,000,000 dollars in compensatory damages, ~~████████████~~ ~~████~~, costs, and a trial by jury.

**Da. Count 105:** Conspiracy to commit common law civil battery: Maguire: Buggery: Bil02:

1. This is an action for conspiracy to commit common law battery under 28 u.s.c. 1367.

2. Paragraphs V. C2. 2-5 are realleged.

3. Christman, Harriss, Wells, Cruzado, Maguire, McClure, Ortiz, and Barron did agree and combine to sodomize and torture Mr. Holston against his will and did in fact commit sodomy on him whereby Maguire did penetrate his anorectal cavity while he was helplessly cuffed behind his back and drenched in pepper spray. And in furtherance of their collusive agreement, all deliberately failed to report Mr. Holston's injuries and abuse and falsified incident, use of force, cm, and disciplinary reports to conceal their agreement.

WHEREFORE, premises considered, Mr. Holston Demands 25,000,000 dollars in compensatory damages, ~~████████████~~, costs, and a trial by jury.

105

<u>Db. Count 106:</u> Common law civil Battery: Maguire: Medical

1. This is an action for Trespass vi et armis under 28 U.S.C. 1367

2. Paragraphs V.D. 2-6 are realleged.

3. Maguire did intentionally beat and punch Mr. Holston while he was on the ground drenched in pepper spray, and he was helplessly not resisting.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, cost, and a trial by jury.

<u>Dc. Count 107:</u> Aiding and Abetting common law civil Battery: Maguire: Medical.

1. This is an action for Trespass vi et armis under 28 U.S.C. 1367.

2. Paragraphs V. Db. 2-3 are realleged and Paragraphs III. B. 1-3, 5, ~~8-11~~ ~~13~~ are realleged.

3. Romulus, Barron, and Harriss did encourage Maguire to intentionally beat and strike Mr. Holston against his will. They looked on, failed to report the abuse. Romulus looked out medical windows while Mr. Holston was brutally attacked, Harriss an Barron wrote false incident, disciplinary, and use of force reports as substantial aid and help to Maguire. Barron placed his knee in Mr. Holston's back and held him down and cuffed Mr. Holston up while Harriss looked on and Romulus looked through the window, and Maguire repeatedly punched Mr. Holston.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

Dd. Count 108: Concerted action to commit common law civil battery: Maguire: medical.

1. This is an action for concerted action to commit civil battery under 28 U.S.C. 1367.

2. Paragraphs V. Dc. 2-3 are realleged.

3. Harriss, Romulus, Barron, and maguire did form a common plan design, or scheme to inthtionally touch or strike mr. Holston oo/ his will whreby Maguire did beat mr. Holston with clenched fist while Barron held him on the ground while both Romulus or looked on from different locations and all ratfird, approved, or connived whreby they failed to report said illegal and torti Additionally, the concerted to conceal said acts by falsifyi use of force, disciplinary, and cm reports.

4. Because of the nature of their relationships, cn of action grows out of said special relationships.

WHEREFORE, premises considred, Mr. Holston Demands compensa tory punitive damages, costs, and a trial by jury.

De. count 104: conspiracy to commit commo, medical.

1. This is an action for conspiracy to commit.

battery under 28 U.S.C. 1367.

2. Paragraphs V. Dd. 2-4 are realleged.

3. Romulus, Harris, Barron, and Maguire did agree and combine to inthtionally beat, strike, and hit Mr. Holston against his will whereby Maguire did beat, strike, and hit Mr. Holston against his will. In furtherance thereof, all four failed to report the excessive force and or filed false incident, use of force, disciplinary, and CM reports to conceal their combination.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.

**Df. Count 109:** Common law civil battery: Maguire: Tight cuffs.

1. This is an action for common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. H. 2-7 are realleged.

3. At the behest of Wells and Harris, Maguire did excessively tighten the handcuffs around Mr. Holston wrists which caused significant pain, discomfort, and injury. Further said excessively tightned cuffs were inthtionally done against Mr. Holston's will.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

**Dg. Count 110:** Aiding and abetting common law civil battery: Maguire: Tight cuffs.

108

1. This is an action for aiding and abetting common law civil battery under 28 U.S.C. 1367.

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, 14-15; V.H.2-7 are realleged and Paragraph V.DF.3 is realleged.

3. Harris, maguire, wells, Cruzado, Barron, Christman, McClure, and ortiz did aid, abet, and help maguire commit said malicious act whereby they encouraged same, connived, failed to report and wrote falsified use of force, disciplinary, CM, and incident reports to abet and aid and they did ratify and approve said conduct.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~damages~~ damages, costs, and a trial by jury.

**Dh. Count ~~III~~ IV:** Concerted action to commit common law civil battery: maguire: Tight cuffs: Implied Concert of action.

1. This is an action for concerted action to commit common law civil battery.

2. Paragraphs V.Dg.2-3 are realleged.

3. Harris, maguire, wells, Cruzado, Barron, Christman, McClure, and ortiz all engaged in a common plan, design, or scheme to intentionally tighten Mr. Holston's cuffs against his will to cause him significant injury whereby they ratified and approved the tortious act.

4. Because of the nature of their employment, a special relationship exists among the defendants whereby an implied concert of action grows out of same. 109

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

Di. count 113: conspiracy to commit common law civil battery: Maguire: tight cuffs.

1. This is an action for conspiracy to commit common law civil battery under 28 u.s.c. 1367.

2. Paragraphs V. DH. 2-3 are realleged.

3. Harriss, McClure, Christman, ortiz, Wells, Barron, maguire, and cruzado did agree and combine to intentionally beat Mr. Holston against his will and in furtherance of said agreement, maguire did tighten the cuffs excessively to cause Mr. Holston severe injury; and all did fail to report Mr. Holston's severe wrist injuries and did file false incident, use of force, disciplinary, and incident reports to conceal their combination.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and punitive~~ damages, jointly and severally, costs, and a trial by jury.

Di. count 114: common law civil battery: maguire: burning.

1. This is an action for common law battery (civil) under 28 u.s.c. 1367.

2. Paragraphs V.I 2-7 are realleged.

3. maguire did burn Mr. Holston with electricity by heating the excessively air tight or skin tight handcuffs against Mr. Holston's

110

will and did cause severe permanent injury to Mr. Holston's wrists.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

__DK. COUNT 115:__ Aiding and abetting common law civil battery: Maguire: Burning

1. This is an action for aiding and abetting common law civil battery under 28 U.S.C. 1367.

2. Paragraphs I-III A.1; III B.1-3, 6, 9-10, 14-15; IV. A.1-55, 97-100; V.I. 2-7; V. Oj. 2-3 are alleged.

3. Maguire, McClure, Wells, Christman, Harriss, Crutado, Ortiz, and Barron did aid, help, abet, and encourage Maguire to burn Mr. Holston's wrists, and they did approve, sanction and ratify Maguire's intentional burning of Mr. Holston against his will to inflict cruel and unusual punishment sadistically. (Ex. D) (Ex. E)

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

__DI. COUNT 116:__ Concerted action to commit common law civil battery: Maguire: Burning.

1. This is an action for concerted action to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. DK. 2-3 are realleged.

111

3. WELLS, Maguire, McClure, Ortiz, Barron, Christman, Harriss, and Cruzado did form a common plan or design to maliciously and sadistically intentionally burn Mr. Holston with electricity against his will whereby they did inflict cruel, atrocious, heinous, and unusual punishment on him. Each did ratify or approve each others conduct and did provide substantial assistance to execute their common plan. Further, an implied concerted action exits because of their special relationship.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

**Om. Count** ~~III~~: conspiracy to commit common law civil battery: Maguire: Burning.

 1. This is an action for conspiracy to commit common law civil battery under 28 U.S.C. 1367.

 2. Paragraphs V. DK. 2-3; and V. OI. 2-3 are realleged.

 3. McClure, Barron, Harriss, Wells, Cruzado, Ortiz, Maguire, and Christman all agreed and combined to intentionally burn Mr. Holston against his will; and in furtherance thereof, Maguire did burn Mr. Holston by electricity being funneled to handcuffs producing heat to burn or sear his skin and all did designedly fail to report Mr. Holston's injuries and abuse; and all did falsify use of force, incident, disciplinary, and cm reports to conceal their agreement.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, jointly and severally, costs, and a trial by jury.

Da. Count III: common law civil battery: Maguire and ortiz: Right wrist

1. This is an action for common law civil battery under 28 U.S.C. 1983.

2. Paragraphs V. 1, 2-3 are realleged.

3. Maguire did cut mr. Holston's Right wrist intentionally and against his will and ortiz did provide the sharp object for him to use. (Ex. D)

WHEREFORE, premises considered, mr. Holston Demands compensatory damages, costs, and a trial by jury.

Do. Count III: Aiding and abetting common law civil battery: Maguire and ortiz: Right wrist.

1. This is an action for common law aiding and abetting civil battery under 28 U.S.C. 1367.

2. Paragraphs V. On. 2-3; III. B. 1-3, 6, 9-10, 14-15 are realleged.

3. Harriss, ortiz, Maguire, Barron, McClure, Christman, Wells, and Cruzado did aid and abet Maguire in cutting Mr. Holston's Right wrist to amputate same, intentionally and against Mr. Holston's will. All failed to report and/or did file falsified disciplinary, use of force, incident and Cm reports to conceal Maguire's action and to approve, approbate, and ratify said actions. Compare (Ex. B) with (Ex. D).

WHEREFORE, premises considered, mr. Holston Demands compensatory damages, costs, and a trial by jury.

113

PP. Count 120: Concerted action to commit common law civil battery or Implied Concerted action to commit common law civil battery: Maguire and ortiz: Right wrist.

1. This is an action for concerted action to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. DO. 2-3 are realleged.

3. Harriss, Wells, Cruzado, Barron, Mcclure, Ortiz, Christmas and Maguire did form a common design or plan to amputate Mr. Holston's right wrist in retaliation for being a jailhouse lawyer whereby Maguire did proceed to cut Mr. Holston's right wrist. All did ratify and approve Maguire's conduct whereby Ortiz provided the weapon and all did fail to report Mr. Holston's severe injuries and filed false incident, use of force, disciplinary, and Em reports to further their common design or plan; and by their special relationships, did form an implied concerted action.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

DQ. count 120: Conspiracy to commit common law civil battery: Maguire and ortiz: Right wrist.

1. This is an action for conspiracy to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. Dp. 2-3 are realleged.

3. Harriss, Wells, Cruzado, Barron, Mcclure, Ortiz, Christmas, and

114

maguire did agree and combine to use excessive force on mr. Holston whereby maguire did intentionally cut mr. Holston's right wrist to amputate same against his will; and in furtherance of said agreement, they did falsify use of force, disciplinary, incident, and cm reports to conceal their combination.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, jointly and severally, costs, and a trial by jury.

**Dr. Count 122:** Common law Civil battery: Maguire and ortiz: left wrist.

1. This is an action for common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V.J. 2-7 are realleged.

3. maguire did intentionally cut mr. Holston's wrist with a medical tool provided by ortiz in an attempt to amputate Mr. Holston's left hand against his will

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

**Os. Count 122:** Aiding and Abetting common law civil battery: maguire and ortiz: Left wrist.

1. This is an action for aiding and abetting common law civil battery under 28 U.S.C. 1367.

2. Paragraphs I-III A.1) III. B. 2-3, 6, 9-10, 14-159 V. Dr. 2-3 are

realleged.

3. Harriss, ortiz, Wells, cruzado, Christman, McClure, Barron, and Maguire did aid and abet each other and provide substantial assistance in cutting Mr. Holston's wrist in an effort to amputate his left hand. Further, they provided substantial assistance to Maguire by their deliberate failure to report Mr. Holston's injuries and falsification of use of force, incident, disciplinary, and cm reports whereby they ratified and approved said conduct.

WHEREFORE, premises Considered, Mr. Holston Demands compensatory ▄▄▄ ▄▄▄ damages, costs, and a trial by jury.

**Dt. Count 124:** Implied/Concerted action to commit common law civil battery.

1. This is an action for implied/concerted action to commit civil battery under 28 U.S.C. 1367.

2. Paragraphs V.0S.2-3 are realleged

3. Harriss, ortiz, wells, cruzado, christman, McClure, Barron, and Maguire did form a Common design or plan to amputate Mr. Holston's left hand whereby Maguire proceeded to attempt to cut Mr. Holston's wrist on the left side. They all failed to report Mr. Holston's injuries and falsified their reports to ratify and conceal said acts.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ▄▄▄ ▄▄▄ damages, costs, and a trial by jury.

116

DU Count 126: Conspiracy to commit common law civil battery: maguire and ortiz left wrist.

1. This is an action for conspiracy to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V.Dt. 2-3 are realleged

3. Harris, ortz, wells, cruzado, christman, maguire, Barron, and mcclure did agree and combine to amputate Mr. Halston's left hand whereby maguire did cut Mr. Halston's wrist; and in furtherance of said agreement and collusion, ortiz provided the medical tool and all falsified reports or failed to file them to conceal their collusive agreement.

WHEREFORE, premises considered, Mr. Halston Demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

DV. COUNT 126: Common law civil battery: maguire: extraction beating in shower.

1. This is an action for common law civil battery under 28 U.S.C. 1367.

2. Paragraphs I-III. A. 1; III. B. 2; IV. A. 1-60, 97-100; V.L. 3-6 are realleged.

3. Maguire did intentionally beat and pinch mr. Halston against his will in shower B-3 while Mr. Halston was handcuffed behind his back on the ground after he had been pepper sprayed at least 3 times without a decontamination shower.

WHEREFORE, premises considered, Mr. Halston Demands compensatory    117

████████ damages, costs, and a trial by jury.

DW. Count 127: Aiding and abetting common law civil battery: maguire Extraction beating in shower.

1. This is an action for aiding and abetting common law civil battery under 28 U.S.C. 1367.

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, 14-15; V. DV. 2-3 are realleged.

3. Harnss, Wells, Cruzado, McClure, Barron, ortiz, Christman, did aid, abet, encourage, and assist maguire in beating mr. Holston in shower B-3 while he was cuffed behind his back while he was burned and drenched in 3 rounds of pepper spray. All did ratify and approve said acts and did fail to report said injuries and falsified their reports to conceal their deeds which were against mr. Holston's will.

WHEREFORE, premises considered, mr. Holston Demands Compensatory and ████████ damages, costs, and a trial by jury.

DX. Count 128: Implied/concerted action to commit civil common law battery: maguire: Extraction beating in shower

1. This is an action for implied/concerted action to commit civil battery under 28 U.S.C. 1367.

2. Paragraphs V. DW. 2-3 are realleged.

3. Harriss, Wells, Cruzado, McClure, Barron, ortiz, Christman, and maguire did form a common design and/or plan to intentionally

118

beat and strike Mr. Holston while he was cuffed behind his back, while he was on the floor, and while he was still drenched in three rounds of pepper spray. They all ratified and approved Maguires acts; further, they did fail to note Mr. Holston's severe injuries, and they did falsify use of force, incident, disciplinary, and cm reports to conceal their common plan or design and their acts and special relationships engenders, at least, an implied concerted action.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~~ ~~~ damages, costs, and a trial by jury.

Dy. Count 128: Conspiracy to commit Common law battery: Maguire: Extraction beating in shower.

1. This is an action for conspiracy to commit common law battery under 28 U.S.C. 1367.

2. Paragraphs vow. 2-3 and v. ax. 3 are realleged.

3. Harriss, Wells, Cruzado, Christman, Barron, McClure, Ortiz, and Maguire did agree and combine to intentionally punch, strike, and beat Mr. Holston against his will whereby Maguire did punch, strike, and beat Mr. Holston intentionally and against his will and in furtherance thereof; all did fail to report Mr. Holston's injuries and did falsify use of force, incident, disciplinary, and cm reports to conceal their agreement and combination.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~~ ~~~ damages, jointly and severally, costs, and a trial by jury.

<u>Dy. Count 13Q</u>: Common law civil battery: Maguire: B1102.

1. This is an action for common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. G. 2-6 are realleged.

3. Maguire did intentionally seclude Mr. Holston by ushering him into cell B1102 while he was cuffed behind his back and drenched in 3 rounds of pepper spray, and throwing him on the floor facedown; whereupon, he did began punching, striking, and beating Mr. Holston in his face and about his head while the extraction team members held him down. Mr. Holston was restrained and beaten against his will.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

<u>Dy. Count 13Q</u>: Aiding and abetting common law civil battery: Maguire: B1102.

1. This is an action for aiding and abetting common law civil battery under 28 U.S.C. 1367.

2. Paragraphs I-III. A.1; III. 3.1-3, 6, 9-10, 14-15; IV. A. 1-63, 97-100; V. G. 3-6; V. Dy. 3 are realleged.

3. Harris, McClure, Christmas, Ortiz, Barron, Wells, and Cruzado aid                    120

assist, aid, and help maguire intentionally strike, punch, and beat mr Holston against his will whereby they held him down, failed to report Mr. Holston's injuries, and falsified incident, cm, disciplinary, and use of force reports to obet maguire's actions and to ratify, approve, and conceal same.

WHEREFORE, premises considered, Mr. Holston demands compensatory ██████████ damages, costs, and a trial by jury

Eg. Count 131: Concerted action to commit common law civil battery: maguire: B1b2: Implied Concerted action.

1. This is an action for concerted action to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs SXD2. 2-3 are realleged.

3. Harris, mcclure, christman, ortiz, barron, wells, cruzado and maguire did form a common design or plan to intentionally punch, strike, and beat mr. Holston against his will by holding him down, failing to report mr. Holston's injuries or abuse, and by falsifying incident, use of force, disciplinary, and cm reports to ratify and approve said conduct to conceal same. An implied concert of action exists based on their relationship.

WHEREFORE, premises considered, mr. Holston Demands compensatory ██ ██████ damages, costs, and a trial by jury.

121

Eb. Count 133: Conspiracy to commit common law civil battery: Maguire: B1102.

1. This is an action for Conspiracy to commit common law civil battery under 28 U.S.C. 1367

2. Paragraphs V. Ea. 2-3 are realleged.

3. Harriss, Wells, Lucado, Barron, Ortiz, Maguire, McClure, and Christman did agree and combine to intentionally pinch, strike, and beat Mr. Holston against his will whereby Maguire did pinch, strike, and beat Mr. Holston against his will; and in furtherance of said agreement, they did deliberately fail to report Mr. Holston's injuries or abuse and did falsify incident, use of force, disciplinary, and cm reports to conceal their agreement.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

Ec. Count 134: Common law civil battery: Barron: pepper spray: medical.

1. This is an action for Trespass vi et armis under 28 U.S.C. 1367.

2. Paragraphs V. 0, 2-6 are realleged.

3. Barron did intentionally pepper spray Mr. Holston in front of medical against his will while Harriss watched on Romulus 122

watched through medical window.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▓▓▓▓▓ damages, costs, and a trial by jury.

Ed. Count 13c: Aiding and abetting common law civil battery: Barron: Pepper spray: medical.

1. This is an action for aiding and abetting common law civil battery under 28 U.S.C. 1367.

2. Paragraphs III. 8.1-3, 5 and V. Ec. 2-3 are realleged.

3. Harris, Romulus, maguire, did assist and aid Barron in maliciously pepper spraying Mr. Holston against his will whereby they deliberately failed to report his injuries, abuse, and watched as he was beaten and pepper sprayed and they provided substantial assistance by filing false reports: disciplinary, use of force, incident, and Cm. to ratify and approve said acts.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▓▓▓ ▓▓▓▓▓ damages, costs, and a trial by jury.

Ee. Count 13d: Implied/concerted action to commit common law civil battery: Barron: Pepper spray: medical.

123

1. This is an action for Implied/Concerted action to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. Ed. 2-3 are realleged.

3. Harriss, Romulus, Barron, and maguire did concert to form a common plan or design to intentionally pepper spray Mr. Holston against his will whereby they ratified and approved Barron's conduct by not reporting Mr. Holston's injuries and did provide substantial assistance by falsifying use of force, disciplinary, incident, and CM reports to conceal Barron's actions; and because of their unique and special relationships, an implied concerted action exists.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~_____~~ damages, costs, and a trial by jury.

E. Count 130: Conspiracy to commit common law civil battery: Barron: Pepper spray: medical.

1. This is an action for Conspiracy to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. Ee. 2-3 are realleged.

3. Harriss, Romulus, Barron, and maguire did agree, confederate, collude,       122

and combine to intentionally pepper spray mr Holston against his will whereby Barron did intentionally pepper spray mr. Holston against his will. And in furtherance of their collusive agreement, all of them did fail to report Mr. Holston's injuries and abuse and did falsify use of force, incident, disciplinary, and cm reports to conceal their combination.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

Eg. Count 138: Common law battery: Cruzado: First pepper spray.

1. This is an action for common law civil battery under 28 u.s.c. 1367

2. Paragraphs V.M. 2-6 are realleged.

3. Cruzado intentionally pepper sprayed mr. Holston against his will. At that time, Mr. Holston was still drenched in pepper spray and was cuffed behind his back.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

Eh. Count 139: Aiding and abetting common law civil battery: Cruzado: First pepper spray.

1. This is an action for aiding and abetting common law civil battery          123

under 28 U.S.C. 1367.

2. Paragraphs I-III A.1; III.B.1-3,6,9-10,14-15; IV.A.1-56,97-100; V. Eg. 2-3 are realleged.

3. Harris, Maguire, Wells, Ortiz, Christman, McClure, and Barron did help and assist or provided substantial assistance to Cruzado whereby Wells directed Cruzado to pepper spray Mr. Holston against his will. All fail to report Mr. Holston's injuries or abuse; and all did falsify incident, use of force, disciplinary, and cm reports to conceal Cruzado's actions.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~damages~~ damages, costs, and a trial by jury.

Ei. Count 140: Implied/concerted action to commit common law civil battery: ~~Maguire~~ Cruzado: First pepper spray.

1. This is an action for implied/concerted action to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. Eh. 2-3 are realleged.

3. Harris, Maguire, Wells, Ortiz, Christman, McClure, Barron, and Cruzado did form a common plan or design to batter Mr. Holston whereby Wells did direct Cruzado to intentionally pepper spray Mr.

124

Holston against his will. And in furtherance of that common plan or design, Cruzado pepper sprayed Mr. Holston intentionally and against his will and all failed to report Mr. Holston's injuries and did ratify and approve said conduct whereby they falsified disciplinary, use of force, cm, and incident reports to conceal their common plan or design. An implied concerted action exists.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

Ej. Count 146: Conspiracy to commit Common law civil battery: Cruzado: First pepper spray.

1. This is an action for conspiracy to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. Ei. 2-3 are realleged.

3. Harriss, Wells, Maguire, Christman, Ortz, McClure, Barron, and Cruzado did agree and combine to batter Mr. Holston whereby Wells directed Cruzado to intentionally pepper spray Mr. Holston while he was cuffed behind his back whereby Cruzado did maliciously intentionally pepper sprayed Mr. Holston against his will. In furtherance of their agreement, they did fail to report Mr. Holston's injuries and abuse and did falsify disciplinary, cm, use of force, and incident reports to conceal their collusive agreement.

125

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~and~~ damages, jointly and severally, costs, and a trial by jury.

E.k. Count 142: common law battery (civil): Cruzado: second pepper spray.

1. This is an action for common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. N. 2-6 are realleged.

3. Cruzado did at the direction of wells intentionally pepper spray Mr. Holston a second while he was cuffed behind his back and still drenched in the first two pepper sprays.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~and~~ damages, costs, and a trial by jury.

E.l. Count 143: Aiding and abetting common law civil battery: Cruzado: second pepper spray.

1. This an action for aiding and abetting common law civil battery under 28 U.S.C. 1367.

2. Paragraphs I-III. A.1; III. B. 1-3, 6, 9-10, 14-15; IV. A. 1-71; V. N. 2-6 are realleged.

126

3. Harriss, Wells, Maguire, Ortiz, Christmas, McClure, and Bucca did help, assist, aid and abet Cruzado in pepper spraying mr. Holster whereby they incouraged him, they designedly failed to intervene, they connived by failing to report the injuries and abuse, and they all falsified their reports: disciplinary, em, use of force, and incident to conceal their torteous acts, and they did provide substantial assistance thereby.

WHEREFORE, premises considered, mr. Holster demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

Em. Count 14 ~~#~~: Concerted action to commit common law civil battery: Cruzado: second pepper spray.

1. This is an action for concerted action to commit common law civil battery under 28 u.s.c. 1367

2. Paragraphs V. E1. 2-3 are realleged.

3. Harriss, Wells, Maguire, Ortiz, Christmas, McClure, Bucca, and Cruzado did form a common plan or design to intentionally pepper mr. Holster against his will whereby Cruzado did intentionally pepper mr. Holster. All did ratify and approve said conduct whereby they failed to report mr. Holster's severe injuries and abuse, and they did falsify their reports: disciplinary, em, use of force, and incident to conceal their concerted action. They did form an implied concerted action based on their special relationship.     127

WHEREFORE, premises considered, mr. Holsten demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

En. Count 145: Conspiracy to commit common law civil battery: Cruzado: second pepper spray.

1. This is an action for conspiracy to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. En. 2-3 are realleged.

3. Harass, Wells, Cruzado, McClure, Maguire, ache, Bacon, and Christman did agree and combine to batter Mr. Holsten; and in furtherance of said agreement, Wells did direct Cruzado to pepper spray Mr. Holsten maliciously and intentionally and against his will. And all failed to report Mr. Holsten's injuries and abuse and falsified their reports: En. disciplinary, incident, and use of force to conceal their collusive agreement.

WHEREFORE, premises considered, Mr. Holsten demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

Eo. Count 146: Common law civil battery: Maguire: Pulling.

1. This is an action for common law civil battery under 28 U.S.C. 1367.

128

2. Paragraphs V Q. 2-5 are realleged.

3. Maguire did intentionally touch Mr. Holston against his will whereby he did pull the hitchwire to which Mr. Holston was cuffed behind his back and while Mr. Holston was drenched in pepper spray, in order to scrape the seared skin off his wrist to maliciously inflict additional pain on him.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~punitive~~ damages, costs, and a trial by jury.

Ep. Count 14~~0~~: Aiding and abetting common law civil battery: Maguire: Pulling

1. This is an action for ~~aiding and~~ abetting common law civil battery under 28 U.S.C. 1367.

2. Paragraphs I-III.A.1; III.A.2-3,6,9 nia 1415; IV.A.1-50, 97-100; V.Q. 3-5 are realleged further, Paragraphs V. Ep. 2-3 are realleged.

3. Harris, Wells, Curado, Ertis, Christmas, McClug, and Barnes did substantially assist Maguire in pulling the hitchwire to inflict sadistic pain on Mr. Holston whereby they conspired, failed to report Mr. Holston's injuries and abuse, and falsified their reports: on disciplinary, use of force, and incident to conceal their evil and malicious acts.

129

WHEREFORE, premises considered, Mr. Holster demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

**Eq. count 14B:** concerted action to commit common law civil battery: maguire: pulling

1. This is an action for concerted action to commit common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. Ep. 2-3 are realleged.

3. Harris, Wells, Cruzado, Christman, Ortiz, McClure, and Barron did concert with maguire and form a common plan or design to maliciously and intentionally inflict sadistic injury and pain on Mr. Holster by pulling the hitchwire; they did ratify and approve said malicious act whereby they deliberately failed to report maHolster's injuries and abuse and did falsify their reports: cm, disciplinary, incident, and use of force to conceal their common plan o-design.

WHEREFORE, premises considered, Mr. Holster Demands Compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

**Eq. Count 14B:** conspiracy to commit common law civil battery: maguire: pulling.

130

1. This is an action for conspiracy to commit common law civil

battery under 28 U.S.C. 1367.

2. Paragraphs V. ¶q 2–3 are realleged.

3. Harris, Wells, Corrado, Ortiz, McClure, Christmas, Duncan, and Maguire did agree and combine to maliciously and intentionally inflict injury and pain on Mr. Halsten against his will; and in furtherance of said agreement, Maguire did pull the bite-wire to inflict severe injury and pain. Additionally, they all falsified their reports on disciplinary, use of force, and incident to conceal their agreement.

WHEREFORE, premises considered, Mr. Halsten demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

Es. Count 150: common law civil battery; Harris; pulling.

1. This is an action for common law civil battery under 28 U.S.C. 1367.

2. Paragraphs V. R. 2–6 are realleged.

3. Harris did intentionally and maliciously touch Mr. Halsten against his will whereby he pulled the bite-wire to which Mr. Halsten was attached behind his back to scrape the burned skin off his wrists to brutally inflict additional pain on Mr. Halsten while he was drenched in pepper spray.

131

WHEREFORE, premises considered, Mr. Holston demands compensatory ▮▮▮▮ damages, costs, and a trial by jury.

Et. ▮ Count 150: Aiding and abetting common law civil battery: Harriss: pulling.

1. This is an action for aiding and abetting common law civil battery under 28 U.S.C. 1367.

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, 14-15; IV.A.1-55, 97-100; V.R.3-6 are realleged.

3. Wells, cruzada, maguire, mcclure, ortiz, Bacon, christman did provide substantial assistance to Harriss in his intentionally touching Mr. Holston against Mr. Holston's will whereby they: Connived, failed to report Mr. Holston's injuries and abuse, and falsified: cm, use of force, disciplinary, and incident reports and thus ratified said conduct to conceal same.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▮▮▮▮ damages, costs, and a trial by jury.

Et. Count 152: Concerted action to commit common law civil battery: Harriss: pulling.

132

1. This is an action for concerted action to commit common law

civil battery under 28 u.s.c 1367.

2. Paragraphs V Et. 2-3 are realleged

3. Maguire, Wells, ortiz, Christmas, Cruzada, McClure, Baccas, and Harris did concert to form a common plan or design to maliciously inflict injury and pain on Mr. Holston whereby Harris deliberately pulled the hitchwire to scrape the burned skin off Mr. Holston's burned wrist to inflict additional injury and pain; and all ratified and approved said evil conduct whereby they: connived, failed to report Mr. Holston's severe injuries and abuse, falsified use of force, cm, incident, and disciplinary reports to conceal their concerted action.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

Ex. Count 153: Conspiracy to commit common law civil battery; Harris; pulling

1. This is an action for conspiracy to commit common law civil battery under 28 u.s.c. 1367

2. Paragraphs V Et. 2-3 are realleged.

3. Maguire, Wells, Cruzada, ortiz, McClure, Christmas, Baccas,     133

Harriss did agree and combine to maliciously and intentionally battu Mr. Holston against his will; and in furtherance of said agreement, Harriss sadistically pulled the hitchwire to inflict more injury and pain. They all failed to report Mr. Holston's severe injuries and abuse, and they all falsified: use of force, disciplinary, etc., and incident reports to conceal their combination.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, jointly and severally, costs, and a trial by jury.

Ew. Count 15¾: Common law Civil assault: Harriss: pulling

1. This is an action for common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V. Es. 2-3 are realled.

3. Harriss did by word or act instill a well founded fear in Mr. Holston that he was going to inflict more injury and pain on him by pulling the hitchwire to scrape the burned skin off of Mr. Holston's wrists where he had the ability to execute same when Mr. Holston did observe him reaching for the wire whereby he did began repeatedly pulling the wire and did cause further injury and pain.

WHEREFORE, premises considered, Mr. Holston Demands compensatory       134

███████ damages, costs, and a trial by jury.

Ex. Count 155: Aiding and abetting common law civil assault: Harriss: pulling.

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C 1367.

2. Paragraphs V Et. 2-3 and V Ew. 2-3 are realleged.

3. All Defendants: wells, McClure, Maguire, ortiz, Barnes, christensen and Cruzada did provide substantial assistance to Harriss whereby they Conspired, failed to report Mr. Hairlan's injuries and abuse, and falsified icm, disciplinary, use of force, and incident reports to Conceal Harriss's Malicious and sadistic assault.

WHEREFORE, premises considered, Mr. Halston demands compensatory ███████ damages, costs, and a trial by jury.

Ex. Count 156: concerted action to commit common law civil assault: ███████ Harriss: pulling.

1. This is an action for concerted action to commit common law civil assault under 28 u.s.c. 1367.

135

2. Paragraphs V. Ex. 2-3 are realleged.

3. Wells, McClure, Ortiz, Maguire, Bacon, Christmas, Cruzado, and Harris did act in concert and form a common plan or design to intentionally and maliciously assault Mr. Holston and all failed to report Mr. Holston's injuries or abuse and all falsified incident, use of force, cm, and disciplinary reports whereby they ratified and approved said sadistic pulling of the hitchwire.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~          ~~ damages, costs, and a trial by jury.

E2 <u>Count 15</u>: conspiracy to commit common law civil assault:
Harris: pulling

1. This is an action for conspiracy to commit common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V.E, 2-3 are realleged.

3. Harris, Maguire, McClure, Ortiz, Bacon, Christmas, Wells, and Cruzado did agree and combine to assault Mr. Holston whereby Mr. Holston continuously observed Harris repeatedly pull the hitchwire to maliciously inflict pain and injury. In furtherance, of their agreement, they did falsify use of force, incident, cm, and disciplinary reports to conceal their agreement.

136

WHEREFORE, premises considered, Mr. Holston Demands compensatory

████████ damages, jointly and serically, costs, and a trial by jury.

Fa. Count 15B: Common law civil assault: Maguire: Pulling

1. This is an action for common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V.E.a 2-3 are realleged

3. Maguire did offer a threat by word or act that did instill a well founded fear in Mr. Holston that violence was imminent in that maguire had the ability to carry out said threat, and he did carry out said threat whereby Mr. Holston observed him repeatedly pull the hitchwire to sadistically inflict more injury and pain on Mr. Holston.

WHEREFORE, premises considered, Mr. Holston Demands a trial by jury, compensatory ████████ damages, along with costs.

Fb. Count 15B: Aiding and abetting common law civil assault: Maguire: pulling.

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C. 1367.

137

2. Paragraphs V.E.a 2-3 are realleged

3. Harris, Wells, Cazada, Ortiz, McClure, Barnes, and Christmas did help and assist Maguire whereby the provided substantial assistance in offering corporeal threat to Mr. Holston by word or act and did instill a well founded fear in Mr. Holston that violence was imminent when they had the ability to carry out said threat and Mr. Holston observed Maguire as he maliciously, repeatedly pulled the hitch wire.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

EC. Count 150: Concerted action to commit common law civil assault: Maguire: pulling.

1. This is an action for concerted action to commit common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V. Fb 2-3 are realleged.

3. Wells, Cazada, Barnes, Harris, Ortiz, McClure, Christmas, and Maguire did concert and form a common plan or design to maliciously assault Mr. Holston whereby he repeatedly observed Maguire continuously pull the hitch wire to cause him further injury and pain, and they approved and ratified said acts

WHEREFORE, premises considered, Mr. Holston demands compensatory   138

▆▆▆▆▆ damages, costs, and a trial by jury.

Ed. Count 160: Conspiracy to commit common law civil assault: Maguire: pulling

1. This is an action for conspiracy to commit common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V.FC. 2-3 are realleged.

3. Harris, Christmas, Wells, Cruzado, Ortiz, McClure, Bacon, and Maguire agreed and combined to maliciously assault Mr. Holston whereby Maguire did intentionally offer corporeal injury to Mr. Holston Holston and did create a well founded fear in him that violence was imminent, since he had the present ability by word or act to carry out same and did repeatedly pull the hitchwire while Mr. Holston observed. And in furtherance of said agreement, they did deliberately fail to report Mr. Holston's injuries and abuse; and the did falsify use of force, cm, disciplinary, and incident reports to conceal their agreement.

WHEREFORE, premises considered, Mr. Holston demands compensatory ▆▆▆▆▆ damages, jointly and severally, costs, and a trial by jury.

Ee. Count 161: common law civil assault: Maguire: Buggery - medical.

1. This is an action for common law civil assault under 28 U.S.C.    139

1367.

2. Paragraphs v. ct. 2-4 are realleged.

3. Maguire intentionally and maliciously offered by word or act to do violence to the person of Mr. Holston and did instill a well founded fear in Mr. Holston that he was going to shove something in his anorectal cavity when he pulled Mr. Holston's pants down. He did have the present ability carry out said threat, and he did carry out said threat and shoved something in Mr. Holston's anorectal cavity.

WHEREFORE, premises considered, Mr. Holston Demands Compensating damages, costs, and a trial by jury.

F.R. Count 163: Aiding and abetting common law civil assault: maguire; Braggey-medical.

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C. 1367.

2. Paragraphs v. cu. 2-4 are realleged. And Paragraphs v. Fe. 2-3 are realleged.

3. Harass, Romulus, and Barron did aid and abet Maguire's assault whereby they provided substantial assistance in that they did deliberately fail to report Mr. Holston's injuries or abuse and did falsify use of force, incident, cm, and disciplinary reports to ratify

140

or approve said concerted action.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▓▓▓▓▓ damages, costs, and a trial by jury.

Eg. count 164: Implied/Concerted action: common law civil assault: Maguire: Buggery-medical.

1. This is an action for implied/concerted action to commit common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V. cv 2-4 and V FF. 2-3 are realleged.

3. Romulus, Harris, Barnes, Maguire, did concert to form a common plan or design to intentionally and maliciously assault mr. Holston whereby they did ratify and approve said conduct whereby the deliberately failed to report Mr. Holston's injuries and abuse and did falsify c. m, disciplinary, use of force, and incident reports to hide and conceal their common design or plan; and because of their special relationships, an implied concerted action exists.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▓▓ ▓▓▓▓ damages, costs, and a trial by jury.

Eg. count 165: Conspiracy to commit common law civil assault: Maguire: Buggery = medical.

141

1. This is an action for conspiracy to commit common law civil assault under 28 U.S.C 1367.

2. Paragraphs V. Fg. 2-3 are realleged. And paragraphs V. (w) 2-3 are realleged

3. Remulus, Harriss, Barron, and maguice did agree and combine to maliciously assault Mr. Holston whereby maguice did pull mr. Holston pants down at which time mr. Holston became fearful that he was going to be sodomized and maguice did sodomized Mr. Holston. In furtherance of said agreement, all did deliberately fail to report Mr. Holston's injuries and abuse; and they did falsify cm, disciplinary, use of force, and incident reports to conceal their collusive agreement.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

Fi. Count 168: common law civil assault; cruzado: first pepper spray.

1. This is an action for common law civil assault under 28 U.S.C 1367.

2. Paragraphs V. Fg. 2-3 are realleged

3. Cruzado did offer corporeal injury by undue act and did instill a well founded fear in mr. Holston that he was

142

going to pepper spray Mr. Holston where Mr. Holston observed him reach for his pepper spray, and Mr. Holston became fearful that he was going to be pepper sprayed, and Cruzado did in fact pepper spray Mr. Holston at Wells direction.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

Ej. Count 18: Aiding and abetting common law civil assault: Cruzado: First pepper spray.

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V Eh. 2-3 and V Ei. 2-3 are realleged.

3. Harris, Maguire, Wells, Ortiz, Christmas, McClure, Barnes did help or assist and provide substantial assistance to Cruzado whereby they deliberately failed to report Mr. Holston's injuries and abuse and did falsify SM, disciplinary, use of force, and incident reports to conceal their acts and to notify and approve Cruzado's acts.

WHEREFORE, premises considered, Mr. Holston demands compensatory damages, costs, and a trial by jury.

143

F.K. Count 168: Implied/concerted action to commit common law civil assault: Cruzado: First pepper spray.

1. This is an action for implied/concerted action to commit common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V.Ei. 2-3 and V.Ej. 2-3 are realleged.

3. Harris, Maguire, Wells, Ortiz, Christman, McClure, Bacous, and Cruzado did concert to form a common plan or design to maliciously and intentionally threaten Mr. Holston whereby Wells directed Cruzado to pepper spray Mr. Holston and Mr. Holston heard said instruction and observed Cruzado pull the pepper spray canister and Mr. Holston did become fearful that he was going to be pepper sprayed and Cruzado did pepper spray Mr. Holston; all Defendants did ratify and approve said acts whereby they deliberately failed to report Mr. Holston's severe injuries to his wrists and did falsify con, disciplinary, use of force and incident reports to further and conceal their common plan or design.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~damages~~ damages, costs, and a trial by jury.

F.L. Count 169: Conspiracy to commit common law civil assault: Cruzado: First pepper spray.

4. This is an action for common law conspiracy to commit civil assault under 28 U.S.C. 1367

2. Paragraphs V Fj. 2-3 and VFK 2-3 are realleged

3. Harries, Wells, Cruzada, McClure, Barnes, Ortiz, Christmas, and Maguire did agree and combine to assault Mr. Holston; and in furtherance of said agreement, Cruzada did offer to do corporeal violence to Mr. Holston by pulling out his pepper spray canister and Mr. Holston became fearful that he was going to be pepper sprayed whereby Cruzada did pepper spray Mr. Holston; and all Defendants deliberately failed to report Mr. Holston's injuries and abuse, and they did falsify cm, disciplinary, use of force, and incident reports to conceal their combination.

WHEREFORE, premises considered, compensatory damages, costs, and a suit by jury are demanded

From Cause 170 common law civil assault, Cruzada, second pepper spray

1. This is an action for common law civil assault under 28 U.S.C. 1367

2. Paragraphs V.EK 2-3 are realleged

3. Maguire did credibly threaten Mr. Holston by word or act that he was going to pepper spray Mr. Holston a second time when he held the pepper spray can and began shaking it when

148

Wells instructed him to pepper spray him a second time and Mr. Holston heard and observed these acts and become fearful that he was going to be pepper sprayed a second and Cruzado did pepper spray him a second time maliciously.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ████████ damages, costs, and a trial by jury.

Fa. Count 174: Aiding and abetting common law civil assault: ███████ cruzado. second pepper spray.

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V.EI. 2-3 and V. Em. 2-3 are realleged.

3. Harriss, wells, maguire, ortiz, christman, mcclure, and Barron did aid, assist, and provide substantial assistance to cruzado whereby they falsified use of force, com, incident, and disciplinary reports, and they did fail to report Mr. Holston's severe injuries and abuse in order to ratify, approve, and conceal cruzado's acts.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ██ ████ damages, costs, and a trial by jury.

146

Fa. Count 175: concerted action to commit common law civil assault:

Cruzada: Second pepper spray

1. This is an action for concerted action to commit common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V. Fn. 2-3 and V. Fn. 2-3 are realleged.

3. Harriss, Wells, Maguire, Ortiz, Christman, McClure, Barton, and Cruzada concerted to form a common plan or design to maliciously assault Mr. Holston where Wells directed Cruzada to pepper spray Mr. Holston a second time and Mr. Holston heard the directive and saw Cruzada pull and shake the pepper spray canister and did instill a well founded fear in Mr. Holston that he was going to be pepper sprayed based on credible threats by word and act. All did ratify and approve said conduct where they failed to report Mr. Holston's severe injuries and his abuse; further, they did falsify Cm, disciplinary, use of force, and incident reports to substantially assist in concealing and further said concerted design or plan. By their special relationship, an implied concerted action exists.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

Fp. Count 17 ~~3~~ conspiracy to commit common law assault: Cruzada: second pepper spray

147

1. This is an action for conspiracy to commit common law assault under 28 U.S.C. 1367.

2. Paragraphs V. Fa. 2-3 and V. Fa. 2-3 are realleged.

3. Hargis, Wells, Cruzado, Ortiz, Maguire, McClure, Barros, and Christensen did agree and combine to credibly threaten Mr. Holston by word or act that he would be pepper sprayed a second time; in furtherance thereof, Wells did direct Cruzado to spray Mr. Holston whereby Cruzado took out his pepper spray, shook it, and sprayed Mr. Holston. Mr. Holston did hear Wells directive and saw Cruzado's actions and became well foundedly fearful of being sprayed a third time without decontamination. In order to conceal their actions and agreement, all did falsify cm, disciplinary, use of force, and incident reports.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

Eq. count 17~~8~~: common law civil assault: Barros: pepper spray: medical.

1. This is an action for common law civil assault under 28 U.S.C 1367.

2. Paragraphs V. Fc. 2-3 are realleged.

148

3. Barron did credibly threaten Mr. Holston by word or act that he would pepper spray Mr. Holston, and he did instill a well founded fear in Mr. Holston that violence was imminent whereby he pulled his pepper spray out and sprayed Mr. Holston as Mr. Holston watched in terror.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

F.E. count 17: Aiding and abetting common law civil assault: Barron; Pepper spray; medical.

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C. 1362.

2. Paragraphs V.Eq. 2-3 are realleged, and V.Ed. 2-3 are realleged.

3. Harris, Romulus, and Maguire did help and provide substantial assistance to Barron in maliciously assaulting Mr. Holston; they did ratify and approved said conduct where they deliberately failed to report Mr. Holston's severe injuries and abuse, and they did falsify em, incident, disciplinary, and use of force reports.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

149

**Es. Count 176.** Implied concert of action to commit common law civil assault: Barron: pepper spray: medical

1. This is an action for implied concert of action to commit common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.Fr. 2-3 are realleged.

3. Harriss, Romulus, and Maguire did aid, encourage or otherwise further Barron's malicious assault on Mr. Holston by express or tacit agreement whereby they falsified reports, concealed, and failed to report Mr. Holston's abuse.

4. An implied concert of action between said Defendants grows out of their status or relation of the parties and the conditions under which the assault caused Mr. Holston's injury.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

**Et. Count 177:** Conspiracy to commit common law civil assault: Barron: pepper spray: medical.

1. This is an action conspiracy to commit common law civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V.Fs. 2-4 are realleged.

3. Harriss, Romulus, and Maguire did agree and combine to pepper spray and credibly threaten Mr. Holston whereby Barron did credibly threaten Mr. Holston and did pepper spray Mr. Holston in furtherance of said malicious combination.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.

**Eu. Count 178:** Common law assault: Maguire: medical.

1. This is an action for trespass vi et armis for common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.D. 2-6 are realleged.

3. Maguire did offer to inflict bodily injury on Mr. Holston by word or act and did have the ability to carry out such credible threat, and Mr. Holston did become apprehensive as he observed Maguire strike him repeatedly with clenched fists while he was handcuffed, in the ground, and not resisting and compliant. Further, Maguire did carry out said physical threat by beating Mr. Holston while Mr. Holston watched and endured same in terror.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~

150

Ev. COUNT 178: Aiding and abetting common law assault: maguire: medical.

1. This is an action for common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs IV. 2-3 are realleged. Paragraphs I-III.A.1 and III.B.1-3, 5 are realleged.

3. maguire did maliciously and sadistically assault Mr. Holston; Harriss, Barron, and Romulus observed maguire beat Mr. Holston with clenched fists; and they did render substantial assistance by deliberately failing to intervene, refusing to report the attack, filing false reports to conceal maguire misconduct.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and ███████ damages, costs, and a trial by jury.

F.W. Count 180: Implied concert of action to commit common law civil assault: maguire: medical.

1. This is an action for implied concert of action to commit common law assault under 28 U.S.C. 1367(a).

2. Paragraph IV.F. 2-3 are realleged.

3. Harriss, Romulus, and Barron did aid and encourage or otherwise further the tortious conduct or assault by express or tacit agreement whereby the falsified reports to conceal maguire's malicious and sadistic attack.

4. An implied concert of action between Defendants grows out of their status or relation and the conditions under which maguires conduct inflicted harm on Mr Holston.

WHEREFORE, premises Considered, Mr. Holston Demands compensatory ███████ damages, costs, and a trial by jury.

Ex. Count 180: Conspiracy to commit common law assault: maguire: medical.

1. This is an action for Conspiracy to commit common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs F.W. 2-4 are realleged.

3. Harriss, Romulus, and Barron did agree and combine with maguire to maliciously batter and assault Mr. Holston, in furtherance of that agreement, maguire did assault and batter Mr. Holston. Further Defendants did deliberately fail to report the attack and all filed false reports to conceal same.

WHEREFORE, premises Considered, Mr. Holston Demands compensatory ███████ damages, costs, and a trial by jury.

Ex. Count 181: ...

1. This is an action for common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs VII. 2-7 are realleged.

3. Maguire did tighten Mr. Holston's handcuffs air tight around his wrists whereby all circulation was cut off at the behest of Wells and Mr. Holston did become fearful at hearing Wells order and Maguire did carry out said credible threat.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

Ex. cont 18: Aiding and abetting common law assault: Maguire tight cuffs

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1, IIIB. 1-3, 6, 9-10, 14-15, V. Fy. 2-3 are realleged.

3. Wells, Cruzada, McClure, Ortiz, Christman, and Barron did observe and were present when Wells ordered Maguire to tighten the handcuffs around Mr. Holston's wrists air tight to facilitate the electric burn to create 360° circles around his wrists. Further, they all provided substantial assistance by failing to report the abuse, by their failing to intervene. Harris did approve and falsify their reports.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

F2. count 18½: Implied concert of action to commit common law civil assault: Maguire' tight cuffs

1. This is an action for implied concert of action to commit common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V. Fy. 2-3 are realleged.

3. Harris, Wells, Cruzada, McClure, Ortiz, Christman, and Barron did aid, encourage, or otherwise further Maguire's assault by express or tacit agreement whereby they deliberately failed to report the assault and falsified their reports to conceal Wells and Maguire's misconduct.

4. An implied concert of action between Defendants grew out of the status or relation of the Defendants and the conditions under which their acts caused Mr. Holston's assault.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~

152

<u>Ga. Count 185</u>: Conspiracy to commit common law civil assault: Maguire: Tight cuffs.

1. This is an action for common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.F.2. 2-4 are realleged.

3. Harris, Wells, Cruzado, Ortiz, Christman, McClure, Barnes and Maguire did agree and combine to credibly threaten Mr. Holston whereby Wells did order Maguire to tighten the handcuffs, and Mr. Holston became fearful; and in furtherance of said agreement, Maguire did tighten the cuffs air tight around Mr. Holston's wrists, and Defendants falsified their reports to conceal said acts and did fail to report said malicious abuse.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~punitive~~ damages, costs, jointly and severally, and a trial by jury.

<u>Gb. Count 186</u>: common law civil assault: Maguire: Burning.

1. This is an action for common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.I.2-7 are realleged.

3. Maguire did offer a credible threat of bodily injury when he continually turned the electricity on and off, whereby Mr. Holston became fearful that he would be burned again, and he did repeatedly turn on the electricity and burn Mr. Holston repeatedly.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

<u>Gc. Count 187</u>: Aiding and abetting common law civil assault: Maguire: Burning.

1. This is an action for common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, 14-15; V.I.2-7 are realleged.

3. Harris, Ortiz, McClure, Barnes, Cruzado, Maguire, Christman, and Wells did render substantial assistance to Maguire when they were present and observed his malicious assault; further, they did falsify records to conceal said acts and all failed to report Mr. Holston's injuries.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

<u>Gd. Count 188</u>: Implied/Concert of action to commit common law assault: Maguire: Burning.

1. This is an action for common law civil assault under 28 U.S.C. 1367(a).

2. Pa... ...

153

3. Well, Harass, Cruzedo, Barron, Ochz, McClure, Christman aid, encourage, or otherwise further the malicious threat by express or tacit agreement whereby they deliberately failed to report Maguire's threat or Mr. Holston's injuries and all falsified reports to conceal Maguire's misconduct.

4. An implied concert of action between defendants grew out of their status or relation of the officers and the conditions under which the malicious acts caused Mr. Holston's injuries.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

Ge. Count 188: CONSPIRACY to Commit Common Law Civil Assault: Maguire: Burning.

1. This is an action for common law civil conspiracy to commit assault under 28 U.S.C. 1367(a).

2. Paragraphs V. Gd. 2-4 are realleged.

3. Wells, Harass, Cruzedo, Christman, Ochz, McClure, Barron did agree and combine with Maguire to credibly threaten Mr. Holston with burning; and in furtherance of said agreement, Maguire did burn Mr. Holston and all did deliberate fail to report the abuse or injuries and falsified reports to conceal their illegal conduct.

WHEREFORE, premises considered, Mr. Holston demands a trial by jury, compensatory ~~and punitive~~ damages, jointly and severally, and costs.

GF. Count 189: Common law civil assault: Shower: Extraction beating.

1. This is an action for common law civil assault under 28 U.S.C. 1367(a)

2. Paragraphs I-III. A.1; III. B.2; IV. A. 1-60, 97-100; V.L. 3-6 are realleged.

3. Maguire did offer to do bodily injury to Mr. Holston by credible threat where he had the ability to carry out said threat; he did repeatedly punch Mr. Holston in his face and each time, Mr. Holston observed his clenched fist make contact with his skin and was fearful thereof.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

Gg. Count 190: Aiding and abetting common law civil assault: Shower: Extraction beating.

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs I-III A.1; III.B. 1-3, 6,9-10, 14-15; V.L. 2-6; V. GF. 2-3 are realleged.

154

Maguire threatened Mr. Holston and did render substantial assistance when Maguire threat Mr. Holston and carried same out. All did falsify use of force reports, failed to alert anyone to the abuse or injuries Mr. Holston sustained.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

Gh. Count 192: Implied concert of action to commit common law civil assault; Shower; extraction beating.

1. This is an action for implied concerted action to commit common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V. Gg. 2-3 are realleged.

3. Harriss, Wells, Christmen, Cruzado, Barren, McClure, and Ortiz did aid, encourage, or otherwise furthered Maguire's assault by express or tacit agreement whereby they failed to report the abuse or Mr. Holston's injuries and they did falsify their reports to conceal said misconduct.

4. An implied concert of action between defendants grow out of their status or relation as correctional officers and the conditions under which their malicious acts injured Mr. Holston.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

Gi. Count 193: Conspiracy to commit common law civil assault; Shower; Extraction beating.

1. This is an action for common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V. Gh. 2-4 are realleged.

3. Harriss, Wells, Christmen, Cruzado, Barren, McClure, and Ortiz did agree and combine to maliciously assault Mr. Holston, and in furtherance thereof, Maguire did credibly threat Mr. Holston which made Mr. Holston apprehensive the bodily harm was going to befall him. Further, all did file false reports to conceal same and did fail to report Mr. Holston's injuries or abuse.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, jointly and severally, and a trial by jury.

Gj. Count 194: Common law civil assault; 8/1/02

1. This is an action for common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.G. 2-6 are realleged

3. Maguire did credibly offer to do violence to Mr. Holston by word or act and

155

became apprehensive that violence was imminent wherein Mr. Holston observed Maguire repeated punch him with clenched fists.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

**GK. Count 198:** Common law aiding and abetting civil assault: B1102.

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1; III.B.1-3, 6,9-10, 14-15; and V.GJ.2-3 are realleged.

3. Maguire did credibly threaten Mr. Holston by act; all Defendants were present and knew he made such a threat. All did render substantial assistance by deliberately failing to report the abuse or injuries and they did falsify reports to conceal said misconduct.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

**GI. Count 198:** Implied concert of action to commit common law civil assault: B1102.

1. This is an action for implied concert of action to commit common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.GK.2-3 are realleged.

3. Harriss, Wells, Cruzado, Barron, Ortiz, Christman, McClure, and Maguire did aid, encourage, or otherwise further Maguire's malicious assault by express or tacit agreement whereby they deliberately failed to report Mr. Holston's abuse and injuries and all did falsify reports to conceal Maguire's misconduct.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, jointly and severally, costs, and a trial by jury.

**Gm. Count 198:** Conspiracy to commit civil assault: B1102

1. This is an action for conspiracy to commit civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.GI.2-3 are realleged.

3. Harriss, Wells, Christman, Cruzado, Ortiz, McClure, and Barron did agree and combine with Maguire to credibly threaten Mr. Holston whereby Maguire did credibly threaten Mr. Holston when Mr. Holston observed his clenched fists make contact with his skin. In furtherance of said agreement, all did deliberately fail to report said abuse and Mr. Holston's severe injuries; and then all did falsify reports to conceal their agreement.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~

Gn. Count 198: Common law civil assault: Left wrist.

1. This is an action for common civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.I.2-7 are realleged.

3. Maguire did credibly offer bodily injury to Mr. Holston where he had the ability to carry out said credible threat where Mr. Holston did become apprehensive and Maguire did attempt to amputate Mr. Holston's left hand.

WHEREFORE, premises considered, Mr. Holston demands compensatory ▬▬▬▬ damages, costs, and a trial by jury.

Go. Count 199: Aiding and abetting common law civil assault: Left wrist.

1. This is an action for aiding and abetting common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1, III.B.1-3, 6, 9-10, 14-15; V.Gn. 2-3 are realleged.

3. Harriss, Wells, McClure, Cruzado, Christman, Ortiz, and Barron was aware of Maguire's credible threat he made, and they did provide substantial assistance whereby they deliberately failed to report Mr. Holston's abuse and injuries, and all did falsify reports to conceal same.

WHEREFORE, premises considered, Mr. Holston demands compensatory ▬▬▬▬ damages, costs, and a trial by jury.

Gp. Count 200: Implied concert of action to commit civil assault: Left wrist.

1. This is an action for implied concert of action to commit common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.Go. 2-3 are realleged.

3. Harriss, Wells, McClure, Cruzado, Christman, Ortiz, and Barron did aid, encourage, or otherwise further Maguire's assault by express or tacit agreement whereby they failed to report Mr. Holston's abuse and injuries and did falsify reports to conceal Maguire's conduct.

WHEREFORE, premises considered, Mr. Holston demands compensatory ▬▬▬▬ damages, jointly and severally, costs, and a trial by jury.

Gq. Count 201: Conspiracy to commit common law civil assault: Left wrist.

1. This is an action for conspiracy to commit common law civil assault under 28 U.S.C. 1367.

2. Paragraphs V. Gp. 2-3 are realleged.

3. Harriss, Wells, McClure, Cruzado, Christman, Ortiz, and Barron did agree and

of said agreement, Maguire and ortiz proceeded to amputate mr. Holston's left hand while he observed in horror. All did falsify reports to conceal the actions of maguire and ortiz. Further, they did deliberately failed to report the abuse of mr. Holston's injuries.

WHEREFORE, premises considered, Mr. Holston Demand compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

G.r. count 202: common law civil assault; Right wrist.

1. This is an action for common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V.K. 2-3 are realleged.

3. Maguire did offer to do violence to mr. Holston by credible word or act and did have the ability to carry out said credible thereby instilling a well funded fear in mr. Holston that violence was imminent and maguire and ortiz proceeded to amputate mr Holston's right hand.

WHEREFORE, premises considered, mr. Holston Demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

Gs. count 203: Aiding and abetting common law civil assault; Right wrist.

1. This is an action for common law civil assault of 28 U.S.C. 1367(a).

2. Paragraphs I-III.B.1; III.C. 1-3, 6, 7-10, 14-15; V.Gr. 2-3 are realleged.

3. Maguire did maliciously threath mr. Holston and did instill a well funded fear in him that violence was imminent. Harriss, wells, ortiz, cruzado, Barron, mcclure, and christman were present and observed and heard said credible threat. They did pavide substantial assistance to maguire when they failed to intervene, failed to report the abuse or injuries, and falsified reports to conceal same.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

Gt. count 204. Implied/Concert of action to commit common law civil assault; Right wrist.

1. This is an action for implied/Concert of action to commit common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs V. Gs. 2-3 are realleged.

3. Harriss, wells, ortiz, cruzado, Barron, mcclure, and christman did aid, encourage, or otherwise further maguire's malicious credible threat by express or tacit agreement.

158

their status or relation as correctional officers and the conditions under which maguire credibly threatened Mr. Holston.

WHEREFORE, premises considered, Mr. Holston demands compensatory and ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

**G.V. Count 20T:** Conspiracy to commit common law civil assault: Right wrist.

1. This is an action for conspiracy to commit common law civil assault under 28 U.S.C. 1367(a).

2. Paragraphs ~~I.~~ Gt. 2-4 are realleged.

3. Harriss, wells, ortiz, cruzado, Barron, McClure, and christman did agree and combine with maguire to credibly threaten mr Holston. In furtherance of said agreement, maguire did credibly threaten Mr. Holston; and all did fail to report the abuse or Mr. Holston's injuries and did falsify reports to conceal maguire's misconduct.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

**G.V. Count 20U:** Common law "outrage": excessive force

1. This is an action for intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1', III.B-1-3, 5-6, 9-10, 14-15; IV.A.1-71, 97-100 are realleged.

3. Harriss, wells, McClure, ortiz, maguire, Barron, Christman, cruzado, and Romulus did maliciously inflict reckless and deliberate emotional and mental suffering on Mr. Holston.

4. The beating and pepper spraying Mr. Holston repeatedly and then burning and cutting his wrists in an effort to amputate his hands and refusing him medical attention was outrageous and went beyond all possible bounds of decency and is regarded as utterly atrocious and intolerable in a civilized community.

5. Mr. Holston suffer physical injury and emotional distress.

6. Mr. Holston's emotional distress is severe, since Mr. Holston was roped twice.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.

**G.W. Count 20V:** Aiding and abetting common law "outrage": excessive force

1. This is an action for aiding and abetting common law intentional infliction of emotional distress under 28 U.S.C. 1367(a).

159

3. Romulus, Wells, Cruzado, Harriss, Christman, Ortiz, Barnen, McClure, and Ortiz knew that Harriss, Maguire, Barnen, and Cruzado beat, pepper sprayed, and electrocuted and burned Mr. Holston.

4. They all rendered substantial assistance by failing to intervene, failing to report the misconduct and injuries; additionally, they falsified reports to conceal the misconduct.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

GX. Count 208: Implied/concert of action to commit common law "outrage": excessive force.

1. This is an action for implied/concert of action to commit intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs V. Gw. 2-4 are realleged.

3. Defendants did aid, encourage, or otherwise further the malicious conduct of Harriss, Maguire, Cruzado, Ortiz, and Wells by express or tacit agreement whereby they deliberately failed to report the misconduct or injuries Mr. Holston suffered and they did falsify reports to conceal said injuries and misconduct. An implied concert of action exists.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

Gy. Count 208: Conspiracy to commit common law "outrage": excessive force.

1. This is an action for conspiracy to commit common law intentional infliction of emotional distress under 28 U.S.C. 1367(a)

2. Paragraphs V. Gx. 2-3 are realleged.

3. Romulus, McClure, Christman, and Ortiz did agree and combine with Harriss, Wells, Cruzado, Maguire, and Barnen to inflict intentional infliction of emotional distress on Mr. Holston whereby they did inflict malicious, sadistic, and outrageous emotional distress on him by raping, beating, pepper spraying, and burning him; and Mr. Holston did suffer severe emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

GZ. Count 208: Common law negligent infliction of emotional distress

162

distress.

2. Paragraphs V. Gy. 2-3 are realleged.

3. Mr. Holston suffered multiple sexual batteries, beatings, pepper sprayings, electrocutionary burnings. Such conduct was malicious and reckless.

4. Mr. Holston suffered extreme emotional distress from the multiple impacts.

5. Mr. Holston was the victim each time.

6. Mr. Holston suffered severe emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~damages~~ damages, costs, and a trial by jury

He. count 248: Negligent failure to intervene: Left wrist.

1. This is an action for common law negligent failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs V.J.2-7 are realleged. Paragraphs III. B, 1-3, 6, 9-10, and 14-5 are realleged.

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendants breach that special duty whereby they failed to intervene and stop Maguire and Ortiz, where they were present and watched.

5. Mr. Holston's injuries were proximately caused by their reckless and gross breach. Further, their action were malicious and in reckless disregard for Mr. Holston's human rights or safety.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~damages~~ damages, costs, and a trial by jury.

He. Count 249: Negligent failure t intervene: Right wrist.

1. Paragraphs V.Ho. 1, 3-5; V.K. 2-3; III.B.1-3, 6, 9-10, and 14-15 are realleged.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~damages~~ damages, costs, and a trial by jury.

He. Count 250: Negligent Failure to intervene:

1. Paragraphs V.I. 2-7; V.Ho. 1, 5; III.B.1-3, 6, 9-10, and 14-15 are realleged.

2. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

3. Defendants breached that special legal duty where they were present and watched Maguire and Harris burn Mr. Holston with electrocutionary hot handcuffs.

161

5. Said acts of burning Mr. Holston was malicious, evil, satanic, sadistic, and outright tortiously tortious and done in violation of Mr. Holston's human rights.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

Hd. Count 214: Negligent failure to intervene: Tight cuffs.

1. Paragraphs V.H. 2-7; V. Ha. 1, 3, 5; III. B. 1-3, 6, 9-10, and 14-15 are realleged.

2. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

3. Defendants breached that legal duty of care where they were present and watched maguire tighten the handcuffs around Mr. Holston's wrists air tight.

4. Mr. Holston suffered physical and emotional injury as a direct and proximate cause of their breach.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

He. Count 215: Excessive force: BIIOZ; Negligent failure to intervene.

1. This is an action for common law negligent ~~failure~~ failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs V.G. 2-6; III. B. 1-3, 6, 9-10, and 14-15 are realleged.

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendants breached said legal duty whereby they were present when maguire maliciously beat Mr. Holston into oblivion; and they designedly failed to intervene where they were present and watched.

5. Mr. Holston suffered permanent physical injuries and mental and emotional distress from such gross, reckless, malicious, and evil acts of brutality.

WHEREFORE, premises considered, Mr. demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

HF. Count 216: Negligent failure to intervene: shower extraction

1. This is an action for negligent failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs I-III. A.1', III. B. 1-3, 6, 9-10, and 14-15; V.L. 2-6 are realleged.

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendants breached the legal duty by gross and reckless conduct.

5. Said gross, malicious, and reckless breach was the proximate cause of

162

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~████~~ damages, costs, and a trial by jury.

Hg. Count 217: Negligent failure to intervene: Maguire: Pulling.

1. This is an action for common law negligent failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, and 14-15; V.Q.2-5 are realleged.

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendants breached that duty by gross and reckless conduct where they were present and watched.

5. Mr. Holston suffered physically and emotionally.

WHEREFORE, premises considered, Mr. Holston demands a trial by jury, compensatory ~~████~~ damages, and costs.

Hh. Count 218: Negligent failure to intervene: Harriss: pulling

1. This is an action for common law negligent failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1; III.B.1-3, 6, 9-10, and 14-15; V.R. 2-6 are realleged

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendants breach said duty by gross, reckless, and malicious conduct whereby they were present and in violation of Mr. Holston's human rights and safety failed to intervene when they had the ability to do so.

5. Said breach was the proximate cause of the physical and emotional injury Mr. Holston sustained.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~████~~ damages, costs, and a trial by jury.

Hi. Count 219: Negligent failure to intervene: Cruzado: First Pepper spray.

1. This is an action for common law negligent failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs I-III.1; III.B.1-3, 6, 9-10, and 14-15; and V.M. 2-6 are realleged.

3. Defendant owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendants maliciously, recklessly, and grossly breached said duty

163

had the ability to intervene but maliciously and deliberately failed to do so in violation of Mr. Holston's human rights and safety.

5. Mr. Holston suffered physical injury and mental and emotional suffering.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

HJ. Count 220: Negligent failure to intervene: Cruzado: second pepper spray.

1. This is an action for common law failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs III.A.1; III.B.1-3,6,9-10, and 14-15; V.N.2-6 are realleged.

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendants grossly breached said duty when they were present and had the ability to intervene and deliberately, maliciously, and recklessly refused to so intervene in violation of Mr. Holston human rights and safety.

5. Because of the callous indifferent breaches, Mr. Holston suffered physical injury, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

HK. Count 221: Negligent failure to intervene: maguire: Buggery: Biloz

1. This is an action for common law negligent failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs III.A.1; III.B.1-3,6, 9-10, and 14-15; V.F.2-6 are realleged.

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendants breached said duty by gross and sodistic conduct when they were present and had the ability to intervene, but they recklessly, maliciously, and indifferently failed to intervene.

5. Said sodistic breach was the proximate cause of Mr. Holston physical injury, mental, and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

HL. Count 222: Negligent failure to intervene: Barron: Pepper spray in front of medical.

1. This is an action for common law negligent failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs III.B.1-2,5; V.O.2-6 are realleged.

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.   164

were present and had the ability to intervene but they grossly and maliciously failed to intervene.

5. Mr. Holston suffered physical injury, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~[redacted]~~ ~~[redacted]~~ damages, costs, and a trial by jury.

Hm. Count 227: Negligent failure to intervene: maguire: Buggery: medical.

1. This is an action for common law negligent failure to intervene under 28 U.S.C. 1367(a).

2. Paragraphs III. B. 1-2, 5; V. E. 2-7 are realleged.

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendants sadistically breached that legal duty whereby they recklessly, grossly, and deliberately failed to intervene when they were present and had the ability to so intervene in violation of Mr. Holston human rights and safety.

5. Mr. Holston suffered physical injury, mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~[redacted]~~ damages, costs, and a trial by jury.

Hm. Count 228: Common law "outrage": Adulterated Food.

1. This is an action for common law intentional Infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs I-III. A. 1; III. B. 8, 20; IV. A. 1-14 are realleged.

3. On January 7, 2020, Sergeant Acosta served Mr. Holston his lunch tray that contained noodle salad.

4. Mr. Holston placed a spoonful of noodles in his mouth and began masticating some when he felt something more in his mouth.

5. He immediately expectorated the contents of his mouth onto the tray, and it was a chewed up roach in the contents.

6. He then moved the noodles around and saw a roach egg in the tray.

7. Mr. Holston immediately summoned Sergeant Acosta who told me to throw it away.

8. Later that day I became nauseous and regurgitated the contents of my stomach and did not eat dinner.

165

in log# 2001-434-113.

10. On January 30, 2020, I was transferred.

11. On February 6, 2020, I was transferred to outside courts.

12. A. Weiss and Acosta did recklessly cause Mr. Holston emotional and mental suffering by allowing him to eat unchecked food, that was tainted.

13. Such conduct was outrageous, since it went beyond all possible bounds of decency and was atrocious and utterly intolerable in a civilized community.

14. Mr. Holston suffered emotional distress where he became nauseous and regurgitated the contents of his stomach and refused to eat and became paranoid.

15. Mr. Holston's emotional distress was severe.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ████████ damages, costs,

Ho. Count 22X: Aiding and abetting common law "outrage": Adulterated Food.

1. This is an action for aiding and abetting common law intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs V. Ho. 2-15 are realleged.

3. A. Weiss committed outrage on Mr. Holston by serving him adulterated Food.

4. Acosta knew the food was adulterated.

5. Acosta provided substantial assistance by serving Mr. Holston the food without providing another tray upon being notified.

WHEREFORE, premises considered, Mr. Holston demands compensatory ████████ ████████, costs, and a trial by jury.

Ho. Count 22S: Implied/Concert of action to commit common law "outrage": Adulterated food.

1. This is an action for implied/concert of action to commit common law intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs V. Ho. 2 - 5 are realleged.

3. Acosta did aid, encourage or otherwise further the "outrage" that A. weiss committed by express or tacit agreement whereby he delivered Mr.Holston said tray

4. An implied concert of action between defendants grow out of their status or relation and the conditions under which Mr. Holston was made to eat said food.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ████████

166

**Hg. Count 226:** Conspiracy to commit common law "outrage": Adulterated food.

1. This is an action for conspiracy to commit intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs V. #p. 2-4 are realleged.

3. Weiss and Acosta did agree and combine to inflict "outrage" on Mr. Holston by adulterating his food with insects to cause him severe emotional distress whereby they served him food with insects in same causing him severe distress in furtherance of said collusion.

4. Mr. Holston suffered severe emotional distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~damages~~, damages, jointly and severally, costs, and a trial by jury.

**Hr. Count 227:** Common law civil battery: Adulterated food.

1. This is an action for trespass on the case for common law civil battery under 28 U.S.C. 1367(a).

2. Paragraphs V. Hr. 2-15 are realleged.

3. Weiss did prepare Mr. Holston a lunch tray that Weiss intentionally served with insects in the food for Mr. Holston to consume and did fail to properly inspect or serve.

4. Mr. Holston did eat and consume said food that contained a roach and roach egg against his will; and it was done in violation of Mr. Holston's health and safety.

WHEREFORE, premises considered Mr. Holston demands compensatory ~~damages~~, damages, costs, and a trial by jury.

**Hs. Count 228:** Aiding and abetting common law battery: Adulterated food.

1. This is an action for common law civil battery under 28 U.S.C. 1367(a).

2. Paragraphs V. Hr. 2-4 are realleged.

3. Acosta did have knowledge that Weiss failed to properly inspect said food and was advised by Mr. Holston

4. Acosta did render substantial assistance by feeding Mr. Holston the adulterated food and failing to provide a second tray.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~damages~~, damages, costs, and a trial by jury.

**Ht. Count 229:** Implied consent of action to commit common law civil battery: Adulterated food.

1. This is an action for implied consent of action to commit common law

2. Paragraphs V. HS. 2-4 are realleged.

3. Acosta did aid, encourage, or otherwise further the battery of Weiss by express or tacit agreement whereby he agreed to intentionally serve Mr. Holston adulterated food.

4. An implied concert of action grows out of their status or relation as agents of the state and the conditions under which Acosta served Mr. Holston his food.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~█████~~ damages, jointly and severally, costs, and a trial by jury.

Hv. count 234: Conspiracy to commit common civil battery: Adulterated food.

1. This is an action for conspiracy to commit civil battery under 28 U.S.C. 1367(a).

2. Paragraphs V. Ht. 2-4 are realleged.

3. Weiss and Acosta did agree and combine to serve Mr. Holston adulterated food with insects in it; and Mr. Holston did consume said insect and did masticate and mechanically digest same.

4. Acosta did serve and provide Mr. Holston said adulterated tray with live insects therein.

5. Mr. Holston did suffer mental and emotional distress by subsequent regurgitation and vomiting.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~█████~~ damages, jointly and severally, costs, and a trial.

HV. Count 233: Negligent infliction of emotional distress: Adulterated food.

1. This is an action for common law negligent infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs V. Ht. 2-4 are realleged.

3. Mr. Holston did ingest, masticate, mechanically digest, and chew food that contained an insect.

4. Mr. Holston did ultimate regurgitate and vomit the contents of his stomach because of the mental distress.

5. Mr. Holston was the target of the impact and distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~███████~~ damages, costs, and a trial by jury.

168

1. This is an action for strict liability failure to warn under 28 U.S.C. 1367(a).

2. Paragraphs V. H v. 2-5 are re alleged. Paragraph 24 is re alleged.

3. Defendants did not adequately warn Mr. Holston that an insect would be in his food.

4. This was known or knowable through basic inspection.

5. Defendants were required to inspect the food before providing it to mr Holston for consumption.

6. They had the ability, means, and opportunity to inspect and warn mr. Holston that insects were in his food.

7. Mr Holston suffered emotional and mental distress from eating said insect, said acts were gross and reckless.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~strike~~ damages, costs, and a trial by jury.

HX. Count 233: Negligent failure to warn: Adulterated food.

1. This is an action for negligent failure to warn under 28 U.S.C. 1367(a).

2. Paragraphs V. H v. 2-7 are realleged.

3. Defendants had a special legal duty to warn mr. Holston that insects were in his food.

4. They negligently breached the duty imposed on them.

5. Their negligence was the proximate cause of mr. Holston's eating an insect and suffering an impact and emotional and mental distress.

WHEREFORE, premises considered, mr. Holston demands compensatory ~~strike~~ damages, costs, and a trial by jury.

Hy. Count 235: Negligence: Adulterated food.

1. This is an action for common law negligence under 28 U.S.C. 1367(a).

2. Paragraphs v. Hx. 2-5 are realleged.

3. Acosta and Weiss owed mr. Holston a special legal duty to ensure that he eats a healthy meal free of adulteration by inspecting his tray.

4. They breached their legal duty where they grossly negligently failed to inspecting said tray before they passed it on to him for consumption in violation of his health and safety.

5. Said reckless and gross failure to inspect the tray before leaving the

proximate cause of Mr. Holston's eating said insect.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~punitive~~ damages, costs, and a trial by jury.

HZ count 238: Common law "outrage": Maguire: Buggery - medical.

1. This is an action for common law intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs I-III. A.1; III. B. 3.2; IV. A. 1-36 are realleged. Paragraphs IV. A. 96-100 are realleged.

3. Maguire conduct was intentionally malicious, sadistic, brutal, and reckless.

4. Maguire's conduct was outrageous in that he abused his power, trust, and badge where such conduct went beyond all bounds of civilized decency and was shocking and terrifying.

5. Mr. Holston suffered emotional distress: embarrassment, shame, anxiety, etc.

6. Mr. Holston's emotional distress was severe.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~punitive~~ damages, costs, and a trial by jury.

Ia. count 238: Aiding and abetting Common law "outrage": maguire: Buggery - medical.

1. This is an action for common law aiding and abetting intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs I-III. A.1; III. B. 1-3, 5; V. ilz. 2-6 are realleged.

3. Maguire did commit brutal and sadistic outrage on Mr. Holston.

4. Romulus, Harriss, and Bacron knew that maguire committed such "outrage" on Mr. Holston.

5. They did render substantial assistance to him whereby they deliberately and maliciously failed to report the abuse and misconduct and injury and then falsified reports to conceal same.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~punitive~~ damages, costs, and a trial by jury.

Ib. count 238: Implied concert of action to commit "outrage": maguire: Buggery - medical.

1. This is an action for implied concert of action under 28 U.S.C. 1367(a).

2. Paragraphs V. Ia. 2-5 are realleged.

3. Romulus, Harriss, and Bacron did aid, encourage, or otherwise further

deliberately and maliciously failed to report the abuse and Mr. Holston's injuries and did falsify their reports to conceal Maguire's misconduct.

4. An implied concert of action grew out of their status or relation and the conditions under which Maguire committed his "outrage".

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▮▮▮▮▮ damages, costs, and a trial by jury.

**Id. Count 238: Conspiracy to commit common law "outrage"; Maguire; Buggery – medical.**

1. This is an action for conspiracy to commit common law intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs ✓, I.b. 2–4 are re-alleged.

3. Romulus, Barron, and Harris did agree and combine with Maguire to buggery and sodomize Mr. Holston and commit "outrage" upon

4. In furtherance of said combination Maguire did sodomize, buggery, and rape Mr. Holston in violation of Section 794.011, Fla. Stat. and Barron did hold Mr. Holston and put handcuffs on him. All failed to report the abuse and injuries to conceal their combination. Further, Barron did pepper spray Mr. Holston to incapacitate him.

5. Said conduct was maliciously intentional and outrageous.

6. Mr. Holston did suffer severe and extreme emotional distress as a result of their unlawful combination.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▮▮▮▮▮ damages, jointly and severally, costs, and a trial by jury.

**Id. Count 239: Common law "outrage"; Maguire; Buggery – Biloz**

1. This is an action for common law intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs I–III.A.1; III.B.2–3,6, 9–10, and 14–15; IV.A.1–20 are re-alleged.

3. Maguire's conduct was maliciously and sadistically intentional and reckless.

4. Said conduct was oppressively outrageous and did exceed the bound of contemporary decency in a civilized community where it was done in an empty cell.

5. Mr. Holston suffered emotional distress by virtue of said conduct.

6. Mr. Holston emotional distress was severe.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▮▮▮▮▮ damages.

171

1. This is an action for aiding and abetting common law intentional infliction of emotional distress under 28 U.S.C. 1367(a).

2. Paragraphs V. Id. 2-6 are realleged.

3. Harris, Wells, Baron, Cruzado, Ortiz, Christman, and McClure did observed Maguire bugger and sexually batter Mr. Holston in violation of section 794.011, Fla. Stat. which was shockingly and evilly outrageous in an empty cell

4. Said defendants did aid, encourage, or otherwise further Maguire's sexually battery and outrageous conduct and Mr. Holston emotionally distress where the were present whereby they did so by express or tacit agreement in that they deliberately failed to stop it, report it, and did falsify reports to conceal some and thus did provide substantial assistance.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~██████~~ damages, costs, and a trial by jury.

If. count 241: Implied/Concert of action to commit common law outrage: Maguire: Buggery - 84102.

1. This is an action for common law implied/concert of to commit "outrage" under 28 U.S.C. 1367(a).

2. Paragraphs V. Ia 2-4 are realleged.

3. An implied concert of action exist based on their status and relations and the conditions under which the "outrage" was committed.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~██████~~ damages, jointly and severally, costs, and a trial by jury.

Ig. count 242: Conspiracy to commit common law "outrage"

1. This is an action for conspiracy to commit intentional infliction of emotional distress under 28 U.S.C. 1367(a)

2. Paragraphs V. If. 2-3 are realleged.

3. Harris, Wells, Cruzado, McClure, Ortiz, Baron, and Christman did agree and combine to inflict intentional infliction of emotional distress on Mr. Holston and in furtherance thereof, Maguire did sexually batter Mr. Holston in violation of 794.011 and they did fail to report the abuse and did falsify reports to conceal same.

4. Mr. Holston suffered severe "outrage" and emotional distress

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~██████~~ damages, jointly and severally, costs, and a trial by jury.

172

Maguire: Buggeries.

1. This is an action for negligent infliction of emotional distress based on several sexual batteries under 28 U.S.C. 1367(a)

2. Paragraphs V.I.c. 2-5 and V.Ig. 2-4 are realleged.

3. Mr. Holston suffered two violent and brutal impacts by his being buggered or raped at the hands of government officials by deliberately malicious and sadistic conduct.

4. Mr. Holston was the target of the shockingly horrific attack.

5. Mr. Holston suffered severe emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~~ damages, costs, and a trial by jury.

I.count 245: Negligent Supervision: Feeding

1. This is an action for negligent supervision of feeding under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1; III.B.3, 20, and 24; V.Hn. 2-15 are realleged.

3. Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. Defendant breached that legal duty whereby they failed to supervise prisoners who are dangerous people while they prepared the food for the inmate population with proper supervision and inspection before the food left the kitchen and before it was passed to Mr. Holston through his door flap for consumption.

5. Said Defendants had a duty to inspect said food for contraband and other impurities before providing same to Mr. Holston for consumption.

6. Mr. Holston ate an insect and subsequently regurgitated the contents of his stomach.

7. Mr. Holston's eating said food was done in violation of his human rights and safety.

8. Mr. Holston suffered mental and emotional distress.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~~ ~~~ damages, costs, and a trial by jury.

Ej. count 246: Breach of Contract: Third Party Beneficiary — Trinity.

1. This is an action for breach of third party beneficiary contract in assumpsit under 28 U.S.C. 1367(a).

173

3. "DOC" and "Trinity" executed a contract whereby Trinity would conduct food services for all of "DOC" operated facilities.

4. An integral part of that contract required Trinity to comply with "DOC's" state created menus and provide quality food services to the inmates in "DOC".

5. Said contract was entered into exclusively for the benefit of "DOC's" prisoners.

6. Trinity breached said contract wherein it:

   (a). fails to provide leg quarters or any other chicken variety to confinement inmates.

   (b). fails to serve coffee to inmates in confinement in violation of section 812.014, Fla Stat.

   (c). Fails to use sugar in salads, tea, and juices and other foods requiring sugar.

   (d). fails to use salt in foods or provide salt packets, jelly, and butter.

   (e). invariably substitutes foods of lesser quality to meet the demands of the state created menus.

   (f). milk is never prepared properly dots of power float in the milk when served and milk is not homogenized.

   (g). water is occasionally substituted for juice.

   (h). There is invariably a shortage of food when popular meals are served.

   (i). Reduced portions are always served because of inappropriate use of feeding or serving spoons.

   (j). Defendant fails to properly train inmates and staff regarding serving food and sanitation.

7. Mr. Holston suffered damages, since he is the victim of theft of his coffee, milk, and juice; further, he is deprived of adequate portions of food.

8. Prisoners are required to pay cost of incarceration under section 760.273.

9. Said acts of defendants results in thousands if not millions in savings.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

I.K. Count 249: Breach of contract: Third Party Beneficiary - Centurion.

1. This is an action for breach of third party beneficiary contract in

174

2. Paragraphs I-III.A.1, III.B §§ 57, 21, 23, IV.A.1-100, V.P.3-15, V.By.3-9, V.Oz.3-9, V.Ca.3-8 are realleged.

3. DOC and Centurion contracted with the intent that Centurion provide privatized medical services statewide exclusively for prisoners in DOC custody.

4. Further, said contract either express by the parties or is in the provision of the contract that said contract primarily and directly benefit Mr. Holston and other inmates of that class.

5. Centurion breach its duty under said contract where Bhadja, Ortiz, Brown, and Ranours as their agents:

   (a). Failed to suture Mr. Holston's deep wounds.

   (b). Failure to refer Mr. Holston to see a hand specialist respecting the swelling of his hand and digital joints.

   (c). Failed to prescribe antibiotics to prevent the first infection.

   (d). Failed to prescribe antibiotics to prevent the second infection.

   (e). Failed to order a hand x-ray to determine if Mr. Holston's hands were arthritic.

   (f). Failed to supervise Ortiz and Brown properly.

   (g). Failed to refer Mr. Holston to see an optometrist or order eye glasses for his impaired vision.

6. Mr. Holston suffer physical damage, pain, emotional and mental distress.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

**II. Count 248: Negligent Supervision: Ricky Dixon.**

1. This is an action for common law negligent supervision under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1, III.B.17, IV.A.1-100 are realleged.

3. Dixon owed Mr. Holston a special legal duty of care, custody, and control. Section 20.315(1), Fla. Stat.

4. Dixon is responsible for supervision the regional directors of Florida prisons: there are five regional directors.

5. Dixon breached said duty of supervision where he fail to properly

175

6. Reid has been failing to investigate excessive uses of force.

7. This has resulted in an inordinate number of inmate deaths and stabbings.

8. Reid has not insured that log DC2-802 is placed in all officers personnel file and properly updated under Fla. Admin. Code r. 33-602.210(10).

9. Reid has not made appropriate reassignments under Fla. Admin. Code r. 33-602.210 (10)(.), (9), Section 944.35 (2), Florida Statutes.

10. As a direct and proximate result of Dixon's negligence, Mr. Holston suffered excessive use of force in violation of his human rights and safety; such negligence was gross and reckless. WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

Im. Count 249: Negligent supervision: Thomas Reid.

1. This is an action for common law negligent supervision under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1; III.B.16; IV.A.1-100; V.I1.6-10 are realleged

3. Reid owed Mr. Holston a special legal duty of care, custody, and control.

4. Reid did breached that duty whereby he has been failing to properly supervise Lars Severson and uses of force under Fla. Admin. Code r. 33-602.210. Section 20.315(1), Fla. stat.

5. He has in bad faith failed to insure that forms DC2-802 are properly filed by Lars Severson and properly maintained by Lars Severson in accordance with Fla. Admin. Code r. 33-602.210(10)(h).

6. Excessive uses of force are rampant since Lars severson, Siegel, and colonel Harris deliberate spoliate evidence of said excessive uses of force to prevent det~~ection~~ detection.

7. They deliberately delay investigating so that video footage can erase since they know that surveillance camera's footage erases after 30 days.

8. They deliberately and maliciously delay or fail to report gang violence and official misconduct to the inspector.

9. Reids failure to properly supervise these officials has resulting in Mr. Holston's being tortured, abused, and emotionally distressed.

10. Reid has acted in reckless disregard of Mr. Holston's human rights     176
WHEREFORE, compensatory damages, costs, and a trial by jury is demanded.

In. Count 258: Negligent supervision: Lars Severson

1. This is an action for common law negligent supervision under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1; III.B.4; IV.A.1-100 are realleged.

3. Severson owed Mr. Holston a special legal duty of care, custody, and control. Section 20.315(1)(c), Fla. stat.

4. Severson breached that legal duty where he failed to supervise Maguire properly and Maguire did sexually batter and beat Mr. Holston and harmed him, inter alia. Fla. Admin. Coder. 33-602.210(9)(a)9.

5. Severson should have known or did not that Maguire was unfit through prior excessive uses of force.

6. Lars Severson did fail to keep track of Maguire's uses of force as required by Fla. Admin. Code. r. 33-602.210(4)(6)(b4).

7. Severson did with reckless disregard for Mr. Holston's human rights and safety and did in bad faith fail to maintain and update Maguire and others use of force logs: DC2-802 logs.

8. Said fail to update and maintain DC2-802 logs created an atmosphere of concealment of said misconduct and rampant excessive uses of force by Maguire and others

9. Severson did fail to time investigate by retrieving and saving video surveillance evidence and has failed to time refer excessive uses of force investigations over to the inspector as required by Fla. Admin. Code. r. 33-602.210(10).

10. Severson has acted maliciously and in reckless disregard of Mr. Holston's safety and human rights.

11. Mr. Holston suffered excessive force by Maguire and others mental and emotional abuse and distress.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

10. Count 259: Negligence – Inspectors and investigators: Inspector Doty.

1. This is a common law action for negligence under 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1; III.B.18; IV.A.1-100 are realleged.

3. The inspector owes Mr. Holston a special statutory legal duty of

177

Section 944.31, Fla. Stat. and Section 20.315(1), Fla. Stat.

4. Said inspector owes a duty to complete inspection reports under Section 944.32, Fla. Stat.

5. Said inspector is responsible for and has a legal duty to investigate uses of force within "DOC". Section 944.35, Fla. Stat, Fla. Admin. Code r. 33-602.210(9), (10).

6. Inspector Baty did breach said duty where he has allowed violence to take over the prison.

7. He has allowed gang violence to flourish without fear of prosecution.

8. He has allowed gang member to create weapons and commit violent stabbing and cuttings without enforcing sections 874.03, 874.04, 790.20(v), 775.087(1), and 874.10, intra alia. Said statutes are under are never enforced in DOC.

9. Possession of weapons in "DOC" has flourished.

10. Violent acts have flourished and routinely go unpunished and investigated.

11. Said inspector has failed to file his inspector report and falsified.

12. He has failed to respond to grievances and investigate staff excessive uses of force under Section 944.35, Fla. Stat.

13. Mr. Holston suffered excessive use of force and torture because of Baty's nonfeasance which was gross and reckless in violation of mr Holston human rights and safety.

14. Mr. Holston further contends that Baty has failed to ensure that DC2-802 use of logs are properly maintained and updated under Fla. Admin. Code r. 33-602.210(10)(h).

WHEREFORE, premises considered, mr. Holston demands a trial by jury, compensatory ▆▆▆▆▆ damages, costs, and a trial by jury.

In count 25: Gang violence: maguire, barron, wells, and harriss.

1. This is a statutory action under section 874.06, Fla Stat for gang violence pursuant to 28 u.s.c. 1367(a).

2. Paragraphs I-III. A.1; III-B.1-3 and 4 are realleged; paragraphs IV. A.1-100 are realleged.

3. Maguire did initiate, plan, direct and supervise gang related activity as defined by 874.03(4)(a), Fla. Stat. and in violation of section 874.10, Fla. Stat. where he furthered the interest of the criminal gang "unforgivers," a white supremacist gang or "hate group" in violation of sections 874.03(6) and 874.04, Fla. Stat.

178

when he entered centergate.

5. Maguire did agree and combine with Barron, Harris, and the "unforgivens" to stab and kill Mr. Holston when he entered centergate.

6. In furtherance of said combination, Maguire did offer Mr. Holston an ultimatum: "either go through centergate and let those gangmembers stab you up or we can do it my way".

7. When Mr. Holston looked toward centergate he saw four white inmates with tatoos in their faces clutching, i.e., holding knives in their pants.

8. Mr. Holston subsequently learned that said inmates were "unforgivens".

9. Mr. Holston did immediately become fearful that violence and death was imminent in violation of sections 784.011 and 772.102(1)(a)14, Fla. Stats.

10. Observing said gang members coupled with Maguire's threat did then and there intimidate and threaten him which caused him "outrage" or intentional infliction of emotional distress.

11. In furtherance of said combination, Maguire did beat and sodomize Mr. Holston after Barron pepper sprayed and cuffed him up while Harris stood afar and Romulus looked on while inside of medical.

12. After being confined for a week or so, "unforgiven" member "wiz", short for "grand wizard", was housed next Mr. Holston in cell B1103.

13. "wiz" did confirm and convey to Mr. Holston that he was one of the four inmates standing in centergate that day "clutching," and he did confirm that they were armed and intended to carry out Maguire's orders.

14. Further, he did convey to Mr. Holston that Maguire is the "unforgiven's" mule, i.e., a person who smuggles contraband into prison, and he did state that Mr. Holston should leave the pound because Maguire order his sect to wet, i.e., stab, Mr. Holston because he is a snitch.

15. He then stated that none of his brothers believed Maguire but because Maguire was their "mule", they had to carry out his orders.

16. He stated that he and his brothers were glad Maguire did it himself, but they didn't like the fact that Mr. Holston was handcuffed; "that was some straight fuck shit he did", meaning pepper spray, cuff, beat, and sodomize Mr. Holston.

17. Mr. Holston has suffered extreme emotional distress and mental

18. Upon being escorted to Bravo dorm by Barnes and Maguire, Mr. Holston was met with more pure unadulterated torture by captain Wells to further this standing or status with the criminal gang "unforgivers" or with the intent to benefit, promote or further the interest of said criminal gang and to intimidate Mr. Holston

19. The "unforgivers" is a "Hate group" as defined by Section 874.03 (6), Fla. Stat. and also a "criminal gang" as defined by Section 874.03 (1), Fla. Stat.

20. Wells and Harriss did conspire with Escheverria and rambut to "obtain or use" Mr. Holstn's law books and property with felonious intent to deprive him of some permanently, as further acts of gang related activity or criminal gang related activity as defined by section 874.03 (4)(a).

WHEREFORE, premises considered, Mr. Holston Demands 1 billion in compensatory damages, costs, and a trial by jury.

**Ig. Count 253: Contract implied in law**

1. This is an action for indebitatus assumpsit for quasi or constructive contract pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-III. B. 1-25 and IV.A.1-100 are realleged.

3. Mr. Holston submitted multiple sickcall requests to be seen by medical for injuries caused by "state action" and exacerbated by Centurion employees.

4. Centurion demanded the required statutory medical copay fee.

5. Mr. Holston did pay and Centurion did accept said fee whereby benefits flowed to said defendant in the form of monetary fees.

6. Under Mr. Holstn's circumstances, it would be unjust and inequitable for Centurion to retain the fees when its own employees caused the very injuries Mr. Holstn requested medical attention.

WHEREFORE, premises considered, Mr. Holston Demands judgment for the return of said fees paid, costs, and a trial by jury and such other and further relief to which he may justly show himself entitled.

**Ir. count 254: Civil theft : W. canty : Food**

1. This is a statutory action for civil theft under section 772.11, Fla. Stat. pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-III. A 1; III. 6.19; IV.A.1-100 are realleged.

3. On numerous occasions canty did maliciously, knowingly "obtain or

use" Mr. Holston property with felonious intent to permanently deprive him of his right or a benefit from the property or did appropriate the property to his own use or the the use of one not entitled to the property, To wit:

(a) On Saturday January 11, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee in violation of sec. 812.014, Fla.Stat.

(b) On January 12, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee in violation of sec. 812.014, Fla Stat.

(c) On January 15, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee in violation of sec. 812.014, Fla. Stat.

(d) On January 16, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee in violation of sec. 812.014, Fla. Stat.

(e) On January 20, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee in violation of sec. 812.014, Fla. Stat.

(f) On January 21, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee and milk off his breakfast tray and his chicken off his dinner tray in violation of sec. 812.014, Fla. Stat.

(g) On January 24, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee and juice in violation of Section 812.014, Fla. Stat.

(h) On January 25, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee in violation of sec. 812.014, Fla. Stat.

(i) On January 26, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee and milk in violation of sec. 812.014, Fla. Stat.

(j) On January 29, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee in violation of sec. 812.014, Fla. Stat.

(k) On January 30, 2020, he did knowingly "obtain or use" with Felonious intent Mr. Holston's coffee in violation of sec. 812.014, Fla. Stat.

4. Mr. Holston makes a separate $200 demand for his chicken on January 21, 2020 deprivation and $200 for each deprivation of his breakfast tray items.

WHEREFORE, premises considered, Mr. Holston demands compensatory and treble damages in the liquidated amount 2,200 dollars, costs, and a trial by jury.

181

1. This is an action for aiding and abetting statutory theft pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-III.A.1; III.B.4, & IV.A.1-(a0); V.Ir.3-4 are realleged.

3. On numerous occasions Weiss and Severson did aid and abet theft of food maliciously and in reckless disregard of Mr. Holstein's property rights.

4. They knew Mr. Holstein was being deprived of his food items.

5. The did render substantial assistance by conniving and failing to take action despite being informed through the grievance process.

WHEREFORE, premises considered, Mr. Holstein demands compensatory ~~damages~~ damages, costs, and a trial by jury.

Iv. count 257: Concert of action to commit civil theft: Weiss and severson

1. This is an action for concert of action to commit civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V.IS. 2-5 are realleged.

3. Weiss and severson did aid, encourage, or otherwise further the thefts by express or tacit agreement whereby they deliberately and maliciously failed to ensure that confinement prisoners received their proper diets

4. An implied concert of action grows out of their status or relation and under the circumstances under which they committed theft.

WHEREFORE, premises considered, Mr. Holstein demands compensatory ~~damages~~ damages, costs, and a trial by jury.

Iv. count 258: Conspiracy to commit civil theft: Weiss and Severson

1. This is an action for conspiracy to commit civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V.Iv. 2-4 are realleged.

3. Weiss and severson did agree and combine to deprive prisoners confined in confinement units of their regular diets including "chicken on the bone", their leg quarters, cookies, milk, juice, and coffee. And in furtherance of said agreement Canty did knowingly "obtain or use" Mr. Holstein milk, juice, and "chicken on the bone" on numerous occasions.

WHEREFORE, premises considered, Mr. Holstein demands compensatory ~~damages~~ damages, costs, and a trial by jury.

Iv. count 259: Conversion of food: canty

1. This is an action for common law tover for the conversion of food under

2. Paragraphs V.Ir. 2-4 are realleged.

3. On numerous occasions Canty did exercise wrongful dominion over mr. Holston's food items whereby he deprived Mr. Holston of possession or use for an indefinite or permanent time; said dominion was inconsistent with mr. Holston's ownership to same.

4. Said malicious and in bad faith exercise of dominion was done in reckless disregard of mr. Holston's property rights.

WHEREFORE, premises considered, mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

Iw. count 259: Civil theft: MECLURE: Food

1. This is an action for statutory Civil theft under Section 772.11, Fla stat. pursuant to 28 U.S.c. 1367(a).

2. Paragraphs I-III. A.1; III. B.10; IV. A.1-100 are realleged.

3. mcClure did on multiple and numerous occasions knowingly "obtain or use" mr. Holston property, to wit:

    (a) Friday January 17, 2020: coffee and milk - breakfast tray: $200

    (b) Sunday January 19, 2020: coffee and milk - breakfast tray: $200

    (c) Wednesday January 22, 2020: coffee - breakfast tray: $200

    (d) Thursday January 23, 2020: coffee and milk - breakfast tray: $200

    (e) monday January 27, 2020: coffee - breakfast tray: $200

    (f) Tuesday January 28, 2020: coffee and milk - breakfast tray: $200

    (g) Tuesday January 28, 2020: chicken - dinner tray: $200

with felonious intent to permanently deprive mr. Holston of his right to or a benefit from the property or did appropriate the property to the defendants own use or to the use of any person not entitled to the property in violation of section 812.014(1), Fla. Stat. and in malicious and reckless disregard of Mr. Holston's health, safety, human rights, and property rights

WHEREFORE, premises considered, mr. Holston Demands 1600 dollars as liquidated trebled damages, costs, and a trial by jury.

Ix. count 28?: Aiding and abetting civil theft.

1. This is an action for aiding and abetting civil theft pursuant to 28 U.S.c. 1367(a)

2. Paragraphs I-III. B. 4, 8, 19; X. Iw. 2-3(a) are realleged.

3. mcClure did commit numerous felonious thefts of mr. Holston's

food.

4. Weiss and severson knew that mcclure was knowingly "obtaining or using" mr. Holston's food feloniously.

5. Weiss and severson providing substantial assistance by enforcing a policy of not serving "chicken on the bone", i.e., leg quarters to Confinement inmates based on an unfounded exaggerated security threat and not serving coffee, milk or juice.

6. Further, despite grievances, they have connived and failed to insure that mr. Holston was served his proper diet as reflected on the state created menu, in reckless and malicious disregard of mr Holston's property rights.

WHEREFORE, premises considered, mr. Holston Demands compensatory ▬▬▬ damages, costs, and a trial by jury.

Iy. count 260: concert of action to commit civil theft

1. This is an action for implied concert of to commit civil theft under 28 U.S.C. 1367(a)

2. Paragraphs V. Ix. 2-6 are realleged.

3. Weiss and severson did aid, encourage, or further mcclure's numerous thefts whereby they expressly or tacitly agreed with such conduct through ratification, connivance, and acquiescence when they knew of such conduct and approved same by, intralia, their failure to correct same or through their policy.

4. An implied concert of action exist because of their statuses and relations and the conditions under which they allowed mr. Holston to be deprived of his food.

WHEREFORE, premises considered, mr. Holston Demands compensatory ▬▬▬ damages, jointly and severally, costs, and a trial by jury.

Iz. count 261: conspiracy to commit civil theft

1. This is an action for conspiracy to commit civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V. Iy. 2-4 are realleged.

3. Weiss and severson did agree and combine with mcclure to knowingly "obtain or use" mr. Holston's food feloniously with said felonious intent to permanently deprive him of said coffee, milk, and juice and have implemented a criminal policy to feloniously deprive mr Holston and other Confinement inmates of "chicken on the bone", i.e., leg quarters and in furtherance of said agreement,

188

disregard of his human rights, safety, and property.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~

damages, jointly and severally, costs, and a trial by jury.

**Ja. Count 263:** Conversion of Food: McClure

1. This is an action for trover for the conversion food under 28 U.S.C. 1367(a)

2. Paragraphs V.I.W.1-3 (g) are realleged.

3. McClure did wrongfully exercise dominion over Mr. Holston's food where he was responsible for feeding Mr. Holston and on said numerous occasions, he did fail to provide Mr. Holston his milk, juice, coffee, and "chicken on the bone".

4. Said wrongful deprivation was inconsistent with Mr. Holston's ownership and was done maliciously and in reckless disregard of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~

damages, costs, and a trial by jury.

**Jb. Count 264:** Civil Theft: Sellers

1. This is an action for statutory civil theft under section 772.11(1), Fla. Stat. pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-III. B.13; IV. A.1-100 are realleged.

3. On numerous occasions, Sellers did knowingly "obtain or use" Mr. Holston's property to wit:

   (a) Monday, January 20, 2020, Canty put Mr. Holston and inmate in cell B1101 in the shower and put our property outside the door. After shift changed, Canty relayed to Sellers Mr. Holston PREA complaint earlier that day. As Sellers walked by Mr. Holston's property, he kicked Mr. Holston's two cheese squeezers that were rubber banded together out of his property across the dorm and ultimately gave it to his inmate orderly. Each had a value of 83 cents for a total of $1.66.

   (b) Tuesday, January 21, 2020, Sellers served dinner and failed to serve Mr. Holston and other inmates "chicken on the bone" i.e., leg quarters based on the warden's unwritten policy of denying confinement prisoners their leg quarters on Tuesdays based on an exaggerated security threat. ~~and~~ with the felonious intent to permanently deprive him of said property or a right or benefit thereto in violation of section 812.014(1), Fla. Stat.

4. Said felonious deprivation was done recklessly and in wanton disregard of Mr. Holston's human safety, and property rights, maliciously.

WHEREFORE, premises considered, Mr. Holston Demands $400 dollars as liquidated treble damages for each theft, costs, and a trial by jury.

Jc. Count 26B: Aiding and abetting theft: Weiss and Severon

1. This is an action for aiding and abetting theft under 28 U.S.C. 1367(a).

2. Paragraphs I-III.B.4,8; V.Jb. 236) - 4 are realleged.

3. Severon and Weiss knew sellers did not serve leg quarters on tuesdays to confinement inmates, since they created the unwritten policy and enforce it by not fixing trays with leg quarters on them on tuesdays for the confinement dorm; this constitutes not only substantial assistance but actual participation of such criminally felonious deprivation.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▓▓▓ damages, costs, and a trial by jury.

Jd. Count 26B: Concert of action to commit civil theft: Weiss and severon

1. This is an action for implied concert of action to commit civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V. Jc. 2-3 are realleged.

3. Weiss and severon did aid, encourage, or otherwise further sellers theftious conduct by express or tacit agreement and did ratify and approve said conduct by informal policy, rule, or custom.

4. An implied concert of action between Weiss, sellers, and severon grew out of their status or relations and the conditions under which the thefts were committed.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ▓▓▓ damages, costs, jointly and severally, and a trial by jury.

Je. Count 26B: Conspiracy to commit civil theft: Weiss and severon

1. This is an action for conspiracy to commit civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V. Jd. 2-4 are realleged.

3. Weiss and severon did agree and combine with sellers to knowingly "obtain or use" Mr. Holston's leg quarter with felonious intent to permanently deprive him of said chicken whereby Weiss and sellers failed to serve him a leg quarter in furtherance of said combination and did deprive Mr. Holston of

186

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and punitive~~ damages, jointly and severally, costs, and a trial by jury.

Jf. Count 26B: Common law conversion: seller.

1. This is an action for trover for the conversion of Mr. Holston's chicken and milk, and coffee under 28 U.S.C. 1367(a).

2. Paragraphs V. Je. 2-3 are realleged.

3. On numerous occasions, the Defendants have converted inmate property, Defendants did wrongfully exercise dominion over Mr. Holston's food and property whereby they permanently deprived him of said property in contravention to his right to possess same.

4. Said acts being in derogation of his possessory rights in malicious and reckless and gross disregard of his human rights, safety, and property rights.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

Jg. Count 26B: Civil theft: Harriss

1. This is an action for statutory civil theft under 28 U.S.C. 1367(a) and 772.11(1), Fla. Stat.

2. Paragraphs I-III G. 1; IV.A. 1-100 are realleged.

3. Mark Harriss did knowingly "obtain or use" Mr. Holston's property to wit: 7,000 dollars with felonious intent to temporarily deprive Mr. Holston of his right to the money whereby he reneged on allowing Mr. Holston to send his christmas money out "everyday" and refused to allow Mr. Holston to send out his special withdrawal forms; said actions were done maliciously and in gross and reckless disregard of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston Demands liquidated trebled damages in the amount of 21,000 dollars, costs, and a trial by jury.

Jh. Count 27B: Common law conversion: Harriss

1. This is an action for trover for the conversion of Mr. Holston's property pursuant to 28 U.S.C. 1367(a).

2. Paragraphs V.Jg. 2-3 are realleged.

3. In refusing to allow Mr. Holston to utilize the special withdrawal process in contravention to his expressed policy and promise, Harriss did exercise wrongful dominion over Mr. Holston's property in derogation of Mr. Holston's possessory rights permanently, maliciously and in gross and reckless disregard of his property rights.

187

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

Ji. Count 270: Civil theft: Wells

1. This is an action for statutory civil theft under Section 772.11111, Fla. Stat. pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-III.0.14; IV.A.1-100 are realleged.

3. Wells, at the time of authorizing Mr. Holston's placement in confinement for batteries on Sgt. Barron and colonel Harriss, was required to obtain and inventory Mr. Holston's property that was securely stored in his cell locker with his combination lock securing said property therein. F.A.C. 33-602.201(7).

4. When Mr. Holston left the dorm to go see the colonel to send out his special withdrawals, he secured his locker and ensured it was locked by double checking his lock by locking it, by pulling it, and by shaking it twice.

5. Among the things secured in his locker prior to his exiting the dorm to see the colonel were as follows:

   (a) One 7 inch Jpay tablet: $100

   (b) 200 songs on Jpay tablet with 20 stamps: $250

   (c) Law books: Fla. R. Court 2019 $200, A jailhouse lawyer manual; Limits of power, search for orders, 10,000 depositions later, and the voir dire examination, inter alios: $250

   (d) Personal 8½ boots: $40

   (e) Canteen: $80

   (f) Sentimental pictures: $1,000

   (g) Educational and program certificates: $50

   (h) Legal case files and records: State v. Holston, 4008-536; Holston v. McNeII, 2810-CV-14079-KMM(S.D.Fla.); Holston v. Jones, 1015-2262 (Fla.1ous); Holston v. Tucker, 11-10740 (U.S. Sup. Ct.); Holston v. Tucker, 11A952 (U.S. Sup. ct.); In re Estate of Johnny Jones, Sr., PRC16-1106; In re Estate of Jones, Jr., PRC16-1824 Holston v. Jones, Sr., et al., CACE 17000345(Broward county); Holston v. Jones, et al, 4019-3043; Holston v. LaFlam, et al, 8:14-cv-301-T-35SS (m.o.Fla.); Holston v. Limb, et al, 8:15-cv-2157-T-36MAP(m.o.Fla.); Holston v. DOC, 8:17-cv-00796-WFJ-TGW (m.o.Fla). And multiple other original and interlocutory proceedings in the first, second, third, and fourth district courts of Appeal $1,000

i. On December 21, 2019, Mr. Holston requested his property from Wells and others, they feloniously refused to provide him a mat to sleep on, clothing to wear, a tooth brush, and tooth paste, inter alia.

ii. On December 22, 2019, Mr. Holston requested his property from Wells and others, they feloniously refused to provide him a mat to sleep on, clothing to wear, a toothbrush, and tooth paste, inter alia. See, e.g., grievance log # 404-1912-0299 and 404-2001-0113

6. Wells did maliciously and knowingly "obtain or use" Mr. Holston's property, on multiple occasions, with felonious intent to permanently deprive Mr. Holston of his right to or a benefit from said property enumerated in paras. V. Ji. 5 (a)-(iii) or did appropriate said property to his own use or one not entitled thereto in violation of section 812.014(1), Fla. Stat.

7. Said deprivation was done in gross and reckless disregard of Mr. Holston's human, safety, and property rights.

WHEREFORE, premises considered, Mr. Holston Demands 2,970 for each day Mr. Holston requested his property from Wells trebled which is 8,910 for each date for a total of 17,820, costs, and a trial by jury.

Jj. Count 272: Aiding and abetting civil theft: Harriss, McClure, Maguire, and Barron

1. This is an action for aiding and abetting civil theft under 28 U.S.C. 1367(a).

2. Paragraphs I-III. B. 1-3, 10; V. Ji. 2-7 are realleged.

3. Harriss, McClure, Maguire, and Barron knew that Wells knowingly "obtained or used" Mr. Holston property with felonious intent; and they all provided substantial assistance by failing to report same or give Mr. Holston his property back or did falsify their reports to conceal same.

4. They all did act in bad faith and in malicious, reckless disregard of Mr. Holston's human and property rights.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages, costs~~ damages, costs, and a trial by jury.

Jk. Count 272: Implied/concert of action to commit civil theft:

1. This is an action for implied/concert of action to commit civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V. Jj. 2-4 are realleged.

3. Harriss, McClure, Maguire, and Barron did aid, encourage, ratify, or otherwise

189

agreement whereby they falsified records to conceal their actions and personally refused to return said property.

4. An implied concert of action exits between said defendants because of their status or relation and the conditions under which they committed the thefts.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, jointly and severally, costs, and a trial by jury.

Jl. Count 27½. Conspiracy to commit theft: Harriss, McClure, Maguire, and Barron

1. This is an action for conspiracy to commit civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V. Jk. 2-4 are realleged.

3. Harriss, McClure, Maguire, and Barron did aid, encourage, or agree and combine to feloniously steal or "obtain or use" Mr. Holston's property and in furtherance thereof Wells did place Mr. Holston on unauthorized strip and did not so much as offer Mr. Holston a "modesty garment" and all defendants falsified records to conceal their actions.

4. The defendants did act maliciously and in reckless disregard of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

Jm. Count 27½: Civil theft: A. Escheverria

1. This is an action for statutory civil theft under 772.11(1), Fla. Stat. pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I—III. B. 12; IV. A. 1-100; V.Ji. 5(a)-(h).

3. On December 22, 2019, Sergeant A. Escheverria obtained and inventoried Mr. Holston's property from his cell that was locked in his locker, pursuant to.

4. He retrieved (1) tablet, (4) bag of legal work, miscellaneous legal and personal mail, (1) lock, and boots according to the DC6-220 that he signed.

5. The DC6-220 ("Impounded Personal Property List") form has neither a notation of Mr. Holston's absence, a signature by a second officer as required by F.A.C. 33-602.201(7)(b)3, nor Mr. Holston's signature as required by F.A.C. 33-602.201(7)(f)(1), (2).

6. Mr. Holston Holston was never given his property to check for missing items as required by F.A.C. 33-602.201(7)(f)(1).

7. Mr. Holston never signed or received a receipt for personal property

190

8. Mr. Holston did not receive virtually none of his property when he transferred to and arrived at Charlotte C.I. on January 30, 2020, as evidenced by a lack of a DC6-227 form.

9. A. Echevarria did maliciously and knowingly "obtain or use" Mr. Holston's property as described in paras. V.Ji. 5(a)-(h) and V.Jm.4 above with felonious intent to permanently deprive Mr. Holston of his right to or benefit from said property in violation of section 812.014, Fla. stat.

10. Said Defendant committed such theftuous conduct in gross and reckless disregard of Mr. Holston's right to said property in violation of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston Demands compensatory damages in the amount of $2,970 and treble damages in the amount of 8,910, costs, and a bench trial.

Jn. Count 27B: Aiding and abetting civil theft: Harriss, Wells, McClure, Barron, and Maguire.

1. This is an action for aiding and abetting civil theft under 28 U.S.C. 1367(a).

2. Paragraphs III B.1-3, 10, 14; V.Jm. 2-10 are realleged.

3. A. Echevarria did maliciously and feloniously steal Mr. Holston's property.

4. Harriss, Wells, McClure, Barron, and Maguire knew that Echevarria stole Mr. Holston's property.

5. Defendants did provide substantial assistance to Echevarria whereby they falsified reports and failed to investigate and refused to give Mr. Holston his property to conceal said theftuous conduct, in bad faith.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

Jn. Count 27B: Implied concert of action to commit civil theft: Harriss, Wells, McClure, Barron, and Maguire.

1. This is an action for implied concert of action to commit civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V.Jn. 2-5 are realleged.

3. Harriss, Wells, McClure, Barron, and Maguire did aid, encourage, or otherwise further Echevarria's theftuous conduct by express or tacit agreement whereby they concealed said felonious act by refusing to return Mr. Holston's property

191

4. An implied concert of action between Defendants grows out of the status or relation of the parties and the conditions under which the tortious act proximately deprived Mr. Holston of his property.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

Ip. Count 278: Conspiracy to Commit Civil theft: Harriss, Wells, McClure, Barron, and Maguire

1. This is an action for Conspiracy to commit Civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V. Jo. 2-4 are realleged.

3. Harriss, Wells, McClure, Barron, and Maguire did agree and combine with Escheverria to maliciously "obtain or use" Mr. Holston's property with felonious intent to deprive him of same And in furtherance of said combination, Escheverria did Steal Mr. Holston property with felonious intent and defendants did felonly reports to conceal Same in bad faith and in reckless disregard of Mr. Holston's property rights.

WHEREFORE, premises Considered, Mr Holston demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

Iq. cont 279: conversion: Escheverria

1. This is an action for common law trover for the Conversion of property under 28 U.S.C. 1367(a).

2. Paragraphs V. Im. 2-10 are realleged.

3. Escheverria did act in derogation of Mr. Holston possessory whereby he did exercise wrongful authority over Mr. Holston's property, maliciously depriving him of possession permanently in gross and reckless disregard of his property rights.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

Ir. Count 280: Civil theft: Acosta

1. This is a statutory action for civil theft under Section 772.11(1), Fla. Stat. pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-II, III.G.20; IV.A.1-100 are realleged.

3. Acosta did on numerous occasions maliciously and knowingly "obtain or use" Mr. Holston's property, to wit:

192

   (b) Tuesday, December 24, 2019: coffee — $200

   (c) Friday, December 27, 2019: coffee — $200

   (d) Saturday, December 28, 2019: coffee — $200

   (e) Sunday, December 29, 2019: coffee — $200

   (f) Wednesday, January 1, 2020: coffee — $200

   (g) Thursday, January 2, 2020: coffee — $200

with felonious intent to permanently deprive Mr. Holston of a right to or a benefit from said food product in violation of section 812.014(1), Fla. Stat.

4. Defendant did deprive Mr. Holston of said property in gross and reckless disregard of his right to said property.

WHEREFORE, premises considered, Mr. Holston Demands $1200 dollars, costs, and a bench trial.

JS. Count 280: Aiding and abetting civil theft: weiss and severson.

1. This is an action for aiding and abetting civil theft pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-II, III.C.4, 8; IV.A.1-100; V.Jr.2-4 are realleged.

3. On numerous occasions, weiss and severson knew that Acosta was maliciously stealing Mr. Holston coffee with felonious intent.

4. Weiss and severson did render substantial assistance whereby they deliberately failed to insure that the confinement food carts were properly loaded with coffee in route to confinement.

5. Weiss and severson did ratify such theftous conduct or did approve same in gross and reckless and malicious disregard of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston Demands compulsatory ~~compensatory~~ damages, costs, and a trial by jury.

Jt. Count 281: Implied/concert of action to commit civil theft: weiss and severson.

1. This is an action for implied concert of action to commit civil theft under 28 U.S.C. 1367(a).

2. Paragraphs V.Js. 2-5 are realleged.

3. On numerous occasions, weiss and severson did aid, encourage, or otherwise further Acostas malicious thefts by express or tacit agreement.

4. An implied concert of action between defendants grew out of the status or relation of said defendants and the conditions under which the deprived Mr. Holston of his property.

173

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and~~ damages, costs, and a trial by jury.

__IV. Count 282:__ Conspiracy to commit civil theft: Weiss and Severson.

1. This is an action for conspiracy to commit statutory theft pursuant to 28 U.S.C. 1367(a).

2. Paragraphs V.Js. 2-5; V.Jt. 3-4 are realleged.

3. Weiss and Severson on numerous occasions did agree and combine to maliciously steal Mr. Holston's food; and in furtherance of said combination, Acosta did steal said food on numerous occasions in gross, malicious, and reckless disregard of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston prays for compensatory ~~and~~ damages, jointly and severally, costs, and a trial by jury.

__IV. Count 283:__ Conversion: Acosta.

1. This is an action for common law trover for the conversion of property pursuant to 28 U.S.C. 1367(a).

2. Paragraphs V.Js. 2-4 are realleged.

3. On numerous occasions, Acosta did maliciously act in derogation of Mr. Holston's possessory rights and did wrongfully exercise authority or dominion over Mr. Holston's property whereby he deprived Mr. Holston of said property permanently.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

__IV. Count 288:__ Civil theft: Rembert.

1. This is an action for statutory civil theft under Section 772.11(1), Fla. Stat. pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-II, III.& II; IV.A. 1-100 are realleged; Paragraphs V.Ji.5(a)-(h)(ii) are realleged.

3. On multiple occasions, Rembert did maliciously and knowingly "obtain or use" Mr. Holston property to wit:

On January 12, 2020 she did "obtain or use" Mr. Holston's property and did refuse to give him same where it had a value of 2,970 in violation of Section 812.014(1), Fla. Stat. __See__ log# 404-2001-0074

On January 23, 2020 she did "obtain or use" Mr. Holston's property and did refuse to give him same where it had a value of 2,970 in violation of

194

with felonious intent to permanently deprive Mr. Holston of his right to or a benefit from said property.

4. She did fail to ensure that the DC6-220 form was properly filled out, and she did refuse to ensure the proper signatures were on said form and she maliciously failed to allow Mr. Holston to sign a property return receipt form DC6-227 as required by F.A.C. 33-602.201(7)(g) the morning he transferred.

5. Such act evince consciousness of guilt and was done in malicious, gross, and reckless disregard of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston demands treble damages for both thefts in the amount of 17,820, costs, and a bench trial.

Jx. Count 286: Aiding and abetting theft: severson, Harriss, wells, Eschevarria, mcclure, siegler.

1. This is an action for aiding and abetting civil theft pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-III.B.1,4,10,12,14,and 22; V. Jw. 2-4 are realleged.

3. On multiple occasions, severson, Harriss, wells, Eschevarria, mcclure, and siegler knew that Rembert stole Mr. Holston's property, and they all provided substantial assistance whereby they deliberately failed to act or give Mr. Holston his property when he requested same. Said acts were malicious and done in reckless disregard of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston demands compensatory ▬▬▬ damages, costs, and a trial by jury.

Jy. count 286: Implied concert of action to commit theft: severson, Harriss, wells, Eschevarria, mcclure, and siegler.

1. This is an action for implied concert of action to commit theft pursuant to 28 U.S.C. 1367(a).

2. Paragraphs V. Jx. 2-3 are realleged

3. severson, Harriss, wells, Eschevarria, mcclure, siegler did aid, encourage, or otherwise further Rembert's theftuous conduct by express or tacit agreement whereby they failed to deliver said property upon request, interalia.

4. An implied concert of action between defendants grew out of their status or relation and the conditions under which their tortuous acts maliciously deprived Mr. Holston of his property.

WHEREFORE, premises considered, Mr. Holston demands compensatory ▬▬▬   195

J2. Count 288: Conspiracy to commit civil theft: Severson, Harriss, Wells, Eschevarria, McClure, and Siegler.

1. This is an action for conspiracy to commit civil theft pursuant to 28 U.S.C. 1367(a).

2. Paragraphs V. Jy. 2-4 are realleged.

3. Severson, Harriss, Wells, Eschevarria, McClure, and Siegler did agree and combine with Rembert to maliciously steal Mr. Holston's on multiple occasions; and in furtherance of said combination, Rembert did steal Mr. Holston's property in gross and reckless disregard of his property rights. WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, jointly and severally, costs, and a trial by jury.

Ka. Count 289: Conversion: Rembert

1. This is an action for trover for the conversion of Mr. Holston's property pursuant to 28 U.S.C. 1367(a)

2. Paragraphs V. Jw. 2-5 are realleged.

3. Rembert's retention of Mr. Holston property for over 30 days, despite multiple requests and grievances therefor, was in derogation of Mr. Holston's possessory rights and did constitute wrongful exercises of authority over his property that deprived him of possession permanently.

4. Said acts were malicious, gross, and reckless deprivations of his property rights.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~punitive~~ damages, costs, and a trial by jury.

Kb. Count 290: Civil theft: Severson

1. This is an action for statutory civil theft under Section 772.11(1), Fla. Stat. pursuant to 28 U.S.C. 1367(a).

2. Paragraphs I-II, III. B. 4; IV. A. 1-100; V. Ji. 5(a)-(h) are realleged.

3. On January 23, 2020, as Severson and the Major walked through Bravo dorm, Mr. Holston requested his property. Severson promised to return said property. Mr. Holston further informed him of the abuse he suffered and Severson promised to view the cameras.

4. Severson did maliciously and knowingly " obtain or use Mr. Holston's property to wit: Paras. V.J. 5(a)-(h) are realleged with felonious intent to

196

WHEREFORE, premises considered, Mr. Holston Demands the trebled amount of $2,970 which is $8,910, costs, and a trial by judge.

KC. Count 290: Aiding and abetting civil theft: Rembert.

1. This is an action for aiding and abetting civil theft pursuant to 28 U.S.C. 1367(a).

2. Paragraphs III.B.11; V.Kb. 2-4 are realleged.

3. Severson did knowingly "obtain or use" Mr. Holston's property; Rembert knew Severson stole said property; and she did provide substantial assistance by failing to alert Mr. Holston to same whereby she retained his property at Severson's direction to prevent detection maliciously and in reckless disregard of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and punitive~~ damages, costs, and a trial by jury.

Kd. Count 291: Implied concert of action to commit civil theft: Rembert

1. This is an action for implied/concert of action to commit civil theft pursuant to 28 U.S.C. 1367(a).

2. Paragraphs V.Kc. 2-3 are realleged.

3. Rembert did maliciously and in bad faith aid, encourage or otherwise further Severson's theftuous conduct by refusing to provide Mr. Holston his property upon demand or request thereby aiding the concealment of said theft which reflected consciousness of guilt and on express or tacit agreement.

4. An implied concert of action between Defendants grew out of their status or relation and the conditions under which they deprived Mr. Holston of his property in such reckless and malicious manner.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~and punitive~~ damages, jointly and severally, costs, and a trial by jury.

Ke. Count 292: Conspiracy to commit civil theft: Rembert.

1. This is an action for conspiracy to commit civil theft pursuant to 28 U.S.C. 1367(a).

2. Paragraphs V.Kd. 2-4 are realleged.

3. Rembert did maliciously agree and combine with Severson to maliciously steal Mr. Holston's property; and in furtherance of said combination, Rembert did refuse to disgorge Mr. Holston's property, despite multiple requests or demands

192

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, jointly and severally, costs, and a trial by jury.

**K.F. Count 29~~4~~ Conversion: Severson**

1. This is an action for trover for the conversion of property under 28 U.S.C. 1367(a).

2. Paragraphs V. Kb. 2-4 are realleged.

3. Severson did act in derogation of Mr. Holston's possessory rights when he refused to give Mr. Holston his property upon demand, such refusal was a wrongful exercise or assumption of authority or dominion over Mr. Holston's property that was inconsistent with his ownership.

4. Severson did permanently deprive Mr. Holston of said property maliciously and in reckless disregard of Mr. Holston's property rights.

WHEREFORE, premises considered, Mr. Holston Demands compensatory ~~damages~~ damages, costs, and a trial by jury.

**K.g. Count 295: Negligent loss of property: Severson, Harriss, Wells, Esthevarria, and Rembert, and Siegler = Negligence per se / Strict liability.**

1. This is an action for common law negligence under 28 U.S.C. 1367(a)

2. Paragraphs I-II, III. B.1, 4, 11-12, 14, and 22; IV.A. 1-190; V. Ji. 3-7; V. Jm. 3-10; V. Jw. 3-5; V.Jx. 2-3 are realleged.

3. Defendants owed Mr. Holston a legal duty by F.A.C. 33-602.201 (7) to impound and safeguard it from loss, destruction or theft. F.S. 20.315(1), Flastt.

4. Defendant breached said legal duty whereby they:

    (a) Failed to ensure that proper notations respecting Mr. Holston's obsug and by ensuring that a second officer's signature was on form DC6-220.

    (b) By failing to ensure that Mr. Holston's property was impounded and stored on December 21, 2019 instead of December 23, 2020.

    (c) By failing to ensure that Mr. Holston checked and signed for his property to ensure nothing was missing under F.A.C. 33-602.201(7)(F)(1), in the presence of employee

    (d) By failing to ensure Mr. Holston and employee sign form DC6-220. FAC 33-602.201(7)(F)(2).

    (e) By failing to ensure the property was stored to safeguard against any

198

(F) By failing to ensure that Mr. Holston signed a receipt for returned property form DC6-227 when he transferred. F.A.C. 33-602.201 (7) (g).

(g) By failing to ensure Mr. Holston inventoried his property to see if any missing items can be located. F.A.C. 33-602.201 (7) (F) (3).

5. As a direct and proximate cause, Mr. Holston suffered loss of his property.

6. Defendants acts were malicious, gross, and reckless, especially where they deliberately violated the state regulation enacted for the safekeeping of prisoners property.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury

**Kh. count 296: Conversion: Wells**

1. This is an action for trover for the conversion of property pursuant to 28 U.S.C. 1367 (a)

2. Paragraphs V. Ji. 2-7 are realleged

3. Wells did maliciously withhold Mr. Holston's property in derogation of Mr. Holston's possessory rights and did wrongfully exercise dominion or authority over said property whereby Mr. Holston has permanently deprived Mr. Holston of his property recklessly.

WHEREFORE, premises considered, Mr. Holston prays for compensatory ~~and punitive~~ damages, costs, and a trial by jury.

**Ki. count 297: Detinue: Canty, McClure, Sellers, Wells, Escheverno, Acosta, Rembert, and Severson.**

1. This is an action for detinue pursuant 28 U.S.C. 1367 (a)

2. Paragraphs I-II, III. 8.1, 4, 10-14, 19-70; IV. A. 1-100; V. IV. 2-4; V. Jo. 2-4; V. Jf. 2-4; V. Jq. 2-3; V. Jv. 2-3; V. Ka. 2-4; V. Kf. 2-4; and V. Kh. 2-3 are realleged.

3. Defendants on multiple occasion maliciously and recklessly detained Mr. Holston's property in violation of his right to possess same.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ ~~punitive~~ damages, costs, and a trial by jury.

**Kj. count 298: Negligent Delay in Medical Care: Romulus, Harriss, McClure, Barron, Maguire, Wells, Christman, Cruzado, Ortiz.**

1. This is an action for negligent delay in treatment pursuant to 28 U.S.C. 1367 (a).

199

3. All Defendants owed Mr. Holston a special legal duty of care, custody, and control.

4. All breached said legal duties where they maliciously inflicted such grievous injuries and sadistically refused to provide Mr. Holston medical treatment for over 72 hours.

5. Specifically, Defendants, maliciously and in reckless disregard of Mr. Holston's health and safety, failed to comply with state use of force regulation whereby the deliberately failed to allow Mr. Holston to receive medical treatment after he was pepper sprayed, sodomized, beaten, burned, and cut multiple times. Fla. Admin. Code r. 33-602.210 (9)(c).

6. Instead, they handcuffed Mr. Holston and removed him from the shower that was designed to decontaminate, they ushered him to empty cell B1102L, they beat and sodomized him, and then decontaminated him outside the decontamination shower.

7. At that point, the extraction team was required to escort Mr. Holston to the medical exam room so that Ortiz could examine him and comply with F.A.C. 33-602.210 (9)(c) 1. a.-d.

8. Instead, they escorted Mr. Holston to cell B1102L, locked him in the cell, and removed the handcuffs; Mr. Holston never went to his post use of force exam.

9. Mr. Holston remained in said cell with gaping deep wounds—that subsequently became infected—until he was seen by nurse J. Louis and Dr. Bhadja on December 24, 2019, 72 hours later.

10. Defendants actions were malicious, sadistic, shocking, gross, callous, and were done in reckless disregard of Mr. Holston's health and safety.

11. Defendants breach is the proximate cause of Mr. Holston injuries and are strictly liable to Mr. Holston

12. Mr. Holston suffered mentally, emotionally, physical discomfort, pain and humiliation.

WHEREFORE, premises considered, Mr. Holston Demands Compensatory ~~~~ ~~~~ damages, costs, and a trial.

KK. Count 292: Sustantive state RICO

1. This is an action for state civil sustantive RICO under section 772.108(3)    200

2. Paragraphs I-III.B.1-6, 8-15, 19, 24; IV. A.1-100 are realleged.

3. The State of Florida①, the Florida Department of Corrections ("DOC"), Florida Department of Law Enforcement ("FDLE"), and the Florida Department of Health ("DOH") are statutory governmental enterprises under Sections 772.102(3) and 895.02(5), Fla. Stat.; and Centurion and Trinity Food Services Corporation ("Trinity") are statutory legal entities under sections 772.102(3) and 895.02(5), Fla. Stat. The criminal gang "unforgivens" is a "hate group" and statutory enterprise under Section 895.02(5), Fla. Stat. An "associate in fact" enterprise is alleged. Collectively, said enterprises shall be referred to as the "enterprise".

4. All Defendants were either employed by or associated with the enterprise or both.

5. Over the course of five years, the Defendants used the enterprise to commit numerous criminal acts; in furtherance of said pattern of criminal activity, said Defendants did commit numerous diversified criminal acts:

6. On numerous occasions, W. Canty did commit theft in violation of Section 812.014(1), Fla. Stat. to wit: paragraphs V. Ir. 3(a)-(x) are realleged; said conduct violates section 772.102(1)(a)20, Fla. Stat. (2019).

7. On numerous occasions, W. Canty did conspire or agree and combine with Weiss and Severson to commit theft to wit: paragraphs V.Iu.2-3 are realleged in violation of Sections 812.014(1) and 777.04, Fla. Stat. Said conduct violates Section 772.102(1)(a)20, Fla. Stat. (2019)

8. On numerous occasions, McClure did commit theft to wit: paragraphs V. Iw. 3(a)-(g) are realleged, in violation of Section 812.014(1), Fla. Stat. Said conduct violates section 772.102(1)(a)20, Fla. Stat.

9. On numerous occasions, Weiss and Severson agreed and combined with McClure to commit theft to wit: Paragraphs V.IZ. 2-3, in violation of Sections 812.014 and 777.04, Fla. Stat. Said conduct violates section 772.102 (1)(a)20, Fla. Stat.

10. On numerous occasions, Sellers did commit theft in violation of section 812.014(1), Fla. Stat. to wit: paragraphs V. Jb.3-4 are realleged. Said conduct violates section 772.102(1)(a)20, Fla. Stat.

201

to commit theft, to wit: paragraphs V.Je. 2-3 are realleged, in violation of Sections 812.014(1) and 777.04, Fla. Stat. Said conduct violates Section 772.102 (a) 20, Fla. Stat.

12. On numerous occasions, Wells did commit theft in violation of Section 812.014, Fla. Stat., to wit: Paragraphs V.Ji, 3-7 are realleged. Said conduct violates Section 772.102(1)(a) 20, Fla. Stat.

13. On numerous occasions, Harriss, McClure, Maguire, and Barron did agree and combine with Wells to commit theft, to wit: Paragraphs V.J1.2-4 are realleged, in violation of sections: 812.014(1) and 777.04, Fla. Stat. Said conduct violates Section 772.102(1)(a) 20, Fla. Stat.

14. On December 22, 2019, A. Escheverria did steal Mr. Holston's property, to wit: paragraphs V.Jm. 2-10 are realleged, in violation of Section 812.014(1), Fla. Stat. Said conduct violates Section 772.102(1)(a) 20, Fla. Stat.

15. Harriss, Wells, McClure, Barron, and Maguire did agree and combine to steal Mr. Holston's property, to wit: Paragraphs V.Jp. 2-3 are realleged, Said conduct violates Sections 812.014(1) and 777.04. This conduct is in violation of Section 772.102(1)(a) 20, Fla. Stat.

16. On numerous occasions, Acosta did commit theft of Mr. Holston's property, to wit: Paragraphs V.Jr. 3-4 are realleged, in violation of Section 812.014(1), Fla. Stat. Said conduct violates Section 772.102(1)(a) 20, Fla. Stat.

17. On numerous occasions, Acosta, Weiss, and Severson did agree and combine to steal Mr. Holston's property, to wit: Paragraphs V.Ju. 2-3 are realleged, in violation of Sections 812.014(1) and 777.04, Fla. Stat. Said conduct violates Section 772.102(1)(a) 20, Fla. Stat.

18. On numerous occasions, Rembert committed theft of inmates' property and did steal Mr. Holston's property, to wit: Paragraphs V.JW. 2-5 are realleged, in violation of Section 812.014(1), Fla. Stat. Said acts violate Section 772.102(1)(a) 20, Fla. Stat.

19. Rembert did, on numerous occasions, agree and combine with Severson, Harriss, Siegler, McClure, Acosta, Sellers, Wells, Rodriguez, and W. Conly to steal Mr. Holston's property, to wit: Paragraphs V.ke. 2-3 are realleged, in violation of Sections 812.014(1) and 777.04, Fla. Stat. Said acts violate

20. On numerous occasions, Severson, Harris, Wells, Eschevarria, McClure, and Siegler did agree and combine to steal inmates' property and did steal Mr. Holston's property, to wit: Paragraphs V.Jz.2-3 are realleged, in violation of section 812.014(1) and 777.04, Fla. Stats. Said conduct violates section 772.102(1)(a)20, Fla. Stat.

21. On numerous occasions, Severson did, aid and abet, commit theft of inmates' property, to wit: Paragraphs V.Kb.2-4 are realleged, in violation of sections 812.014(1) and 777.011, Fla. Stat. Said acts violate section 772.102(1)(a),20, Fla. Stat.

22. On numerous occasions Maguire has committed assaults and batteries and did assault and batter Mr. Holston, to wit: Paragraphs V.E.4-6 and V.Cx.2-4 are realleged, in violation of section 784.03, Fla. Stat. Said conduct violates sections 772.102(1)(a)14 and 893.02(8)(a)25, Fla. Stat.

23. On numerous occasions, Maguire did agree and combine with Harriss, Barron, Romulus, ortiz, Christman, Cruzado, wells, and McClure to assault and batter prisoners and did assault and batter Mr. Holston, to wit: Paragraphs V.cd.3-5; V.ce.2-4; V.cf.2-4; V.Cw.2-4; and V.Da.2-3 are realleged, in violation of sections 784.03 and 777.04, Fla. Stat. Said conduct violates sections 772.102(1)(a)14 and 895.02(8)(a), Fla. Stat.

24. Maguire did engage in multiple acts of sexual battery or "sexual misconduct" with Mr. Holston, to wit: Paragraphs V.E.4-6 and V.Cx.2-4 are realleged, in violation of sections 794.011 and 944.35 to further the interest in a criminal gang known as the "unforgivens" in violation of sections 874.03, 895.02(b), 895.02(5), 772.102(3), and 772.102(1)(a).28, Fla. Stat. and section 895.02(8)(a)46, Fla. Stat.

25. Maguire, Barron, and Harriss did sexually batter, batter, and pepper spray Mr. Holston to further the interest or to promote gang related activities of the "unforgivens", a "hate group" and criminal gang as defined by sections 874.03 (4), (7), Fla. Stat. and said acts constitute gang related activity in violation of section 895.02(8)(a)46, Fla. Stat.

26. On numerous occasions Maguire did aid and abet inmate gang members in possessing weapons, to wit: Paragraph V.Ip.3-20 are realleged, in violation of sections 790.23(4), 772.102(1)(a)16, 895.02(8)(a)27, 875.02(8)(a) 46, and

27. On numerous occasions Maguire and McClure acted as "mules" and smuggled drugs and weapons to the "Unforgivens" hate group and criminal gang, to wit: Paragraphs V.Ip.3-20 are realleged, in violation of Chapters 710 and sections 874.03, 772.102(1)(a) and 895.02(8)(a) 46, Fla. Stat.

28. Maguire did agree and combine with Harriss, Romulus, Barron, and the hate group and criminal gang "Unforgivens" to stab Mr. Holston upon his entering centergate. Maguire did direct said gang members to stab Mr. Holston when he entered centergate, to wit: Paragraphs V.Ip.3-20 are realleged. Such conduct violated sections 874.10 and 895.02(8)(a) 46, Fla. Stat.

29. Harriss did touch Mr. Holston against his will, to wit: Paragraphs V.R.4-6 are realleged, in violation of section 784.03, 772.102(1)(a)14, and 895.02(8)(a) 25, Fla. Stat.

30. Harriss, Wells, Cruzado, McClure, Ortiz, Barron, Christman, Acosta, Maguire, Escheverria, and Rembert did, on numerous occasions, falsify incident, use of force, mins, E.A.C., and disciplinary reports, on reports in violation of 18 U.S.C. 1519. U.S. v. McQueen, 727 F.3d 1144 (11th cir. 2013); Section 772.102(1)(b), Fla. Stat.

31. Cruzado did intentionally pepper spray Mr. Holston against his will, to wit: Paragraphs V.M.4-6 and V.N.2-6 are realleged, in violation of Section 784.03, Fla. Stat. Said acts violate sections 772.102(1)(a)14 and 895.02(8)(a) 25, Fla. Stat.

32. Cruzado did beat and break the nose of Mr. Holston's witness Anthony Thorpe* L21647 on January 27, 2020 and Wells did aid and abet him in violation of sections 784.03, 944.35(3)(a)1, 777.011, 772.102(1)(a)14, and 895.02(8) (a)25, Fla. Stats.

33. Cruzado and Captain Rodriguez did falsify use of force, incident, disciplinary, E.A.C., and mins reports to obstruct justice & prevent detection of the excessive force on Anthony Thorpe on January 27, 2020 in violation of 18 U.S.C. 1519; 772.102(1)(b) and 895.02(1)(b), Fla. Stat.; U.S. v. McQueen, 727 F.3d 1144 (11th cir. 2013).

34. Severson did on January 23, 2020 steal Mr. Holston's property, to wit: Paragraphs V.Kb.3-4 are realleged. This was done in violation

35. Weiss did commit 37 incidents of theft of Mr. Holston's coffee where Weiss did not serve him coffee for 37 days from December 22, 2019 - January 30, 2020 with Felonious intent to permanently deprive him of said property in violation of sections 812.014(1) and 772.102(1)(a) 20, Fla. Stat.

36. Weiss, "Trinity", and Severson have stole inmates' chicken on numerous occasions while in confinement where they failed to serve legquarters on Tuesdays to confinement inmates; while Mr. Holston was confined from December 24, 2019 - January 27, 2020, Defendant did not serve legquarter or another chicken variety on Tuesdays with Felonious intent to permanently deprive Mr. Holston of his food in violation of Sections 812.014(1), And 772.102, Fla. Stat.

37. On numerous occasions, Harriss, Severson, Siegler, Wells, Canty, Barnum, Acosta, Sellers, and Maguire have stolen inmates' property while in confinement by "stripping" them to their boxers for 3 days and temporarily removing all their property including: toothbrush, toothpaste, mat, pillow, sheets and blankets, all clothing except boxers. This is called being placed on strip. Wells and Harris did place Mr. Holston on "strip" for 3 days whereby they "obtained or used" his property, to wit: all clothing, all property, toothbrush, toothpaste and mat or bunk for over 72 hours. Mr. Holston was left with only boxers. Defendant did deprive Mr. Holston of his property with Felonious intent temporarily and permanently. in violation of Sections 812.014(1) and 772.102(1)(c) 20, Fla. Stat. and 777.011, Fla. Stat.

38. Defendants Maguire, Wells, Cruzado, Harriss, and Severson did agree and combine to kill Mr. Holston's witness and brother Devaughn Leon Holston whereby they did kill him in violation of section 893, 782, 772.102(1)(c) 33 and 895.02(8)(a) 49, 777.04, 914.22, and 914.23, Fla. Stat. (2019) and 772.102(1)(b) 13 and 895.02(8)(a) 24, Fla. Stat.

39. Wells did direct Maguire to tight the cuffs and did direct Cruzado to pepper spray Mr. Holston against his will in violation of sections 777.011, 784.03, 944.35 (3)(a)1, 772.102(1)(a)14 and 895.02(8)(a)25, Fla. Stat.

Maguire, Acosta, Rembert, Sellers, and Christman have engaged in misuse of public office in violation of Chapter 838 and 772.102(1)(a) 42, Fla. Stat.

#1 Harriss, Wells, Siegler, Severson, Ortiz, Bhadja, Brown, McClure, Barron, Maguire, Christman, Acosta, Rembert, Sellers, centrion, and "Trinity" agreed and combined to steal his property, to murder him, to tamper with his witnesses, to steal his food, to conceal his injuries, to deny him medical attention in violation Federal and State law and to falsify his medical and use of force records. Sections: 772.102(1)(a)13, 772.102 (1)(a)20, 772.102(1)(b), 895.02(8)(a): 24-25, 27-28, 42, and 46, F(a. Stat.; 777.04, 777.011, Fla. Stat.; 18 U.S.C. 1519. U.S. v. McQueen, 727 F.3d 1144 (11th Cir. 2013)

#8. All criminal acts are related since the victims are the same: Prisoners.

39. Their intents were similar: To engage in diversified criminal activity

#8. The accomplices were the same: Prison officials.

#. Said conduct is the ongoing enterprise's regular way of doing business: care, custody, and control of prisoners. open ended continuity exists.

#6. Said Defendants have engaged in repeated criminal activity over a long period of 5 years. closed ended continuity is established.

#8. Burgese v. Starwood Hotels & Resorts Worldwide, Inc., 101 F.Supp.3d 414 (N.J. Dist. 2015) (applying Florida's RICO law); Townsend v. City of Miami, 2007 U.S. Dist. Lexis 103612 (S.D.Fla. 2007); Pelaera v. State, 158 so.3d 712 (Fla.4DCA 2015); Castillo v. State, 170 so.3d 1112 (Fla.4DCA 2015).

WHEREFORE, premises considered, Mr. Holton Demands compensatory and treble damages, costs, and a trial by jury.

**KL. Count 200.** Aiding and Abetting state civil RICO

1. This is an action for aiding and abetting substantive civil RICo pursuant to 28 U.S.C. 1367(a).

2. Paragraphs V.KK. 3-46; I-II,III.-8. 16-18, 23-24; IV.A.1-100; V.Ij. 3-8; V.Ik. 3-6 are realleged.

3. Defendants knew that lower level official were engaging in criminal activity.

4. Trinity, centurion, Ricky Dixon, Thomas Reid, and Boty did provide substantial assistance whereby Ricky Dixon, Thomas Reid, and

incident, use of force, mins, and E.A.C. reports, interalia.

5. Trinity created policies that deprived inmates of their food and enforced same.

6. Centurion and its employees falsified medical reports for treatment it provided and to conceal excessive uses of force to protect its contractual rights and longevity.

WHEREFORE, premises considered, Mr. Holston Demands compensatory and ~~damages~~ damages, costs, and a trial by jury.

<u>km count 30</u>: Conspiracy to commit civil RICO

1. This is an action for conspiracy to commit civil RICO under 772.103(4) and 772.104(1), Fla. Stat. pursuant to 28 U.S.C. 1367.

2. Paragraphs V. kj. 2-43 and V.kk. 2-6 are realleged.

3. All Defendants agreed indirectly or directly to participate in the affairs of the enterprise through a pattern of criminal activity.

4. Conty, Wells, Rembert, Cruzado, Severson, Harris, Weiss, Romulus, Siegler, McClure, Maguire, Sellers, Acosta, Bhadya, Ortiz, Barron, Brown, Trinity agreed to commit two incidents of criminal activity.

5. Centurion, Dixon, Reid, Baty and all other Defendants agreed to the overall objective of the conspiracy: diversified criminal misconduct, misuse of public office, and inmate oppression. <u>Stok v. Rego</u>, 145 3o. 3d. 133 (Fla. 3D42DH).

6. Dixon, Reid, Severson, Harris, Siegler, and Baty failed to review said excessive forces and take action under Fla. Admin. Code r. 33-602.210(10).

7. Dixon, Reid, Severson, and Baty deliberately failed to ensure that uses of force — excessive or not — were properly log on use of force log form DC2-802 as required by Fla. Admin. Code r. 33-602.210(10)(g)(h)

8. Dixon, Reid, Severson, and Baty have never ensured that a DC2-802 is placed in every employees personnel file

9. Despite all the gang related stabbings and killings, Baty has failed to investigate and refer known gang related activity for criminal prosecution as mandated by section 944.31, Fla. Stat.

10. Baty has consistently failed to enforce gang related possession of weapons and offenses statutes 790.23, 790.23(4), 874.03, 874.07, and 874.10, Fla. Stat.

use of force cases as required by Section 944.35(1)(b), Fla. Stat. and Fla. Admin. code r. 33-602.210(9)(a) and did fail to do so in this case.

WHEREFORE, premises considered, Mr. Holston demands compensatory and treble damages, costs, and a trial by jury.

**Kn. Count 302:** Substantive Federal RICo.

1. This is an action for Substantive Federal RICo under 18 u.s.c. 1964(c).

2. Paragraphs V.kk. 2-43 and V.kl. 2-6 are realleged.

3. On numerous occasions, Canty, Wells, Rembert, Acosta, Sellers, Bhodja, Brown, Harriss, Ortiz, Barron, Romulus, Maguire, and christman did falsify use of force, incident, E.A.C., MINS, Disciplinary, medical and MINS reports to conceal the excessive uses of force to obstruct justice in violation of 18 U.S.C. 1519. <u>U.S. v. McQueen</u>, 727 F. 3d 1144 (11th cir. 2013)

4. On numerous occasions, Dixon, Reid, Severson, Siegler, Baty, and Centurion agreed and combined with Defendants alleged in para.3 above or did aid and abet said Defendants to obstruct justice in violation of 18 U. S.C. 1519.

5. All Defendants agreed and combined on numerous occasions to obstruct justice, and in furtherance of said agreement and combination, Defendant falsified mr. Holston's use of records required to be generated by Fla. Admin. code r. 33-602.210(9)(a)'s reporting protocol.

WHEREFORE, premises considered, Mr. Holston demands compensatory and treble damages, costs, and a trial by jury.

**Ko. Count 303:** Federal RICo conspiracy

1. This is an action for Federal civil RICo conspiracy under 18 u.s.c. 1964(c).

2. Paragraphs I-III; IV.A-1-100; V.Kn. 2-5; V.km. 3-11 are realleged

WHEREFORE, premises considered, mr. Holston demands compensatory and treble damages.

**Kp. Count 304:** Aiding and Abetting Federal RICo

1. This is an action for aiding and abetting federal civil RICo under 18 u.s. c. 1964(c).

2. Paragraphs V.kl. 2-6; v.kn. 2-5; and v.ko. 2 are realleged

WHEREFORE, premises considered, mr. Holston demands compensatory and treble damages, costs, and a trial by jury

208

**Kq. Count 308**: First Amendment retaliatory deprivation

1. This is an action for First Amendment retaliatory deprivation under 42 U.S.C. 1983

2. Paragraphs I-II, III.B.4, 11-12, 22; IV.A.1-100; V.A.7-9; V.Jm. 2-9; V.Jo. 3-4; V.Jw. 2-5; and V.Jy. 3-4 are realleged.

3. Defendants did steal, take, and dispose of Mr. Holston's law books and legal work, inter alia, to prevent him from accessing the court or exercising his right to petition for redress.

4. Defendants through concerted action deprived Mr. Holston of his property with retaliatory animus and without due process.

5. Such actions were taken in direct response to Mr. Holston's having previously exercised his fundamental right of free speech and access to court by successfully filing and settling RICO litigation cases in federal court.

6. Such action had the effect of terrorizing and intimidating Mr. Holston by chilling his right to free speech and such conduct would ordinarily deter a person of ordinary firmness from exercising said rights.

7. Said action was done with malicious and evil intent with a reckless and callous disregard for Mr. Holston's federally protected rights.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive damages, costs, and a trial by jury.

**Kr. Count 309**: Equal protection: Maguire and Barron

1. This is an action for equal protection under the 14th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I-II, III.B.2-3; IV.A.1-100 are realleged.

3. Mr. Holston is a 39 year old Black male.

4. Maguire, a white male, did beat Mr. Holston with racial animus whereby he repeatedly called him a nigger as Maguire repeatedly struck Mr. Holston against his will.

5. While Maguire uttered his racial epithets and repeatedly struck Mr. Holston, Barron held him down and restrained Mr. Holston with handcuffs.

6. Said acts were done with evil intent and in reckless disregard of Mr. Holston's federally protected rights.

WHEREFORE, premises considered, Mr. Holston demands compensatory and punitive 209 damages, costs, and a trial by jury.

<u>KS. Count 30B</u>: Equal Protection "Class of one"

1. This is an action for "class of one" equal protection under the 14th Amendment pursuant to 42 U.S.C. 1983.

2. Paragraphs I-III. B.1-4, 10, 13-14, 19-20, and 22; IV. A.1-100; V. P. 3-15 are realleged

3. All inmates accused of battery on a correctional officer are transferred within 24 hours of the incident for obvious reasons of security, but mr. was not, despite being accused of two batteries—and one for battery the chief of security in particular: this is the "mandatory transfer" rule.

4. All similarly situated inmates accused of battery on a correctional officer are given a bunk to sleep on, but mr. Holston was made to sleep on the floor for 37 days.

5. All similarly situated inmates accused of said batteries are given full course meals, but mr. Holston was not.

6. All similarly situated inmates accused of said batteries were given their property, but mr. Holston was not.

7. All similarly situated inmates accused of said batteries were allowed to exercise law library privileges aforestated.

8. Defendants individually or collectively had the power to afford mr. Holston said privileges aforestated.

9. Said Defendants did deny mr. Holston equal protection of the law in relation to those similarly situated.

10. Defendants did have evil and malicious animus and did act in reckless disregard of mr. Holston's federally protected rights.

WHEREFORE, premises considered, mr. Holston Demands compensatory and punitive damages, costs, and a trial by jury.

<u>Kt. Count 30B</u>: First Amendment Retaliation: English

1. This is an action for First Amendment Retaliation pursuant to 42 U.S.C. 1983

2. Paragraphs I-II, III. B. 25; IV. A. 1-114 are realleged.

3. Mr. Holston did engage in protected activity by filing grievances and contacting the courts and Attorney General about sexual abuse and excessive force at the hands of mark Harris and others.

4. English did threaten mr. Holston that mr. English was going to refuse

a lawsuit against him.

5. Mr. English did falsify facts in a "DR" that was dismissed

6. Mr. English's acts were motivated by retaliatory animus as a direct result of Mr. Holston's having exercised his First Amendment rights to grieve, petition the courts, seek redress, and free speech.

7. Said acts had the effect of chilling Mr. Holston rights to grieve and petition for redress, inter alia.

8. Defendant did act with evil animus and in reckless disregard of Mr. Holston's federally protected rights.

WHEREFORE, premises considered, Mr. Holston demands compensatory ~~and~~ and ~~punitive~~ punitive damages, costs, and a trial by jury.

K.U. Count 30: Overall 1983 Conspiracy.

1. This is an action for overall conspiracy to violate Mr. Holston's 1st, 5th, 8th, 9th, 14th Amendments right and IV privileges and immunities under 42 U.S.C. 1983. Slavin v. Curry, 574 F.2d 1256 (5th cir. 1978); Mizzell v. No. Broward Hosp. Dist., 427 F.2d 468 (5th cir. 1970); Dinwiddie v. Brown, 230 F.2d 465 (5th cir. 1956); Strength v. Hubert, 854 F.2d 421 (11th cir. 1988).

2. Paragraphs I-III. B. 1-22,25; IV. A. 1-114; V. P. 3-15; V. KK. 2-43; V. Kl. 2-6; V. Ko. 2; V. Ij. 3-9; V. Ik. 3-6; V. Kr. 3-6; and V. Ks. 3-10; V. Kt. 3-8 are realleged.

3. All Defendant agreed and combined to deprive Mr. Holston of equal protection of the law, of IV. privileges and immunities, of free speech, of access to the courts; of adequate medical care in violation of the 8th Amendment; they inflicted cruel and usual excessive force, they statited due process and retaliated against him over the course of four months.

4. Instead of mandatorily transferring Mr. Holston, Siegler, Harriss, English, and Severson combined to place Mr. Holston on 'em, with him false disciplinary reports, to insure that Mr. Holston did not transfer and that Mr. Holston specifically transferred to Charlotte C.I. to be in the care, custody, and control of one Ryan English for monitoring and retaliation.

5. Said Defendant agreed and combined to assign Mr. Holston to Golf dorm: English's dorm.

211

a. DC2-802 logs were kept and maintained in each employee file as required by Fla. Admin. Code r. 33-602.210 (10)(g).

b. That Mr. Holston's abuse was timely and properly investigated as required by Section 944.35 (2), Fla. Stat. and Fla. Admin. Code r. 33-602. 210(10).

c. That Mr. Holston's injuries were properly noted and recorded as required by Fla. Admin. Code r. 33-602.210(9)

d. Baty failed to report said crimes against Mr. Holston as required by Sections: 944.31 and 944.35 (1)-(2), Fla. Stats

e. Severson refused to give Mr. Holston his property or a bunk to sleep on with retaliatory animus.

7. In furtherance of said agreement, Bhadja maliciously failed to provide Mr. Holston reasonably adequate and competent medical care (Ex. c) and (Ex. B); further, Bhadja, with malevolent animus, failed to:

a. Prepare a report of Mr. Holston's significant injuries as reflected in (Ex. B), (Ex. C), or (Ex. D) or all and submit it to the warden on or December 23, 2019 as required by Fla. Admin. Code r. 33-602. 210 (9)(c).

b. He failed to report Mr. Holston's significant injuries as required by Fla. Admin. Code r. 33-602.210 (9)(c) 1. b.

c. He failed to report to report Mr. Holston's significant injuries as required by Section 944.35(4)(a), Fla. Stat. (Ex. C)

d. He failed to order antibiotics for Mr. Holston deep infected wounds (Ex. B).

e. He failed to suture Mr. Holston's deep wounds (Ex. C) and (Ex. B).

f. He failed to order sufficient antibiotics when he did order antibiotics engendering a second infection (Ex. E).

8. Ortiz agreed and combined with defendants to provide inadequate medical care to inflict cruel and unusual punishment where he failed to:

a. failed to examine Mr. Holston for injuries and failed to note on the diagram of injury that further examination by a physician was necessary (Ex. B). Section 944.35 (1)(b); Fla. Admin. Code r. 33-602. 210(9)(c) 1. a.

212

Code r. 33-602.210(9)(c)1.b.; Section 944.35(4)(a), Fla. Stat.

c. He did submit false, incomplete, incorrect, and untruthful information in his diagram of injury and emergency room record to conceal the gravity of Mr. Holston's injuries in violation of section 944.35(4)(b), Fla. Stat. Compare (Ex. B) with (Ex. C) and (Ex. D).

d. He did deliberately fail to report Mr. Holston's infectious state or ensure Mr. Holston was seen by a physician to conceal Mr. Holston's abuse.

9. English did agree and combine with Severson, Siegler, and Harriss to retaliate against Mr. Holston; and in furtherance of said agreement, English did:

a. Threaten Mr. Holston to not answer his family's inquiries, since Mr. Holston was badly injured at the time.

b. Retained Mr. Holston's funds in violation of Section 812.014(1), Fla. Stat.

c. He falsified facts in a disciplinary report and secured permission to write a disciplinary report on Mr. Holston for extortion (Ex. H).

10. Rembert, Echeverria, Sellers, Acosta, and Canty did agree and combine with each other and Harriss, Siegler, and Severson to steal Mr. Holston's property in retaliation and in violation of due process. (Exs. F, G, and I)

11. Romulus did agree and combine with Maguire, Borron, and Harriss to refrain from reporting Mr. Holston's abuse; and she did erase pictures taken of Mr. Holston's wounds.

12. Brown did agree and combine to fail to treat and report Mr. Holston's injuries with Wells and Harriss in violation of the 8th Amendment. (Ex. C)

13. Maguire did beat, burn, and sodomize Mr. Holston multiple times in violation of the 1st, 5th, 8th, and 14th Amendments and with racial animus. (Ex. A)

14. Cruzada, Borron, Wells, and Harriss did pepper spray and injure Mr. Holston in furtherance of said combination in violation the 8th Amendment.

15. Maguire did discriminate against Mr. Holston as a "class of one" in furtherance of said agreement and in violation the equal protection clause of the 14th Amendment.

and Ortiz all falsified incident, use of force, Disciplinary, mins, and E.A.C. reports to conceal their combination and to obstruct justice in violation of 18 U.S.C. 1519 and their agreement to violate 18 U.S.C. 1519 or their aiding and abetting violations of 18 U.S.C. 1519 and spoliated video evidence.

17. Severson, Harriss, and Siegler did place Mr. Holston on cm in violation of due process and with retaliatory animus under the First and 14th Amendments in furtherance of their combination and destroyed video evidence.

18. Severson, Baty, Reid, and Dixon did ratify and approve all said falsified incident, use of force, mins, and E.A.C reports in furtherance of their agreement to violate Mr. Holston's civil rights.

19. Centurion approved Ortiz's falsified medical reports and failed to report Bhadja's negligence, Mr. Holston's abuse, and his injuries (Ex.B) (Ex. C).

20. Harriss, Maguire, and Barron did combine with the "criminal gang" and "hate group" "unforgivers" to stab, kill, and murder mr Holston in violation of his federal civil rights.

21. All said acts were done with malevolent and evil animus and in reckless and callous disregard for Mr. Holston's federally protected rights.

WHEREFORE, premises considered, mr. Holston Demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

**IV. count 349: Declaratory Relief**

1. This is a suit for declaratory relief in Chancery under Section 86.011, Fla. Stat.

2. Paragraphs I-IV, V. Kt. 3-21 are realleged.

3. There is a bona fide dispute between the parties.

4. Mr. Holston has a justiciable question as to the existence or nonexistence of some right states; immunity, power or privilege as to some fact upon which existence of such a claim may depend.

5. Mr. Holston is in doubt as to his claims

6. There remains a bona fide, actual, present need for the declarations herein sought. Mr. Holston seeks the following declarations:

7. That Maguire, Cruzado, Wells, Harriss, and Ortiz violated Mr. Holston's constitutional rights under art IV privileges and immunities clause, excessive

to court and free speech, equal protection, and due process under the 14th Amendment.

8. That Harriss and Wells' placing Mr. Holston on strip for 72 hours violated section 812.014(1), Fla. Stat., State law, see, sup., Fla. Admin. Code r. 33-601.800(10)(a) and the 8th Amendment where he was not given a "modesty garment".

9. That Maguire, Cruzado, Wells, Harris, Barron, and Ortiz' filing false: incident, diagram of injury, Emergency Room Records, use of force, minor E.A.C. and disciplinary reports and records violate Federal law under 18 U.S.C. 1519. U.S. V. McQueen, 727 F.3d 1144 (11th cir. 2013) and Section 944.35 (4)(b), Fla. Stat.

10. That Echeverria and Rembert both miserably failed to comply with Fla. Admin. Code r. 33-602.201(7)(a)-(g).

11. That Harriss committed theft of Mr. Holston's $7,000 dollars in violation of Section 812.014(1), Fla. Stat.

12. That Severson, McClure, Sellers, Weiss, Canty, Acosta, and Trinity committed theft of Mr. Holston's Coffee (Star Buck's portion) and leg quarter in violation of Section 812.014(1), Fla. Stat.

13. That Maguire committed sexual battery on Mr. Holston twice (in front of medical and in empty cell B1102) while he was helpless (cuff behind his back and drenched in pepper on both occasions) and that Barron, Harris, McClure, Ortiz, Romulus, Cruzado, and Christman aided and abetted Maguire in violation of the 14th Amendment, 794.011, and 777.011, Fla. Stats.

14. That Bhadja maliciously failed to suture Mr. Holston's wound and provide antibiotics on December 24, 2019 despite the presence of infection in violation of the 8th Amendment. (Ex. C)(Ex. D)

15. That Bhadja failed to comply with state reporting requirements under Fla. Admin. Code r. 33-602.210(9)(c) to the extent Ortiz noted physical injury to Mr. Holston's eye - Section 944.35(1)(b).(Ex. B)

16. That Bhadja denied Mr. Holston sufficient antibiotics engendering a second infection in violation of the 8th Amendment. (Ex. E)

17. That Harriss and Wells' ordering the extraction team to remove Mr. Holston from the decontamination shower B-3 while he was handcuffed behind his back was use of force supererogation and excessive force, per se, in violation of the 8th

215

18. That Eschevarria, Christman, cruzado, wells, Harriss, Mcclure, Acosta, Rembert, maguire, sellers and canty are all certified correctional officers under section 943.10 (2), Fla. Stat.

19. That Baty is a certified law enforcement officer under chapter 943.

20. That Baty has been failing to enforce sections 790.23(4), 874.03, 874.04, 874.10, and 790.23 allowing stabbings, cuttings, and gang related activity to move and overtake the prison.

21. That Sevison, Baty, Reid, and Dixon are accessories after the fact to batteries, thefts, and filing false reports under Sections: 777.03 and 944.35(4)(b), Fla. Stat.

22. That all Defendants committed crimes proscribed by Fla. Admin. Code r. 11B-27.

23. That all Defendants: certified law enforcement and correctional officers, and medical professional lack good moral character as required by chapter 943.

24. That the "unforgivers" is a "criminal gang" as defined by section 874.03(1), Fla. Stat. and that Mr. Holston was injured by said criminal gang.

25. That said "criminal gang" is an enterprise within meaning of section 895.02(5), Fla. Stat. and that Mr. Holston suffered harm in violation of chapt. 874.

26. That maguire, Harriss, and Barron did associate themselves with said "criminal gang" "unforgivers" and they did threaten, harass, and injure mr. Holston et seen.

27. That Trinity and centurion breached their contracts, to wit: Paras. V. Ij. 2-9 and V. Ik. 2-6 are re-alleged.

28. That mr. Holston has standing to assert said breach of contract as alleged in para 25 above.

29. That all Defendants have: engage in, conspired to engage in, aided and abetted, or was an accessory after the fact to a pattern of racketeering or criminal activity in violation of section 895.02(8) and 772.102(1), Fla. Stat.

30. That Defendants had a clear legal duty to provide mr. Holston an environment free from victimization under section 20.315(1)(c) and violated same.

31. That Oritz's diagram of injury (Ex. B) and his Emergency Room Record (Ex. B-1) are incomplete, inaccurate, or untruthful as contradicted by (Ex. C) and (Ex. D) in violation of Section 944.35(4)(b), Fla. Stat.

WHEREFORE, premises considered, mr. Holston demands the aforestated

216

KW. Count 3II: Class Discrimination

1. This is an action for Conspiracy to deny equal protection to a class of persons under 42 U.S.C. 1985

2. Paragraphs V.I, 2-9; V.IK. 2-6; V.Is. 2-5; V.Ix. 2-6; V.Jc. 2-3; V.Jz. 2-3 are realleged.

3. Prisoners in administrative, disciplinary, close management, maximum management, and Death Row are in confinement units or Special housing units ("Shus") and are a special or Sub class of inmates within the state prison population.

4. At all times germane hereto, mr. Holston has remained in a "Shu".

5. South Bay correctional facility "Shu" and death row—and all other prisoners confined at Florida state prison receive coffee and legquarters.

6. All Shus except disciplinary confinement and CM one and CM two, use their Jpay tablet and all property.

7. All other "Shus" receive no legquarter or coffee.

8. mr. Holston is entitled to receive the food listed on the state created menus: legquarter and coffee, Since he is required to pay costs of incarceration, and he has never presented a security threat the required food substitution

9. Inmates love coffee, honeybuns, legquarters and soups; and the real justification for their denial is discrimination and vindictiveness based on nonexistent, exaggerated security threats.

10. most prisoners get to use the Jpay tablets and chicken and coffee, inter alia, who are similarly situated.

11. mr. Holston is being denied the same privileges those similarly situated receive

12. Defendants have reached an understanding and agreement to deny mr. Holston equal protection of the law and art. IV privileges and immunities

13. Defendants did act with evil motive or intent or with reckless or callous disregard of mr. Holstons federally protected rights.

WHEREFORE, premises considered, mr. Holston demands compensatory and punitive damages, jointly and severally, costs, and a trial by jury.

KX. Count 312: Equitable Relief.

217

and 895.05(6), Fla. Stats.

2. Counts 1-311 are realleged.

3. Defendants have, on numerous occasions, engaged the affairs of the enterprise through a pattern of racketeering under sections: 895.02(8)(a)24-25, 27-28, 42, and 46, Fla. Stat. or have aided and abetted, conspired to or did solicit others to violate said provisions

4. Mr. Holston was coerced, intimidated, threatened, assaulted, burned, raped, beaten, stabbed, pepper sprayed, victimized by repeated thefts, and deprived of his 8th Amendment rights in violation of chapter 874 or "gang related activity" through Maguire's, Baron's, and Harriss' aiding and abetting, soliciting or acting in concert or conspiring with said "criminal gang" "unforgiven".

5. Enjoin Defendants from securing state employment working with prisoners.

6. Enjoin Centurion from providing Mr. Holston medical care.

7. Enjoin Defendant from coming within 2,000 feet of Mr. Holston

8. Revoke all Defendants correctional, law enforcement, and pepper spray certifications and firearm permits and all other licenses and permits and certifications issued by FDLE and DOC and DCF.

9. Revoke Dr. H.N. Bhadja's license to practice medicine, F.S. 456.072,079.

10. Revoke E. Ortiz and D. Brown's licenses to practice nursing. F.A.C. 64B9-4.001

11. Require that Mr. Holston be treated by local hospital

12. Require Dixon, Reid, Baty, and severson to place DC2-802 log in each employee file as required by Fla. Admin. Code r. 33-602.210 (10)(g)-(h)

13. Require the Defendants canty, severson, sellers, Acosta, siegler, Baty, Harriss, Rembert, wells, maguire, cruzado, christman, Bhadja, ortiz, Brown, Romulus, mcclure, and Escheverria to be removed from okeechobee C.I.'s workforce permanently.

14. Require that Mr. Holston only be house at a work camp, incentivized prison, or work release center to protect him from gang violence on a permanent basis.

15. Require Trinity to serve Mr. Holston leg quarters on Tuesdays and coffee in the mornings consist with the state created menu while he is in a "shu".

218

WHEREFORE, premises considered, demands the equitable relief aforestated to protect Mr. Holston from further victimization. Hall v. Key, 476 So. 2d 787 (Fla. 1 DCA 1985)

## VI. CONCLUSION

WHEREFORE, premises considered, Mr. Holston prays for such other and further relief to which he may show himself entitled.

UNDER PENALTY OF PERJURY, I swear or affirm that I have read this complaint and the facts alleged are true and correct.

Executed this 20th day of May, 2020 at Punta Gorda, Florida

Reginal L. Holston # 27714
Charlotte Corr. Inst.
33123 Oil well road
Punta Gorda, Fl 33955

① The State of Florida affects interstate commerce in multiple ways. First, through it's secretary of state's division of corporations that issues charters to corporations to do business in Florida. These corporations engage in interstate commerce by selling and transporting goods in and out of state such as sugar, oranges, vegetables, spring water, etc. Second, it affects interstate commerce through the Department of Highway safety and motor vehicles by licensing trucks to move goods and cargo in and out of state. Third, through tourism and development. And fourth, through FDLE's issuance of licenses and permits to firearms dealers to sell firearms. The interstate commerce element is clearly satisfied under

219

FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
DIAGRAM OF INJURY



**COPY**

Ex. B

Date of occurrence 12/21/19          Time of occurrence 1230
Date injury assessed by medical 12/21/19     Time injury assessed by medical 1305

☐ No injury identified

Description of injury  Minor laceration in left eye, unable to fully asses because this patient kept fighting the officers

Staff Signature _____     E. Ortiz, L.P.N.
                                        Okeechobee C.I.
Inmate Name  Holston Meynal
DC# 122714          Race/Sex  B/M
Date of Birth  11/12/198
Institution  OCI

RECEIVED
MAR 11 2020
HEALTH SERVICES

RECEIVED

This form is not to be amended, revised, or altered without
approval by the Office of Health Services- Administration

DC4-708 (Revised 10/07)

**FLORIDA DEPARTMENT OF CORRECTIONS**
# EMERGENCY ROOM RECORD

**Check all that apply:**    ☒ Inmate    ☐ Employee    ☐ Visitor
☒ Post-Use-of-Force Exam    ☐ Injury    ☐ Physical Altercation

**COPY**

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA must review this form and sign it on the next working day.

Time of occurrence: 0940    Time of exam: 0950

Description of occurrence: Chemical agent used to gain compliance

Post Use of Chemical Agent Instructions: Shower without soap?  ☐ N/A   ☒ Yes   ☐ Refused→ ☐ educated on importance of showering
☒ Report any difficulty breathing   ☒ Remain in upright position ☒ Do Not apply lotion to the skin ☒ Splash cool water to eyes 5-10 minutes

Vital Signs:   Temperature_____ Pulse_____ Respiration_____ O2 Sat_____ % Blood Pressure_____ /_____

Arrived via: ☒ Ambulatory   ☐ Stretcher   ☐ Wheelchair   ☐ Other:_____

Condition on arrival (check all that apply): ☒ Alert   ☒ Oriented x 4 (person, place, time, situation)   ☒ Responding to questions verbally
☐ Other (requires description in examinations summary)
☐ C/O pain?  If checked, where?_____

Examination summary: Unable to fully assess patient, he kept resisting and fighting the officers

Physician notified?   ☒ No   ☐ Yes    Name: N/A    Time:_____

Treatment provided?   ☒ No   ☐ Yes    If yes, describe: N/A

Response to Treatment: N/A

Disposition:   ☐ Population   ☒ Confinement   ☐ Infirmary   ☐ Hospital   ☐ Rescue   ☐ Other (explain):_____

Discharge Instructions and Education: Return to medical as needed

F Ortiz, L.P.N.

Health Care Provider's Signature and Stamp: ____ N/A   Okeechobee C.I.   Date/Time: 12/21/19

Reviewing Physician's Signature and Stamp: ____ 12/26/19   H. Bhadja, M.D., Okeechobee CI   Date/Time:_____

Name Holston, Reginald     Inmate Distribution:    White—Health Record
DC# L87714   Race/Sex B/M                          Canary—Inspector General
Date of Birth 11/13/1980                            Pink—Local Requirements
Institution OCI              Employee Distribution:   White—Safety Officer/Designee
                                                     Canary—Employee Copy
                                                     Pink—DESTROY

DC4-701C (Effective 12/12)

Incorporated by Reference in Rule 33-602.210, F.A.C.

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**ABRASION/LACERATION PROTOCOL**
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: 12/21/19   Time: 0146   Age: 39   ☐ Sick Call   ☐ EMID

Allergies: NKDA

Current Medication/s: Losartan 50mg, Metoprolol, EC ASA, Claritin 10mg

Chief Complaint: laceration to bilateral wrists

Mechanism of Injury (MOI): "handcuffs were placed too tight"

Date and Time of Injury: 12/21/19 1 min out   Pain level: ☐0 ☐1 ☐2 ☐3 ☐4 ☐5 ☐6 ☒7 ☐8 ☐9 ☐10

Last Tetanus Toxoid: Rx written on 12-9-19 to administer at unit camp

Additional comments: per Inm it was given.

**OBJECTIVE:** Temp 97.8   Pulse: 90   Resp: 18   Blood Pressure: 152/101   O2 sat: 98 %   Weight: 168.4

Observe for clinical signs and symptoms of shock:
NA ☐ Skin pale, mottled, cold, and diaphoretic   NA ☒ Restlessness, confusion, and anxiety
☐ Tachycardia (rapid, weak pulse)   ☒ Tachypnea (rapid, shallow breathing)
☐ Hypotension -- systolic less than 80 (Note: falling BP is a *late* sign of shock!)

Location of injury (Body Diagram, Page 2):
Description of injury: left wrist - 2cm   right wrist - superficial
Approximate size and depth of abrasion or laceration:
Length: left wrist 2cm   Width: 2cm   Depth: 2cm
Embedded foreign material in wound? ☒ No ☐ Yes –
Describe:
Bleeding at this time: ☐ None noted ☒ Oozing / Minimal ☒ Moderate ☐ Severe ☐ Pulsing spurt

For active bleeding: **Note**: Most external bleeding can be controlled with **direct pressure and elevation** (above the level of the heart)

1. Apply <u>continuous</u> firm direct pressure (i.e., <u>nurse</u> to hold and maintain direct pressure) to bleeding site for 10 minutes.
2. After 10 minutes, if bleeding has stopped, tape or wrap pressure dressing in place.
3. If site still actively bleeding, reinforce pressure dressing and <u>hold</u> firmly in place for another continuous 10 minutes.
4. If bleeding has stopped after 10 minutes of pressure, tape or wrap pressure dressing in place.
5. If site still bleeding, continue to apply direct pressure and notify clinician.
   **Note**: If dressing becomes saturated, <u>reinforce</u> the dressing -- don't remove the original dressing.

Neurovascular checks:
☐ Distal pulse of affected extremity: ☐ Absent ☐ Barely palpable ☒ Easily palpable ☐ Bounding
☐ Capillary refill 2 seconds or less: ☐ No ☒ Yes
☐ Numbness or tingling in affected extremity: ☒ No ☐ Yes
☐ ROM of affected extremity: ☐ Full ROM ☐ Decreased ROM ☒ Unable to determine

Comment:
Laceration greater than 24 hours old with signs & symptoms of infection: ☒ No ☒ Yes occurred on 12/21/19
☒ Increasing redness, swelling, and/or pain at site
☐ Discharge: ☐ None ☐ Serosanguinous ☐ White/Cloudy ☐ Yellow ☐ Green ☐ Brown ☐ Foul-Smelling

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Signs of shock present (see above)   ☐ Abnormal neurovascular checks
☐ Arterial bleed (bright red, usually spurts from wound)   ☐ Patient is on Coumadin
☐ Bleeding not controlled with firm, direct pressure (see above)   ☐ Temperature greater than 100.4° signs of infection
☒ Laceration needs possible suturing

```
A FL27714 TM      02/12/08
HOLTON REGINAL L.     COPY
INM
DC4 BY MDOC 11/23/1980(39)
DAT
INS      OKE CI
```

J. Louis, R.N.

*J. Louis, RN*   Okeechobee C.I.
**SIGNATURE AND STAMP/ PRINT of person completing form**

_____
**RN or CLINICIAN REVIEWER**

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**ABRASION/LACERATION PROTOCOL**

NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

| PLAN | |
|---|---|
| ☐ EMS activated for signs of shock | ☒ Wound cleaned with: *NS & bacitracin* |
| ☐ EMS activated for uncontrollable bleeding with: | ☒ Wound dressed |
| | *covered with ointment gauze* |
| ☐ Control bleeding - - as above | ☐ Tdap 0.5cc IM or Td 0.5cc IM as prescribed by clinician |
| ☒ Acetaminophen 325mg 2 tablets by mouth prn for pain | ☐ Pass |
| ☐ Wound culture done:  ☐ N/A  ☐ Yes  ☐ No : | *Right wrist cleaned w/ NS bacitracin oint* |
| Bacitracin ointment as directed to abrasion. | |
| ☒ Other: *Dr. Bhadjee at 1015 → Daily wound care orders w/rto* | *applied OTA* |

\* If inmate has no record or history of receiving the Tdap vaccine (vaccine released in 2005), then Tdap should be given.  If inmate has a history of receiving the Tdap vaccine, then give the Td vaccine.  At this time, Tdap is licensed for only one lifetime dose per person.

**CAUTION** regarding SHOS patients who have lacerations/wounds requiring dressings.  Keep wrap dressings (gauze roll, Kling, Kerlix, Coban, etc.) to the minimum length to hold skin dressing in place.  This also includes tape length.  The exception to this is an ACE compression/elastic wrap ordered by a clinician to decrease swelling and provide support to a joint.

| EDUCATION | |
|---|---|
| ☒ Inmate instructed to return to Medical for dressing change or for wound recheck on: | *Daily wound care orders for left wrist.* |
| ☐ Inmate instructed to return to Medical for suture /staple removal on: | |
| ☒ Inmate instructed on wound care. | |
| ☒ Inmate instructed to watch for signs of infection: increase in redness, swelling, pain, and/or purulent discharge at would site. | |
| ☒ Acetaminophen 325 mg 2 tablets by mouth every 4-6 hours as needed for pain. | |
| ☒ Inmate instructed to return to Medical if symptoms get worse or any new symptoms develop. | |



bilateral wrist wounds left wrist has wound care orders.

Right wrist superficial

A-L27714 TM   02/12/08
HOLSTON, REGINAL L.
B/M DOB 03/31/1980 (39)

J. Louis, R.N.
Okeechobee C.I.
SIGNATURE AND STAMP/ PRINT of person completing form

RN or CLINICIAN REVIEWER

DC4-683V (Revised 10/10/19)                                          Page 2 of 2
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**ABRASION/LACERATION PROTOCOL**
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

| SUBJECTIVE: Date: 11/12/00   Time: 10:30   Age:   ☐ Sick Call   ☒ EMID | COPY |
|---|---|

Allergies: Ace inhibitors   DOB: 11/13/80
Current Medication/s: Aspirin, metoprolol, HSH, coumadin
Chief Complaint: "my wrists smell bad" - old dressing in place on ® wrist
Mechanism of Injury (MOI): complained of pain to ® wrist inmate ortz cut me loose and made it worse
Date and Time of Injury: 11/12/00   Pain level: ☐0 ☐1 ☐2 ☐3 ☐4 ☒5 ☐6 ☐7 ☐8 ☐9 ☐10
Last Tetanus Toxoid: none noted in chart. Pt states received at last comp
Additional comments: Pt pulled from call for wound assessment and care. ® dressings wound. was not providing being done as ordered.

| OBJECTIVE: Temp: 99.9   Pulse: 90   Resp: 18   Blood Pressure: 140/87   O2 sat: 99 % Weight: 168.9 |
|---|

Observe for clinical signs and symptoms of shock:
N/A Observe
☐ Skin pale, mottled, cold, and diaphoretic      ☐ Restlessness, confusion, and anxiety
☐ Tachycardia (rapid, weak pulse)                ☐ Tachypnea (rapid, shallow breathing)
☐ Hypotension -- systolic less than 80 (Note: falling BP is a *late* sign of shock!)

Location of injury (Body Diagram, Page 2): ®+© wrist open, draining wounds (purulent)
Description of injury: approx. measuring (left below © hot to them)   circumfce
Approximate size and depth of abrasion or laceration: around 6cm
Length:   Width: ½-1½cm in width   Depth: ® lem @ ⑥
Embedded foreign material in wound? ☒ No ☐ Yes –   Exed width 2 cm @ ⑥
Describe:   redness with purulent/serosanguous drainage
Bleeding at this time: ☐ None noted   ☒ Oozing / Minimal ☐ Moderate ☐ Severe ☐ Pulsing spurt   foul odor present
For active bleeding: **Note:** Most external bleeding can be controlled with **direct pressure and elevation** (above the level of the heart)

1. Apply <u>continuous</u> firm direct pressure (i.e., <u>nurse</u> to hold and maintain direct pressure) to bleeding site for 10 minutes.
2. After 10 minutes, if bleeding has stopped, tape or wrap pressure dressing in place.
3. If site still actively bleeding, reinforce pressure dressing and <u>hold</u> firmly in place for another continuous 10 minutes.
4. If bleeding has stopped after 10 minutes of pressure, tape or wrap pressure dressing in place.
5. If site still bleeding, continue to apply direct pressure and notify clinician.
   **Note:** If dressing becomes saturated, <u>reinforce</u> the dressing - - don't remove the original dressing.

Neurovascular checks:
N/A ☒ Distal pulse of affected extremity: ☐ Absent ☐ Barely palpable ☐ Easily palpable ☐ Bounding
☒ Capillary refill 2 seconds or less: ☐ No ☒ Yes
N/A ☒ Numbness or tingling in affected extremity: ☒ No ☐ Yes
☒ ROM of affected extremity: ☒ Full ROM ☐ Decreased ROM ☐ Unable to determine   ® issues observed
Comment:   in cm's restrain'
Laceration greater than 24 hours old with signs & symptoms of infection: ☐ No ☒ Yes   but able to move
☒ Increasing redness, swelling, and/or pain at site   without difficulty
☒ Discharge: ☐ None ☒ Serosanguinous ☐ White/Cloudy ☒ Yellow ☐ Green ☐ Brown ☒ Foul-Smelling   or complaint

| FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION |
|---|
| ☐ Signs of shock present (see above)                          ☐ Abnormal neurovascular checks |
| ☐ Arterial bleed (bright red, usually spurts from wound)      ☐ Patient is on Coumadin |
| ☐ Bleeding not controlled with firm, direct pressure (see above)   ☒ Temperature greater than 100.4° signs of infection |
| ☐ Laceration needs possible suturing                          ☒ Pt MD scheeduled 11/2/00 |

A-L27714 TM   02/12/08
INMATE NAME   HOLSTON, REGINAL L.
DC#:   B/M DOB 11/13/1980(39)
DATE OF BIRTH
INSTITUTION

SIGNATURE AND STAMP/ PRINT of person completing form
WALSRINCE E
RN
Okeechobee CI

RN or CLINICIAN REVIEWER

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**ABRASION/LACERATION PROTOCOL**
NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

COPY

## PLAN

- ☒ EMS activated for signs of shock
- ☒ EMS activated for uncontrollable bleeding with:
- ☐ Control bleeding - - as above
- ☐ Acetaminophen 325mg 2 tablets by mouth prn for pain
- ☐ Wound culture done:  ☐ N/A  ☐ Yes  ☐ No
- Bacitracin ointment as directed to abrasion. *thin layer applied*
- ☒ Other: *wound culture and glu to be done 11/2/20. Provider contacted via phone at 1113AM-orders for woundcare and antibiotic recieved. TDAP order needed. Pt*

- ☒ Wound cleaned with: *NaCl/sodium chloride saline*
- ☒ Wound dressed *Sterile gauze/co-band*
- ☒ Tdap 0.5cc IM or Td 0.5cc IM as prescribed by clinician
- ☒ Pass  *Levaquin + PO daily x10d.*

*states given tda in chart*

* If inmate has no record or history of receiving the Tdap vaccine (vaccine released in 2005), then Tdap should be given!  If inmate has a history of receiving the Tdap vaccine, then give the Td vaccine.  At this time, Tdap is licensed for only one lifetime dose per person.

**CAUTION** regarding SHOS patients who have lacerations/wounds requiring dressings.  Keep wrap dressings (gauze roll, Kling, Kerilx, Coban, etc.) to the minimum length to hold skin dressing in place.  This also includes tape length.  The exception to this is an ACE compression/elastic wrap ordered by a clinician to decrease swelling and provide support to a joint.

## EDUCATION

- ☒ Inmate instructed to return to Medical for dressing change or for wound recheck on: *11/a/a0a0*
- ☒ Inmate instructed to return to Medical for suture /staple removal on: *11/a/a0a0 (abdomen)*
- ☒ Inmate instructed on wound care: *verbalized understanding.*
- ☒ Inmate instructed to watch for signs of infection: increase in redness, swelling, pain, and/or purulent discharge at would site.
- ☒ Acetaminophen 325 mg 2 tablets by mouth every 4-6 hours as needed for pain.
- ☒ Inmate instructed to return to Medical if symptoms get worse or any new symptoms develop.

*Hand + wrist protocol explained for utilizing medical PRN through sick call and emergency. Pt. verbalized understanding.*



*Rt. and Lt. wrist wounds are superficial except 2 open wound. @1cm depth 2cm @0.5cm depth.*

*redness + purulent drainage to both wrists. no swelling.*

*puncture-like wound.*

*open depth 1cm width 0.5-1cm for open wound width 2cm*

*Rt. @ open depth 1cm width 0.5-1cm for open wound width 2cm*

A-L2/714 TM     02/12/08

INMATE HOLSTON, REGINAL L.
DC#:
B/M DOB 11/13/1980(39)
DATE O
INSTITU

SIGNATURE AND STAMP/ PRINT of person completing form
*M. _____ LPN/CRRN*
RN
Okeechobee CI

RN or CLINICIAN REVIEWER

**COPY**

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: Cha CI | Date: 3/18/2020 | Time: 1435 | ☐ Inpatient ☐ Outpatient | Inmate Name: Hulstin, Reginal |
|---|---|---|---|---|

DC# L27714

Dorm:

Diagnosis:

**List Allergies Here**

Ace Inhibitors

STAT / Initial Each Order as Transcribed

Predisitive Suction BDW/Schen
(ES. Pleur-Evac Grace (16275) Medical
x 30,000)

G. NOE, MD CHO

| Date/Time Noted: 3/18/20 1440 | Nurse Signature/Stamp: CWR Vanriel, A. LPN CHA CI | Clinician Signature/Stamp: | Date/Time: 3/18/2020 1435 |
|---|---|---|---|

DC4-714B (Revised 11/7/17)   Distribution: White Original—Pharmacy   Canary—Medical Record
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: Charlotte CI | Date: 3-16-2020 | Time: 1309 | ☐ Inpatient ☑ Outpatient | Inmate Name: Hulstin, Reginal |
|---|---|---|---|---|

DC# L27714

Dorm:

Diagnosis:

**List Allergies Here**

Ace Inhibitors

STAT / Initial Each Order as Transcribed

DIC Wound Care to (R) Wrist

G. NOE, MD CHO
CHA CI

| Date/Time Noted: 3/16/20 1309 | Nurse Signature/Stamp: A. Campbell, SRN Charlotte C.I. | Clinician Signature/Stamp: | Date/Time: 3/16/2020 1309 |
|---|---|---|---|

DC4-714B (Revised 11/7/17)   Distribution: White Original—Pharmacy   Canary—Medical Record
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

Exh. E

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: Charlotte CI | Date: 2-3-2020 | Time: 1500 | ☐ Inpatient ☒ Outpatient | Inmate Name: Hulstin, Reginal |
|---|---|---|---|---|

DC# L27714

Dorm:

Diagnosis:

**List Allergies Here**

Ace Inhibitors

STAT / Initial Each Order as Transcribed

Wound Care Once Daily to (R) Wrist: (Until Healed) Cleanse daily c Anti-
microbial Scap and the Scrub lightly WCD c Surgical scrub brush. Irrigate
inside of wound surface c Phase One Wound Irrigant- let set for 3 min.
Apply Barrier Spray to wound edges. Apply Puracyn Plus Gel into wound. Cover wound c Kendel Ag.

COPY

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: OKEch | Date: 1/31/20 | Time: 1200 | ☐ Inpatient ☐ Outpatient | Inmate Name _Holston. Reginal_ |
|---|---|---|---|---|

DC# _L27714_
Dorm _____
Diagnosis: _____

List Allergies Here

Ace Inhibitors

STAT / Initial Each Order as Transcribed

T.O Dr. Noe

Cont v.cens to L & R wrist 3x/wk. till healed

G. NOE MD CHO
CHA CI

| Date/Time Noted: 1/31/20 | Nurse Signature/Stamp C munro LPN CHACI | Clinician Signature/Stamp | Date/Time: 1/31/20 |
|---|---|---|---|

Distribution: White Original—Pharmacy    Canary—Medical Record
DC4-714B (Revised 11/7/17)    This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: OKE CI | Date: 1/31/2020 | Time: 205 | ☐ Inpatient ☐ Outpatient | Inmate Name _Holston. Reginal_ |
|---|---|---|---|---|

DC# _L27714_
Dorm _____
Diagnosis: _____

List Allergies Here

Ace inhibiters

STAT / Initial Each Order as Transcribed

Bactrim DS 1 tab PO BID X 7 days

G. NOE, MD CHO
CHA CI

| Date/Time Noted | Nurse Signature/Stamp  C. Munro LPN CHACI | Clinician Signature/Stamp | Date/Time: 1/31/2020 |
|---|---|---|---|

Distribution: White Original—Pharmacy    Canary—Medical Record
DC4-714B (Revised 11/7/17)    This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: OKE CI | Date: 1/30/20 | Time: 2000 | ☐ Inpatient ☐ Outpatient | Inmate Name _Holston Reginal_ |
|---|---|---|---|---|

DC# _L27714_
Dorm _____
Diagnosis: _____

List Allergies Here

Ace Inhibitors

STAT / Initial Each Order as Transcribed

Sched Pneumovax c nrss nxl wk

G. NOE, MD CHO
CHA CI

Date/Time:

# DEPARTMENT OF CORRECTIONS

### Inmate Impounded Personal Property List
### (Please Print)
### B-DORM

Inmate's Name: ReGinauld, Hauster          Inmate Number: L27714

Institution: Okeechobee Correctional Institution (404)   Date Property Stored: 12 / 22 / 20 19

| Item | Number | Code | Item | Number | Code |
|------|--------|------|------|--------|------|
| Tablet | 1 | K | Coak | 1 | S |
| Legal mail | misc | K | Boots | | |
| Personal mail | misc | K | | | |

**I.** Signature of Officer(s) inventorying property:

12 / 22 /20 19   _____ D. Foxolskis   SGT
Date                    Officer's Name-PRINT       Rank

_____
Signature of Officer

_____ / /20   _____
Date                    Officer's Name-PRINT       Rank

_____
Signature of Officer

**II.** The personal property listed above was inventoried in my presence and is a true listing of all personal property taken from me.

_____ / /   _____
Date                    Signature of Inmate          Inmate Number

**III.** I have on this date received all of the above personal property marked K – Inmate allowed to keep.

_____   _____ / /
Signature of Inmate        Inmate Number        Date
_____ / /
Date                    Name of Officer issuing property-PRINT   Rank

_____
Signature of Officer issuing property

**IV.** I have on this date received all of the above listed personal property which has been stored.

_____ / /
Date                    Signature of Inmate          Inmate Number

**V.** Signature of Property Officer who returns property to inmate:

_____ / /
Date                    Name of Officer returning stored property-PRINT

_____
Signature of Officer returning stored property   Rank

ORIGINAL - Remain with property until Section IV is signed by inmate, then original will be filed in the inmate's Personal Property File.
COPY - To inmate whose property is collected.
COPY - To inmate's Personal Property File.

Symbols Indicate:
S - storage
C - contraband/confiscated
K - inmate allowed to keep

DC6-220 (Effective 10/06) (Revised 10/08)  Incorporated By Reference in Rule 33-602.201, F.A.C.

Department of Corrections

## INSTRUCTIONS FOR COMPLETION OF THE

## INMATE IMPOUNDED PERSONAL PROPERTY LIST

1. When an inmate is placed in confinement (or for any reason the inmate's property is picked up, i.e., escape, etc.) all personal property is to be inventoried as soon as is practical. The property will be inventoried in the presence of the inmate whenever possible unless doing so would be a threat to security, or unless the inmate is unavailable. In those cases where the inmate is not present, another DC employee shall assist in the inventory process and sign in the appropriate space provided.

2. The officer(s) conducting the inventory will place the property in a property bag and complete the appropriate form entries. (List the item name, number, and disposition code; S = store in property room, K = inmate allowed to keep certain items, C = confiscate contraband items.) The inventory sheet is to be prepared in triplicate, with the following distribution:

   - Original placed in the property bag until the property is returned and the inmate signs Section III verifying receipt of the property.

   - One copy to the inmate  -  after the inmate has checked and signed the appropriate block.

   - One copy to the inmate property file.

3. When the inmate is released from confinement or when the property is returned, the inmate shall sign the original of this inventory form, indicating receipt of the property. The original of this form shall then be forwarded to the  inmate property file.

4. Any exceptions to these instructions MUST be documented and approved by the Warden or designee.

# DEPARTMENT OF CORRECTIONS

## Inmate Impounded Personal Property List
(Please Print)

Inmate's Name: Holstone Ronald  Inmate Number: L27714

Institution: Charlotte CI  Date Impounded: 1-30-00

| Item | Number | Item | Number |
|------|--------|------|--------|
| White envelops | | Calligraphy pen | 5 |
| Roll on Deodorant | | | |
| Security pass | | | |
| Hair Clippers | | | |
| Legal Docs | | | |

### Nothing

### taken

I.

Signature of Officer

Date: 1-30-70

Date: 1-30-70  Officer: OSullivan  Rank: CO

II. The personal property listed above
property taken from me.

Date: 1-30-20  Signature of Inmate: L27714

III. I have on this date received

Signature of Inmate: L27714  Date: 1-30-70

Date: 1-30-20

IV.

Date

V. Signature of Property Officer

Date

ORIGINAL
COPY
COPY

DC6-220

(illegible faded text)

2. The officer shall ... property bag and ... confiscate ... the following distribution:

3. When the inmate ... property is returned, the inmate shall ... property. The original of this form ...

4. Any ... notify the Warden or designee ...

B1-2050

**FLORIDA DEPARTMENT OF CORRECTIONS**                    04/28/2020
ISSO150 (01)            **CHARGING DISCIPLINARY REPORT**
                            **LOG # 510-200794**

------------------------------------------------------------------------

DC#: L27714    INMATE NAME: HOLSTON, REGINAL L.          INFRACTION
VIOLATION CODE: 0920   TITLE: EXTORTION OR ATTEMPT        DATE: 04/21/20
FACILITY CODE: 510     NAME: CHARLOTTE C.I.               TIME: 10:30

------------------------------------------------------------------------

I.    STATEMENT OF FACTS
      AT APPROXIMATELY 10:30AM ON 04-21-2020 OFFICER O'SULLIVAN
      HANDED ME A LETTER ADDRESSED TO ME SEE ATTACHED. UPON
      READING THE LETTER INMATEL HOLSTON ACCUSSES ME OF FAILING TO
      ~~TRANSMIT~~ MONEY FROM FDOC TO BREVARD COUNTY THAT HE ALLEGES
      WAS HIS. INMATE HOLSTON THE STATES IN THE LETTER THAT IF I
      DEPOSIT 31,500 DOLLARS INTO HIS ACCOUNT HE WILL NOT HAVE ME
      ARRRESTED. INMATE HOLSTON IS IN VIOLATION OF F.A.C33-601.314
      RULES OF PROHIBITED CONDUCT 9-20 EXTORTION OR ATTEMPTED
      EXTORTION. LETTER AND ENVELOPE ARE ATTATCHED TO THIS REPORT
      AS EVIDENCE. INMATE WILL REMAIN IN HIS CURRENT STATUS
      PENDING DISPOSTION OF THIS REPORT.


REPORT WRITTEN: 04/21/20, AT 10:50         BY: ERP02 - ENGLISH, R.P.

------------------------------------------------------------------------

II.   INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: 4/29/20, AT 12:35PM

          NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
          EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
          NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
          33-601, FLORIDA ADMINISTRATIVE CODE.

          DELIVERED BY : _____ - C. Jean-P...

------------------------------------------------------------------------

NOTICE TO INMATE:
AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
CONDUCT, YOU ARE ADVISED THE FOLLOWING:

------------------------------------------------------------------------

INVESTIGATION:
AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL
HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.

------------------------------------------------------------------------

DELIVERY OF CHARGES:
A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
YOU SIGN THE WAIVER.

------------------------------------------------------------------------

```
                        FLORIDA DEPARTMENT OF CORRECTIONS          04/28/2020
ISSO150 (01)           CHARGING DISCIPLINARY REPORT
                            LOG # 510-200794
----------------------------------------------------------------------
 DC#: L27714    INMATE NAME: HOLSTON, REGINAL L.          INFRACTION
 VIOLATION CODE:  0920     TITLE: EXTORTION OR ATTEMPT    DATE: 04/21/20
 FACILITY CODE:  510      NAME:  CHARLOTTE C.I.           TIME: 10:30
----------------------------------------------------------------------
```

DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.
----------------------------------------------------------------------

APPEAL:
IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

Reginal Holston # L-27714
Charlotte Corr. Inst.
33123 Oil Well Rd.
Punta Gorda, Fl 33955

April 21, 2020

US mail

Ryan English
Charlotte Corr. Inst.
33123 Oil Well Rd.
Punta Gorda, Fl 33955

RE: Demand for civil theft treble damages and notice of intent to sue under section 772.11, Fla. Stat.

Dear Mr. English:

On February 6, 2020, you processed me out of DOC's custody to be transported to the Brevard County jail. At that time, you did feloniously "obtain or use" 10,600 dollars that was in my account whereby you failed to transmit those funds with me or to the Brevard County jail prior to or simultaneously with my arrival there. Because you temporarily deprived me of the benefit of my funds for over 30 days, you committed the criminal tort of theft in violation of section 812.014, Fla. Stat. Consequently, under 772.11, Fla. Stat. you owe me treble damages in the amount of $30,000.

If you deposit the $31,600 in my inmate account within 30 days of receipt hereof, I will provide a covenant not to sue within 30 days or a release. Otherwise, I shall implead you in an action at law within 30 days and seek costs and attorney fees in the trial and appellate courts.

Sincerely,

Reginal Holston # L-27714

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

## INMATE REQUEST

Mail Number: _____
Team Number: _____
Institution: _____

TO:
(Check One)
- ☐ Warden
- ☐ Asst. Warden
- ☐ Classification
- ☐ Security
- ☐ Medical
- ☐ Mental Health
- ☐ Dental
- ☑ Other *Property*

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Holston, D | L-27714 | B11022 | Conf | 1-8-20 |

REQUEST 404-2001-0074                    Check here if this is an informal grievance ☑

I have demanded my property with legal work, art center, and Tablet with Jaasongs on it plus legal book. In total, that's about 1,000 dollars. Under section 772.11, Fla. Stat. you owe me triple that 3,000 for depriving me of the use or benefit of my property. I demand $3,000 from you, or you in violation of 812.014

All requests will be handled in one of the following ways: 1) Written Information or   2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): _____          DC#: L-27714

**DO NOT WRITE BELOW THIS LINE**

RESPONSE          IIF          DATE RECEIVED RECEIVED

Your grievance has been recieved, reviewed evaluated and the evidence determined Based upon I need clarity on what your requesting Your grievance is returned without action

JAN 0 8 2020
GRIEVANCE COORDINATOR

[The following pertains to informal grievance only:]
Based on the above information, your grievance is *returned* (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name): | Official (Signature): | Date: 1-22-20 |
|---|---|---|

1-22-20

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 15 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C, attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to.  If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 11/18)

Incorporated by Reference in Rule 33-103.005, F.A.C.

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST**

Mail Number: _____
Team Number: _____
Institution: Okeechobee C.I.

**TO:**
(Check One)
- ☐ Warden
- ☐ Asst. Warden
- ☐ Classification
- ☑ Security
- ☐ Medical
- ☐ Mental Health
- ☐ Dental Colonel
- ☐ Other Mark Harris

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Hector Regical | L-27714 | B1102L | Conf. | 1-10-20 |

**REQUEST** 404-2001-0114          Check here if this is an informal grievance ☑

I have sent request requesting that you preserve the video and audio recordings of the excessive use of force that you directed, participated in, and orchestrated on 12-31-19 in B dorm shower B-3. I am demanding that you preserve the video of my leaving my cell in @ G dorm 117L my getting a special withdrawal by the officer, my exiting the dorm and saving and exiting medical, and the excessive force in front of medical, and my entering B dorm the entire incident, the RRT action and entire article hall exit that day. A civil action is now pending in Okeechobee county to preserve that evidence. If you permit that evidence to be destroyed, I am going to request the spoilation inference. And let that tapes erase were sent back

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature) _____          DC# L-27714

---

**DO NOT WRITE BELOW THIS LINE**          RECEIVED

**RESPONSE**          DATE RECEIVED: JAN 10 2020

GRIEVANCE COORDINATOR

Your grievance has been Recieved Reviewed and based off your lack of evidence to support your claim your Grievance is denied

The following pertains to informal grievances only:

Based on the above information, your grievance is **Denied** (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name): Wornin | Official (Signature): C Brnn | Date: 1/17/20 |

Original: Inmate (plus one copy)          1-22-6
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code

Informal Grievances and Inmate Requests will be responded to within 15 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 11/18)

Incorporated by Reference in Rule 33-103.005, F.A.C.

Ex. 5

**PART B - RESPONSE**

| HOLSTON, REGINAL | L27714 | 2004-510-005 | CHARLOTTE C.I. | B1202L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been received and evaluated.

We do not have hard copies of the pictures you are requesting.

Based on the foregoing, your formal grievance is DENIED. As outlined in Chapter 33-103.007, you may obtain further administrative review of your complaint by obtaining a DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required, and forwarding your complaint to the Bureau of Inmate Grievance Appeals.

Dr. G. Noe     J. Dawson

*****CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

G. NOE, MD CHO
CHA CI

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 4/31/2020 DATE |
|---|---|---|

MAILED DATE:

APR 21 2020

INMATE GRIEVANCE OFFICE

Ex. K

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

TO: ☑ Superintendent  ☐ Assistant Superintendent  ☐ Secretary, Florida Department of Corrections

FROM: Holston Reginal L _____ L-27714 ___ Charlotte C.I.
Last Name, First, Middle Initial        Number        Institution

2004-S-10-005

### PART A – INMATE GRIEVANCE

Two days ago, I went to view my medical records and was told that Volume one 2008-2015 is missing I need that volume. Corrections is losing or stealing my medical records Physician Assistant molina at dade C.I. falsified my medical record stating that she removed my sutures. This never happened. They are pretending not to know who the wound care specialist is who she took pictures of my wound and sent them to. The wound care specialist placed me on a daily wound care regimen for two weeks with specific dressings and creams. They are pretending to not have the pictures, not knowing who the wound care specialist is, not knowing the address or web address. They are hiding my medical record s and refusing to give them up. Please accept this grievance as my notice of intent to sue Section.

4-5-20 _____                    _____ L-27714
Date                                       Signature of Grievant and D.C.#

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** ___1___
\# _____ Signature _____

### PART B – RESPONSE

Signature and Typed or
Printed Name
of Employee Responding

Signature of Superintendent,
Assistant Superintendent, or
Secretary's Representative

Date

ORIGINAL: TO BE RETURNED TO GRIEVANT AFTER COMPLETION OF ACTION.

TEAR ON PERFORATION

IN THE _CIRCUIT_ COURT OF THE _19TH_ JUDICIAL CIRCUIT
_IN AND FOR_ COUNTY, STATE OF FLORIDA

_REGINAL HOLSTON,_____,
     Plaintiff/Petitioner,

Case No.: _472020CA000298_

vs.

_MARK HARRISS, et al_____,
     Defendant/Respondent.

## SUMMONS: PERSONAL SERVICE ON AN INDIVIDUAL
## ORDEN DE COMPARECENCIA: SERVICIO PERSONAL EN UN INDIVIDUO
## CITATION: L'ASSIGNATION PERSONAL SUR UN INDIVIDUEL

TO/PARA/A: *{enter other party's full legal name}* Ryan English, CLO, Charlotte Correctional *{address(including city and state)/location for service}* Institution, 33123 oil well Rd., Punta Gorda, Flordia 33955:    "CHARLOTTE COUNTY SHERIFF"

## IMPORTANT

    A lawsuit has been filed against you. You have **20 calendar days**[1] after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court, located at, 312 NW 3rd st., okeechobee, Florida 34972    A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be **filed** if you want the Court to hear your side of the case.

    **If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court.** There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the party serving this summons at: *{Name and address of party serving summons}* Reginal Holston #L-27714, Charlotte Correctional Institution, 33123 oil well Road, Punta Gorda, Florida 33955

---

[1] Rule 1.140(a), Florida Rules of Civil Procedure, provides: (2) (A) Except when sued pursuant to FS 768.28, the state of Florida, an agency of the state, or an officer or employee of the state sued in an official capacity shall serve an answer to the complaint or crossclaim, or a reply to a counterclaim, within **40 days** after service; (B) When sued pursuant to FS 768.28, the Department of Financial Services or the defendant state agency shall have **30 days** from the date of service within which to serve an answer to the complaint or crossclaim or a reply to a counterclaim.

Rev. 6/15/2009

THE STATE OF FLORIDA
TO EACH SHERIFF OF THE STATE:

You are commanded to serve this summons and a copy of the complaint in this lawsuit on the above-named person.

DATED: *November 5, 2020*

Sharon Robertson, Clerk of
Circuit Court & Comptroller

CLERK OF THE CIRCUIT COURT

(SEAL)

By: *Sharon Bennett*

Deputy Clerk

Rev. 6/15/2009

# Office of the Sheriff

**Sheriff of Charlotte County**

7474 Utilities Road
Punta Gorda, Florida  33982
(941) 639-2101

CIRCUIT COURT

Return # 80882
Process # C20005856
Docket # 472020CA000098 ✓
Reference #
Civil Case # CVL2080693

| | |
|---|---|
| STATE OF FLORIDA | } |
| COUNTY OF OKEECHOBEE | } |
| | } |
| | } |
| REGINAL HOLSTON | } |
| Plaintiff, | }   INDIVIDUAL: PERSONAL- 48.031 (1)(A) |
| - vs - | } |
| MARK HARRISS | } |
| Defendant | } |

Type of Writ: **a (OTHER); SUMMONS; VERIFIED CIVIL RIGHTS COMPLAINT FOR TORURE AND DEMAND FOR JURY TRIAL**

Person to be served: **RYAN ENGLISH - CLO CHARLOTTE CORRECTIONAL INSTITUTION** , at **33123 OIL WELL RD, PUNTA GORDA, FL 33955**

Court Date:

Received the above named writ on **10th day of November, 2020**, at **7:59 AM**, and executed/served the same on **10th day of November, 2020**, at **11:56 AM**, in Charlotte County, Florida, as follows: (See Comments, if any)

By delivering a true copy of this writ together with a copy of the initial pleading, if any, with the date and hour of service endorsed thereon by me, to **RYAN ENGLISH**, per F.S. 48.031 (1)(a).

| Item | Disburse To | Amount Owed | Amount Paid |
|---|---|---|---|
| Civil- Svc Fee- Standard Service of Process Fee | Charlotte County Sheriff's Office | $40.00 | $40.00 |
| | Total Owed | | $40.00 |
| | Total Paid | | $40.00 |
| | Uncollectible | | $0.00 |
| | Remaining | | $0.00 |

**Invoice #**       202008829
                    REGINAL HOLSTON
                    33123 OIL WELL RD, PUNTA GORDA, FL 33955

**Comments**

**Date Returned 11/10/20**

**Signed**   DFC ~~[signature]~~ #0545                **Date**   11/10/20

FILED FOR RECORD
OKEECHOBEE COUNTY FL
2020 NOV 16  PM 3: 14
SHARON ROBERTSON
CLERK OF CIRCUIT COURT

Page 1

William Prummell, Jr., Sheriff
Charlotte County Sheriff
By: Deputy Joseph Newton
7474 Utilities Rd
Punta Gorda, FL 33982
Phone: (941) 639-2101