UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14421-CV-CANNON
MAGISTRATE JUDGE REID

REGINAL L. HOLSTON,

       Plaintiff,

v.

RYAN ENGLISH, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

### I. Introduction

This matter is before the Court on Plaintiff's *pro se* Amended Complaint filed pursuant to 42 U.S.C. § 1983 and other state law provisions. [ECF No. 37]. This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B). [ECF No. 24].

Plaintiff, **Reginal L. Holston**, is a prisoner currently incarcerated at Charlotte Correctional Institution ("Charlotte C.I.") and is seeking redress from a governmental entity or officer or employee of a governmental entity. [ECF No. 37]. As such, the Amended Complaint must be screened pursuant to 28 U.S.C. § 1915A before it may be allowed to proceed further. *See Thompson v. Hicks*, 213 F. App'x 939, 942 (11th Cir. 2007) (*per curiam*) (citations omitted).

Upon screening the Amended Complaint, the Undersigned **RECOMMENDS** that it **PROCEED IN PART** and be **DISMISSED IN PART**, as further discussed below.

## II.      Discussion

A.      <u>Legal Standards</u>

Under 28 U.S.C. § 1915A, the Court is required to review a complaint, identify cognizable claims, and dismiss any claim the Court determines fails to state a claim upon which relief can be granted. *See Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). In doing so, the Court must liberally construe a *pro se* pleading. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

The same standard is used for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, the Court must dismiss a claim that fails "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When reviewing a complaint, the Court takes the allegations made as true. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). To "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright*, 740 F. App'x at 694 (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) (*per curiam*)).

B.      <u>Plaintiff's Amended Complaint</u>

Plaintiff's original Complaint, which was filed in state court and removed to this Court by the only Defendant who has been served, Ryan English, was 242 pages long and contained 311 Counts against 25 Defendants. [ECF No. 1-1]. The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and Ordered Plaintiff to file an amended complaint because the original Complaint did not comply with various Federal Rules of Civil Procedure and Local Rules. [ECF No. 28].

The Amended Complaint now before the Court is 58 pages long and contains 62[1] Counts against 17 Defendants.[2] [ECF No. 37]. Plaintiff's Amended Complaint centers in large part around events that occurred at Okeechobee Correctional Institution ("Okeechobee C.I."), Plaintiff's previous place of confinement. [*Id*.].

### 1.    *The Okeechobee C.I. Incidents*

Plaintiff alleges he is owed damages for several incidents that occurred while he was incarcerated at Okeechobee C.I. First, he was refused wound care by Defendant Nurse Romulus at the jail's medical facility. [*Id*. at ¶ 1]. Plaintiff told Romulus that he would file a grievance with the institution and the Department of Health. [*Id*.].

Next, on his way back to his dormitory, he met Defendant Colonel Harris and asked him to send $7,000 from his inmate account home for Christmas. [*Id*. at ¶ 2]. Harris told him that he authorizes special withdrawals every day, but then asked Holston where he had gotten so much money. Holston told him that he had settled a federal lawsuit, *Holston v. Laflam*, Case No. 8:14-cv-00704 (M.D. Fla.). [*Id*. at ¶ 3]. Harris asked whether he was a "jailhouse lawyer/writ writer" and Holston replied "yes." [*Id*. at ¶ 4]. According to Holston, Harris told him that he would not be writing any writs at Okeechobee C.I., or harassing officers, and stated words to the effect that no judge, attorney general, or writ writer would "run [my] compound." [*Id*. at ¶ 5].

The next day, December 21, 2019, Holston alleges that he again went to medical and Nurse Romulus again denied him wound care. [*Id*. at ¶ 5]. Harris also again refused to transfer the money

---

[1] The Amended Complaint purports to contain 63 Counts, however, it appears that Plaintiff inadvertently skipped from Count 20 to Count 22. Thus, since there is no Count 21, there are only 62 Counts in the Amended Complaint.

[2] Any facts alleged, claims raised, and Defendants accused in Plaintiff's previous filings that have not been specifically repleaded into the Amended Complaint have been abandoned and voluntarily dismissed from this case by Plaintiff. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007); *see also* S.D. Fla. L.R. 15.1. As such, Defendants Sergeant Sellers, Thomas Reid, Ricky Dixon, Inspector Baty, W. Canty, Sergeant Acosta, Trinity Food Services, Inc., and Centurion of Florida should be **TERMINATED** from this case by the Clerk of Court.

home as requested. Harris conspired with other named correctional officers to assault him verbally and physically, describing these assaults in detail. [Id. at ¶¶ 9-20].

Defendant Maguire escorted Holston to medical allegedly stating that he hated jailhouse lawyers and threatened to cut off Holston's hands. [*Id*.]. Maguire stated to Holston that he could either proceed through one area of the prison and be stabbed by gang members, or through another area, where correctional officers would "torture and kill" him. [*Id*. at ¶ 10]. Holston alleges that Defendant Barron then immediately pepper sprayed him as he laid on the floor, without resisting. [*Id*.]. Maguire then placed his knee on Holston's back and repeatedly struck him in the face while calling him a n*****. [*Id*. at ¶ 11]. Barron then put his knee on Holston and handcuffed him. [*Id*.]. Maguire then allegedly pulled down Holston's pants and "sadistically" shoved either his hand or another object inside him, while Harris and Romulus acted as lookouts and watched. [*Id*. at ¶ 12]. Holston was then picked up and brought to medical. [*Id*.]. There, Maguire asked Romulus whether Holston was "the one"; Romulus smiled and replied, "yes." [*Id*.].

From medical, Holston was escorted by Maguire and Barron to his dormitory, where they removed his handcuffs, and placed him in the shower to remove the pepper spray. [*Id*. at ¶ 13]. Defendants Harris, Wells, Barron, McClure, Cruzado, Christman, and Ortiz then allegedly connected activated electrical wiring to the metal floor of the adjoining shower, so that any metal touching it would heat up. [*Id*.]. Holston was handcuffed. [*Id*. at ¶ 14]. Wells ordered Maguire to tighten the handcuffs and fastened Holston's hands to an electrical wire connected to the shower door. [*Id*.].

Several Defendants then huddled around the shower door to block video surveillance while Holston's handcuffs began to heat up. [*Id*. at ¶ 15]. The wire then cooled down, and Maguire tugged on the wire to inflict further pain on Holston. [*Id*.]. The handcuffs then began to heat up for

a second time, becoming fiery hot. [*Id.*]. Holston alleges that Harris then pulled on the wire, scraping his burned skin. [*Id.*]. While still handcuffed, Ortiz and Maguire then allegedly stabbed Holston and cut his outer wrists in what Holston calls an attempt to amputate his hands. [*Id.* at ¶ 16]. Then Wells ordered Cruzado to pepper spray Holston twice more while he was handcuffed behind his back and compliant. [*Id.*].

Holston alleges that Harris and Wells then ordered an extraction team to enter the shower, who threw him to the floor, where Maguire repeatedly stuck him in the face while he was being held down. [*Id.* at ¶ 17]. Holston attached an affidavit from inmate Frank Williams who claims to occupy a cell near the shower and saw and overheard some of these events. [ECF No. 37, p. 58]. Holston alleges he was then removed from the shower and taken to an empty cell, where he was again beaten by Maguire, suffering a broken tooth and a black eye. [ECF No. 37 at ¶ 17]. Maguire then allegedly pulled down Holston's pants and shoved either his hand or another object into him under the pretext that he was searching for contraband, causing him to defecate on himself. [*Id.* at ¶ 18].

Holston was then removed from the empty cell and taken again to the shower, where Maguire cut off his clothing and hosed him down and returned him to his cell without medical treatment. [*Id.* at ¶ 19]. Holston alleges he was denied medical care for three days, and that the Defendants confiscated his legal books, property, legal work, and blood pressure medication for over 30 days, and falsified reports about the incident. [*Id.* at ¶ 20].

### 2.    *The Charlotte C.I. Incident*

Apart from the events which took place at Okeechobee C.I. in late 2019, Holston alleges that after he was transferred to Charlotte C.I. in early 2020.  There, Plaintiff alleges that after filing

a civil action against Ryan English and others in Brevard County Case No. 05-2020-CA-024711, English engaged in "First Amendment retaliation based on a spoken threat." [*Id*. at ¶¶ 133, 135].

In Count 22 of the Amended Complaint, Holston alleges that he was transferred to Charlotte C.I. on January 30, 2020 because of "corrupt collusion" between Defendants Harris, Siegler, and English. [*Id*. at ¶ 136]. Before his transfer, Holston alleges that English "had already mastered" his classification file and "orchestrated" his assignment to English's dormitory. [*Id*. at ¶ 137]. Upon Holston's arrival at Charlotte C.I., English allegedly asked him who the Colonel at Okeechobee C.I. is, and when Holston told English that it was Harris, English responded that Harris used to be his Sergeant. [*Id*. at ¶¶ 138-39].

Next, Holston alleges that English then addressed him and the three other new inmates who had just transferred from Okeechobee C.I. to Charlotte C.I., and told them that for anyone assigned to his dormitory, he would not answer any of their family members' questions about how they are doing, and if they called him, he would not respond. [*Id*. at ¶¶ 139-40]. Holston alleges that English's statement was "sheer words of his membership in the conspiracy, and his design to retaliate" against Holston. [*Id*. at ¶ 141].

One week later, on February 6, 2020, English assisted with processing Holston from Charlotte C.I. to Brevard County Sheriff's Office. [*Id*. at ¶ 142]. While doing so, English allegedly "refused to release [Holston's] funds with retaliatory animus." [*Id*.]. In response, Holston alleges that he "engaged in free speech by filing a [Prison Rape Elimination Act, 42 U.S.C. § 15601, et seq.] Complaint, serving a demand letter required by [Fla. Stat. § 772.11(1)], and filing the instant action, along with filing grievances." [*Id*. at ¶ 143].

As a result, English then threatened to write Holston a disciplinary report for extortion after Holston sent him "a pre-suit demand letter." [*Id*. at ¶ 144]. Holston alleges "said threat was in direct response to [his] PREA Complaint, Brevard litigation, and the instant action." [*Id*. at ¶ 146].

In Count 27, Holston alleges that English, along with a litany of other Defendants from Okeechobee C.I., engaged in an "overall conspiracy to violate [his] Art. IV privileges and immunities, 1st, 5th, 8th, 9th, and 14th Amendment rights." [*Id* at ¶¶ 173-190].

Specifically with respect to English, Holston alleges that English combined with Siegler, Harris, and Severson to conspire to place Holston on close management, write him false disciplinary reports, ensure that he could not get a transfer to another facility, and then ensure that he transferred to Charlotte C.I. so that he could be under the supervision of English for purposes of monitoring him and retaliating against him. [*Id*. at ¶ 176]. In addition, Holston alleges that English orchestrated his assignment to English's dormitory in furtherance of the conspiracy. [*Id*. at ¶ 177].

Finally, Holston alleges that English "did agree and combine with Severson, Siegler, and Harris to retaliate against [him]" and in furtherance of the agreement: (1) threatened Holston that he would not answer his families' questions about his health; (2) refused to release Holston's funds in violation of Fla. Stat. § 812.014(1); (3) wrote a false disciplinary report against him for extortion; and (4) combined with others to continue Holston on close management. [*Id*. at ¶ 181].

C.    Analysis of Plaintiff's Amended Complaint

*Count 1 – First Amendment Retaliation at Okeechobee C.I.*

In Count 1, Plaintiff alleges that Defendants Harris, Romulus, Wells, Ortiz, Cruzado Eschevarria, McClure, Barron, Maguire, Rembert, and Christman retaliated against him after he filed grievances, lawsuits, and orally complained about Romulus's failure to treat his wounds.

[ECF No. 37 at ¶¶ 21-26]. Here, Holston claims that Harris and Romulus directed Wells, Maguire, Cruzado, Barron, McClure, Ortiz, and Christman to pepper spray, beat, and sodomize him, place him in tight handcuffs, burn, cut, stab, and deny him medical care and access to his property because of his speech and to deter his speech. [*Id.*]. Holston also alleges that Harris and Wells directed Rembert and Eschevarria to confiscate his property as retaliation. [*Id.*]. He claims he has permanent scarring and disfigurement, among other damages, as a result. [*Id.*].

To allege a First Amendment retaliation violation under 42 U.S.C. § 1983, a plaintiff must allege: (1) he engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

"The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech,' particularly the right to petition the government for redress of grievances by filing complaints or lawsuits regarding prison conditions." *Sepulveda v. Burnside*, 170 F. App'x 119, 123 (11th Cir. 2006) (quoting *Thomas v. Evans,* 880 F.2d 1235, 1242 (11th Cir. 1989)). A plaintiff can establish an injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights." *Pittman v. Tucker*, 213 F. App'x 867, 870 (11th Cir. 2007) (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005)) *Id*.

Liberally construing Plaintiff's allegations, Count 1 should proceed against Harris and Romulus and should also proceed against Wells, Maguire, Cruzado, Barron, McClure, Ortiz, and Christman, whom Plaintiff alleges participated in or concealed the evidence of the assault.

Plaintiff's allegations regarding his grievances, lawsuits, and complaints likely are protected speech, Plaintiff alleges in detail the retaliatory conduct orchestrated by Harris and Romulus that adversely affected his protected speech. *See DeMartini*, 942 F.3d at 1289. With respect to Wells, Maguire, Cruzado, Barron, McClure, Ortiz, and Christman, Plaintiff alleges that they pepper sprayed and assaulted him at the direction of Harris and Romulus. [ECF No. 37 at ¶ 24].

Plaintiff alleges that Rembert and Eschevarria, confiscated Plaintiff's "property" at the direction of Harris and Wells, but other than his bare allegation, provides no support for the claim nor any detail as to what property was taken. [*Id*. at ¶ 25]. For these Defendants, Plaintiff fails to establish the retaliatory intent or a causal connection between their actions and their confiscation of his property.

However, as previously mentioned, this claim should proceed against Harris and Romulus. "In the context of prisoner cases, in determining whether a causal connection exists the court may choose to consider such factors as the temporal proximity between the prisoner's protected activity and the defendant's adverse action, as well as statements made by the defendant regarding his motivations." *Pate v. Peel*, 256 F. Supp. 2d 1326, 1338 (N.D. Fla. 2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2nd Cir. 1995)). "A prisoner can establish retaliatory motive by alleging a chronology of events from which a retaliatory animus on the part of the defendant could reasonably be inferred." *Id*. (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Here, Plaintiff establishes a retaliatory motive on the part of Harris and Romulus by showing that the beatings were ordered in response to the recently filed grievances against Romulus for failure to treat his prior wounds properly. These events were in close temporal proximity, and Plaintiff alleges that the retaliation was "a direct result of his being a 'f*** boy'

jailhouse lawyer filing grievances, lawsuits, and complaining about Romulus's denial of medical care." [ECF No. 37 at ¶ 24]. At this early stage, these allegations are sufficient to proceed against Harris and Romulus, however this claim should be dismissed as to Wells, Maguire, Cruzado, Barron, McClure, Ortiz, Christman, Rembert, and Eschevarria because Plaintiff alleges that they attacked Plaintiff at the direction of Harris and Romulus, not for purposes of retaliating against him for engaging in protected speech.

   *Counts 2, 3, 4, and 5 – The First Incident on December 21, 2019 at Okeechobee C.I.*

   In Counts 2, 3, 4, and 5, Holston alleges that on December 21, 2019, as he was being escorted from the prison library to medical, Barron pepper sprayed him, and Maguire beat and sodomized him, while Harris and Romulus acted as lookouts. [ECF No. 37 at ¶¶ 27-43]. These acts allegedly violated Holston's "right to bodily privacy" under the 4th and 14th Amendments (Count 2); constituted "sexual harassment" under the 14th Amendment (Count 3); and constituted "excessive force" and "sexual abuse" in violation of the 8th Amendment (Count 4). [*Id.*]. With respect to Count 5, Holston alleges that Harris, Barron, and Romulus were present and had the ability to stop Maguire from beating and sodomizing him but failed to intervene, in violation of Holston's rights under the 8th Amendment. [*Id.*].

   Despite his status as a convicted prisoner, Holston still has a limited right to bodily privacy. *See United States v. Blake*, 888 F.2d 795, 800 n.11 (11th Cir. 1989) ("we observe that, even in the context of the prison setting where privacy rights are viewed as being on a lesser scale, other courts have noted the increased level of intrusion involved when a frisk search of the genital region is involved.") (collecting cases). Holston also has the right to be free from sexual harassment, abuse, and excessive force. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992) ("the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as "cruel and unusual punishment.");

*see also Sconiers v. Lockhart*, 946 F.3d 1256, 1271-72 (11th Cir. 2020) (Rosenbaum, J., concurring) ("a guard's sexual abuse of a prisoner - including the guard's digital penetration of a prisoner's naked anus, with no legitimate penological or medical basis - satisfies the objective element of an Eighth Amendment violation."). Finally, "officers have a clearly established duty to intervene in the use of excessive force when they have 'the ability to intervene,'" as Holston alleges here. *Helm v. Rainbow City*, 989 F.3d 1256 (11th Cir. 2021) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000)).

While somewhat inartfully pleaded, liberally construed and taken as true, these claims should proceed at this early stage. Plaintiff alleges he was beaten and sodomized by Barron and Maguire while handcuffed or not resisting, in violation of his constitutional rights. Plaintiff also alleges that not only were Harris and Romulus there and failed to stop the attack, but also that they participated by acting as lookouts. Plaintiff's allegations give these Defendants notice of the claims being made against them and the grounds upon which each claim rests. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Accordingly, Counts 2, 3, 4, and 5 should proceed.

*Counts 6 and 7 – The Second December 21, 2019 Contraband Search at Okeechobee C.I.*

In Counts 6 and 7, Holston alleges that after being beaten in a shower area, he was brought to an empty cell, where Maguire again pulled down Holston's pants and assaulted him under the pretext that he was searching for contraband, causing him to bleed and defecate on himself. [ECF No. 37 at ¶¶ 17-18, 44-52]. According to Holston, these acts constituted "sexual harassment" under the 14th Amendment (Count 6); and constituted "sexual abuse" in violation of the 8th Amendment (Count 7). [*Id*.].

Plaintiff's allegations, taken as true, support his claims in Counts 6 and 7 should proceed against Maguire. *See Hudson*, 503 U.S. at 5. However, Plaintiff also seeks to bring these claims against Harris, Wells, Barron, McClure, Ortiz, Cruzado, and Christman, who allegedly "aided, abetted, assisted, and encouraged" Maguire by later "falsify[ing] their reports and spoliat[ing] evidence to conceal their actions." [*Id*. at ¶¶ 46, 51]. These bare allegations are insufficient to establish a claim against Harris, Wells, Barron, McClure, Ortiz, Cruzado, and Christman. Holston provides no facts that establish that Harris, Wells, Barron, McClure, Ortiz, Cruzado, and Christman actually participated in the sexual harassment or sexual abuse. As such Plaintiff's allegations here are barebones and conclusory and thus fail to establish a claim upon which relief can be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Accordingly, Counts 6 and 7 should proceed against Maguire, but be dismissed as to Harris, Wells, Barron, McClure, Ortiz, Cruzado, and Christman for failure to state a claim upon which relief can be granted.

*Counts 8, 9, 10, 11, 12, 13, and 15 – The Shower Incident at Okeechobee C.I.*

In Counts 8, 9, 10, 11, 12, 13, and 15 Holston alleges that after leaving medical from the first incident described in Counts 2 through 5, Holston was escorted by Maguire and Barron to his dormitory, where they placed him in a shower to decontaminate from the pepper spray, tightened his handcuffs and heated the handcuffs using an electrical wire attached to the shower door, stabbed and cut him, and pepper sprayed him again even though he was compliant. [ECF No. 37 at ¶¶ 13-15]. Harris, Wells, Barron, McClure, Cruzado, Christman, and Ortiz all participated. [*Id*.].

Holston alleges that his Eighth Amendment rights were violated when: Wells ordered Maguire to excessively tighten Holston's handcuffs (Count 8); Harris, Wells, Maguire, McClure, Ortiz, Barron, Christman, and Cruzado funneled electricity into his shower stall and, Maguire

fastened Holston's metal handcuffs to the electrified wire to burn and electrocute him (Count 9); Maguire and Ortiz cut, stabbed, and punctured his wrists in an attempt to amputate his hands (Count 10); Maguire and Harris pulled on the wire to scrape off Holston's burned skin (Count 11); Wells ordered Cruzado to pepper spray Holston while he was in the shower with his hands cuffed behind his back (Count 12); and Maguire beat him and threw him to the ground while he was in the shower area with his hands cuffed behind his back, and then did the same in an empty cell (Count 13). [*Id*. at ¶¶ 53-80]. Holston also alleges that each of these Defendants were present during the Eighth Amendment violations caused by the other Defendants but failed to intervene to stop such events from taking place (Count 15). [*Id*. at ¶ 86-92].

Taking Plaintiff's allegations as true, Plaintiff states plausible Eight Amendment claims for excessive force and failure to intervene against Maguire, Harris, Wells, Barron, McClure, Cruzado, Christman, and Ortiz. *See Hudson*, 503 U.S. at 5; *see also Priester*, 208 F.3d at 927. Accordingly, Counts 8, 9, 10, 11, 12, 13, and 15 should be allowed to proceed.

*Count 14 – Due Process and False Imprisonment at Okeechobee C.I.*

Here, Holston alleges that Maguire and the extraction team took him from the shower, placed him in an empty cell, and sodomized him after throwing him to the floor, without lawful authority and in violation of use-of-force protocol, in violation of his Due Process rights. [ECF No. 37 at ¶¶ 81-85]. Holston labels this claims as a "constitutional false imprisonment" claim under the Fourteenth Amendment and 42 U.S.C. § 1983. [*Id*. at ¶ 81].

"Prisoners may 'claim the protections of the Due Process Clause' and, therefore, 'may not be deprived of life, liberty, or property without due process of law.'" *Anthony v. Warden*, 823 F. App'x 703, 705 (11th Cir. 2020) (*per curiam*) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). "Even so, the Due Process Clause does not, by itself, establish a 'liberty interest in

freedom from state action taken 'within the sentence imposed.'" *Id*. (quoting *Sandin v. Conner*, 515 U.S. 472, 480 (1995)).

"The 'two situations in which a prisoner can be . . . deprived of his liberty such that due process is required' are: (1) 'when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court,' and (2) 'when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id*. (quoting *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (internal citations and quotations omitted).

Here, liberally construing Plaintiff's claim, it does not appear that he is making a conditions of confinement claim, because his allegations in Count 14 discuss "violation of the use of force protocol" [ECF No. 37 at ¶ 83]. Moreover, Plaintiff has alleged a conditions-of-confinement claim regarding this incident in Count 19 of the Amended Complaint. [*Id*. at ¶¶ 118-127]. Thus, to state a Due Process claim here, he must show that the state has consistently bestowed a certain benefit to prisoners, the deprivation of that benefit, and an atypical and significant hardship imposed upon him because of the deprivation. *See Anthony*, 823 F. App'x at 805.

In Count 14, Plaintiff alleges that Maguire violated use-of-force protocols when he took him from the shower, placed him in an empty cell, and sodomized him after throwing him to the floor, without lawful authority. [ECF No. 37 at ¶ 83]. While inartfully pleaded, this claim should proceed against Maguire because, if true, it potentially states a claim for violation of Plaintiff's Due Process rights. Plaintiff claims that Maguire's violation of established use-of-force protocols resulted in him being beaten, sodomized, and placed in an empty cell. At this stage, this is enough.

With respect to the other Defendants, Plaintiff alleges that Harris, Wells, Barron, McClure, Cruzado, Ortiz and Christman aided and abetted Maguire by falsifying their reports of the incident and spoliating video evidence of the incident. [*Id*. at ¶ 84]. As note earlier, these allegations are insufficient to establish a claim against Harris, Wells, Barron, McClure, Cruzado, Ortiz, and Christman. Holston provides no facts to support his claim that Harris, Wells, Barron, McClure, Ortiz, Cruzado, and Christman actually participated in the false imprisonment or use-of-force protocol violations. As such Plaintiff's allegations here are barebones and conclusory and thus fail to establish a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Accordingly, Count 14 should proceed against Maguire, but be dismissed as to Harris, Wells, Barron, McClure, Ortiz, Cruzado, and Christman for failure to state a claim upon which relief can be granted.

*Counts 16, 17, and 18 – Deliberate Indifference to a Serious Medical Need at Okeechobee C.I.*

After the above incidents, which included Holston allegedly receiving burns, stab wounds, a black eye, and broken teeth, Holston alleges in Count 16 that he was denied medical care for three days, despite Harris, Wells, Maguire, Barron, Ortiz, McClure, Christman, and Cruzado knowing how bad his injuries were. [ECF No. 37 at ¶¶ 93-100]. As a result, he claims his wounds became infected, and he experienced permanent scarring, as well as pain and suffering. [*Id*.].

In Count 17, Holston alleges that on December 24, 2019, Defendant Dr. Bhadja purposely wrote a false medical note to conceal the nature of his injuries and failed to suture his wounds or provide antibiotics, causing his wounds to become infected. [*Id*. at ¶¶ 101-107]. Holston also alleges that after his initial visit, Dr. Bhadja changed his description of his injuries and prescribed two weeks of antibiotics, however, because of the three-day delay, the antibiotics were insufficient

due to the severity of the infection, and that he needed more antibiotics and became infected a second time. [*Id*.].

In Count 18, Holston alleges that Defendant D. Brown provided him wound care and told him he was healing fine, but that he secretly reported his condition to officers and allowed him to suffer. [*Id*. at ¶¶ 108-117]. Later, when Holston made another trip to medical for wound care, Holston questioned why Brown had not clean his infected wound, Brown told him that he would not do so without a doctor's orders. [*Id*.]. As a result, Holston alleges that he suffered permanent scarring and disfigurement. [*Id*.].

"As particularly relevant here, the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A deliberate-indifference claim entails both an objective and a subjective component." *Id*. at 1266 (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). "First, the inmate must establish 'an objectively serious medical need'— that is, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention'—that, 'if left unattended, poses a substantial risk of serious harm.'" *Id*. (citations and quotations omitted). "Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had 'subjective knowledge of a risk of serious harm' and (2) that they 'disregard[ed]' that risk (3) by conduct that was 'more than mere negligence.'" *Id*.

Here, Plaintiff's allegations taken as true state claims for deliberate indifference to a serious medical need. Plaintiff alleges that he had significant injuries, including burns, stab wounds, a black eye, and broken teeth, and that Harris, Wells, Maguire, Barron, Ortiz, McClure, Christman,

and Cruzado knew about the injuries and how bad they were, but did not allow him to seek medical treatment for three days after the injuries. As for Dr. Bhadja, Plaintiff alleges that rather than attempting to treat Plaintiff's injuries, he attempted to cover up the extent of Plaintiff's injuries and allowed Plaintiff's wounds to become infected multiple times. Finally, Plaintiff alleges that Brown told him he did know about his injuries, but that he refused to treat them without orders from a doctor to do so. As such, Counts 16, 17, and 18 plausibly state claims for deliberate indifference to a serious medical need, and should be allowed to proceed.

*Count 19 – Conditions of Confinement at Okeechobee C.I.*

In Count 19, Holston alleges that Harris, Echevarria, Rembert, Bhadja, Ortiz, Brown, Wells, Barron, Maguire, McClure, Cruzado, and Christman "deprived him of life's bare necessities for over 37 days" when Harris and Wells directed Echevarria and Rembert to confiscate all of Holston's property, including his clothing and hygiene items, and placed him in a completely empty cell. [ECF No. 37 at ¶¶ 118-127]. Holston also alleges that all Defendants refused him proper medical and dental treatment by preventing him from seeing a doctor within 24 hours after the previously mentioned incidents. [*Id.*]. Holston next alleges that McClure and Christman stole his coffee and deprived him of meals on multiple prior occasions. [*Id.*].

Count 19 should be allowed to proceed in part. To the extent that Plaintiff raises a conditions of confinement claim with respect to the denial of proper medical treatment in the 24 hours after the beating incidents, this claim is duplicative of Plaintiff's claims for deliberate indifference to a serious medical need and should be dismissed. However, to the extent that Plaintiff alleges that over 37 days he was deprived of all property, including clothing, some meals, and hygiene items, and placed in a completely empty cell, this claim should proceed.

"[C]onditions of confinement violate the Eighth Amendment only if they (1) rise to the level of a 'serious' deprivation; and (2) result from the official's 'deliberate indifference.'" *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991)). Here, the purposeful and complete deprivation of all personal items, clothing, hygiene items, some meals, and being placed in a barren cell for 37 days would, if true, likely constitute a serious deprivation that would violate the Eighth Amendment. Accordingly, this claim should be allowed to proceed in part against Harris, Wells, Echevarria, Rembert, McClure, and Rembert, as discussed above, but be dismissed against Bhadja, Ortiz, Brown, and Barron because Plaintiff's claims against them either pertain to the duplicative claim of denial of medical treatment, or are wholly unarticulated such that they do not give the Defendant notice of the claim being made against them. *See Weiland*, 792 F.3d at 1323.

*Count 20 – Procedural Due Process Violation at Okeechobee C.I.*

Like Count 19, in Count 20 Plaintiff alleges that Harris, Wells, Rembert, and Eschevarria deprived him of certain personal items, including law books, personal photographs, case files, and medication. [ECF No. 37 at ¶¶ 128-132]. Holston alleges that he did not receive procedural due process under the law before this took place, and that Defendants' conduct was in violation of his rights under the Fourteenth Amendment. [*Id*.].

Plaintiff does not articulate how these above actions violated his procedural due process rights, nor does he articulate how this differs from his claim that he was deprived of his personal property in his earlier conditions of confinement claim. As such, he fails to state a claim, but should be given leave to amend this claim, if possible, because it could be liberally construed to state a claim for denial of access to the courts. *See Al-Amin v. Smith*, 511 F.3d 1317, 1325-26 (11th Cir. 2008) (quoting *Bounds v. Smith*, 430 U.S. 817, 821 (1977)) ("prisoners have a constitutional right

of access to the courts."). To do so, Plaintiff must also show an "actual injury," which may be shown by demonstrating that he had a legitimate claim that he was unable to pursue due to the prison's restrictions. *Id*. at 1332-33 (citations omitted).

*Count 22 – First Amendment Retaliation at Charlotte C.I.*

This claim against Defendant English is substantially identical to Plaintiff's First Amendment Retaliation claim against English in Plaintiff's earlier filed Brevard County civil action. In count 9 of Holston's amended complaint filed in Brevard County Case No. 05-2020-CA-024711 on January 26, 2021, Plaintiff alleges that English filed a false disciplinary report against him for extortion in response to Plaintiff's PREA Complaint and demand letter. The Undersigned takes judicial notice of this pursuant to Fed. R. Evid. 201.

While there would likely be jurisdiction to hear such a claim, the Court should abstain from hearing this claim in this case due to the ongoing parallel litigation in state court. *See Colo. River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Colorado River* abstention is appropriate here to avoid wasteful duplication of litigation and inefficient use of Court resources. Further, looking at the procedural posture of each case, the state court case is much more developed, and there is a currently pending and ripe motion to dismiss in the state court case in which the state court recently held a hearing on. Finally, these allegations are not necessary for the resolution of the other claims in this case, because they center in large part around events that took place at Charlotte C.I., after Plaintiff left Okeechobee C.I.

If this claim is fully resolved in the state court prior to the Court's ruling on this Report and Recommendation, the claim should be dismissed based on the *Rooker-Feldman* Doctrine, which prohibits federal courts from review of state court actions that have been fully decided. *See*

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, (1923); *see also District of Columbia Court of Appeals*

*v. Feldman*, 460 U.S. 462 (1983).

*Counts 23, 24, and 27 – Civil Rights Conspiracy Claims*

In Count 23, Plaintiff alleges that Maguire, Barron, and Harris conspired to violate his

privileges and immunities under state law and equal protection of the law based upon his identity

as an African American or Black male, in violation of 42 U.S.C. § 1985(3). [ECF No. 37 at ¶¶

148-153]. In Count 24, Plaintiff alleges that Romulus negligently failed to prevent Maguire, Harris,

and Barron's conspiracy, in violation of 42 U.S.C. § 1986. [*Id*. at ¶ 154-160]. In Count 27, Plaintiff

alleges that a litany of Defendants engaged in an "overall conspiracy to violate [his] Art. IV

privileges and immunities, 1st, 5th, 8th, 9th, and 14th Amendment rights." [*Id* at ¶¶ 173-190].

For example, with respect to English, Holston alleges that English combined with Siegler,

Harris, and Severson to conspire to place Holston on close management, write false disciplinary

reports, ensure that he did not transfer, and then ensure that he transferred to Charlotte C.I. so that

he could be under the supervision of English for purposes of monitoring him and retaliating against

him. [*Id*. at ¶ 176]. In addition, Holston alleges that English orchestrated his assignment to

English's dormitory in furtherance of the conspiracy. [*Id*. at ¶ 177]. Finally, Holston alleges that

English "did agree and combine with Severson, Siegler, and Harris to retaliate against [him]" and

in furtherance of the agreement: (1) threatened Holston that he would not answer his families'

questions about his health; (2) refused to release Holston's funds in violation of Fla. Stat. §

812.014(1); (3) wrote a false disciplinary report against him for extortion; and (4) combined with

others to continue Holston on close management. [*Id*. at ¶ 181].

First, looking to Count 23, "[t]he elements of a cause of action under § 1985(3) are: (1) a

conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Childree v. UAP/GA AG Chem.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996) (quoting *Lucero v. Operation Rescue*, 954 F.2d 624, 627 (11th Cir. 1992)).

Here, Plaintiff's Civil Rights Conspiracy claim under § 1985(3) fails because he makes only bare assertions of conspiracy without any factual support. *See Iqbal*, 556 U.S. at 678. All Holston alleges with respect to the conspiracy is that "Maguire, Barron, and Harris did agree and combine to deny him his privileges and immunities under state law and equal protection of the law." [ECF No. 37 at ¶ 151]. This is conclusory and not entitled to be presumed true for purposes of evaluating whether the Amended Complaint states a claim. *See Twombly*, 550 U.S. at 555. As such, Count 23 should be dismissed for failure to state a claim upon which relief can be granted. As for Count 24, Plaintiff's claim should be dismissed because Romulus cannot be said to have negligently fail to intervene in the alleged conspiracy between Maguire, Harris, and Barron discussed in Count 23, because Plaintiff has failed to sufficiently allege that such a conspiracy even existed.

Finally, Plaintiff's Count 27, where he alleges a § 1983 conspiracy, should be dismissed for the same reason as Count 23. "To establish a prima facie case of section 1983 conspiracy, the plaintiff must show . . . some evidence of agreement between the defendants." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002) (citations omitted). Here, just as in Counts 23 and 24, Plaintiff points to nothing except conclusory statements of an agreement, which is insufficient to establish a prima facie claim. Plaintiff alleges that "[a]ll Defendants agreed and combined to deprive [him] of equal protection of the law…" [ECF No. 37 at ¶ 175], but he provides

no specific factual support beyond his bare assertions. As such, Count 27 should also be dismissed for failure to state a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 678.

*Count 25 – Fourteenth Amendment Equal Protection*

In Count 25, Plaintiff alleges that Maguire, with the help of Barron and Harris, beat him, pepper sprayed him, sodomized him, and called him a n***** and "denied him equal protection of the law from those similarly situated based on his being black." [ECF No. 37 at ¶¶ 161-165].

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)).

Here, Plaintiff's allegations are insufficient to establish an equal protection claim against any of the Defendants and Count 25 should be dismissed. Plaintiff simply states in conclusory fashion that the Defendants "acted maliciously, under color or state law, and with evil motive whereby they denied him equal protection of the law from those similarly situated based on his being black." [ECF No. 37 at ¶ 164]. However, simply saying he was denied equal protection does not make it so, and the Court does not presume these conclusory allegations to be true for purposes of evaluating whether the Amended Complaint states a claim. *See Twombly*, 550 U.S. at 555.

While Plaintiff does allege certain defendants used a racial slur, he "provided no other evidence to show that he was treated differently or singled out *based on his race or national origin*." *Real v. Perry*, No. 19-13808-A, 2020 U.S. App. LEXIS 1663, at *2 (11th Cir. Jan. 17, 2020) (emphasis added). In fact, the overarching theme of the Amended Complaint is that Plaintiff

22

was treated differently and singled out based on his use of the prison grievance system and the court system to lodge complaints against prison employees. Accordingly, Count 25 should be dismissed for failure to state a claim upon which relief can be granted. *See id.*; *see also Iqbal*, 556 U.S. at 678.

### Count 26 – "Class of One" Equal Protection

Next, Plaintiff alleges a "class of one" equal protection claim under the 14th Amendment and 42 U.S.C. § 1983. [ECF No. 37 at ¶¶ 166-172]. More specifically, Plaintiff alleges that "[a]ll similarly situated inmates" are: transferred within 24 hours of being accused of battery on a correctional officer; are given a bunk to sleep on with bedding; are given full course meals; are given their property; are allowed to use the law library; and receive adequate medical and dental treatment, but that he was not. [*Id.*]. Holston alleges that Harris, Severson, Siegler, McClure, Rembert, Bhadja, and Wells "individually and collectively had the power to afford [him] the privileges" above, but that they "den[ied him] equal protection and privileges and immunities in relation to those similarly situated."

"[A] 'class of one' claim involves a plaintiff who 'alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Such claims are "not the normal equal protection case" and are considered "a less-developed strand of equal protection jurisprudence." *Id.* at 1200.

"In this Circuit, we apply the 'similarly situated' requirement 'with rigor.'" *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021) (citing *Irvin*, 496 F.3d at 1207. "[T]he [entities] being compared '*must be prima facie identical in all relevant respects*.'" *Id.* (emphasis in original) (internal citations and quotations omitted). "A plaintiff must ultimately

show that it and any comparators are 'similarly situated 'in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker.'''" *Id.* (internal citations and quotations omitted).

Here, Plaintiff fails to "identify a similarly situated comparator, thereby failing to state a facially-plausible equal protection claim." *Real*, 2020 U.S. App. LEXIS 1663, at *2 (citing *Olech*, 528 U.S. at 564). Accordingly, Count 26 should be dismissed.

*Counts 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, and 40 – Common Law Battery/Assault*

In Counts 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, and 40, Holston makes various allegations of common law battery and common law assault. Each of these allegations factually correspond to Plaintiff's above Eighth Amendment claims brought pursuant to 42 U.S.C. § 1983. For purposes of brevity, they will be analyzed jointly to the extent possible.

Under Florida law, a "simple battery 'occurs when a person: [1] Actually and intentionally touches or strikes another person against the will of the other; or [2] Intentionally causes bodily harm to another person.'" *U.S. v. Diaz-Calderone*, 716 F.3d 1345, 1347 (11th Cir. 2013) (quoting Fla. Stat. § 784.03(1)(a)). Here, Plaintiff alleges that he: was violently sodomized (Counts 28 and 39); pepper sprayed without cause (Counts 29 and 37); beaten (Counts 30 and 38); assaulted (Counts 31 and 40); placed in excessively tight handcuffs (Count 33); burned (Count 34); stabbed (Count 35); and had the burned skin scraped off of his wrists with a wire (Count 36).

Assuming the truth of Plaintiff's allegations, he states plausible claims for common law battery and assault. Accordingly, Counts 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, and 40 should be allowed to proceed.

*Counts 32, 44 – Common Law Negligence at Okeechobee C.I.*

In Count 32, Plaintiff alleges that Harris, Romulus, and Barron had a legal duty to intervene and protect Maguire from sodomizing him but failed to do so. [ECF No. 37 at ¶¶ 209-215]. He alleges that this failure constitutes common law negligence, and caused him to suffer physical injuries, as well as pain and suffering and other emotional injuries. [*Id*.].

In Count 44, Plaintiff alleges that Harris, Wells, Barron, Ortiz, McClure, Christman, Cruzado, and Maguire had a legal duty to intervene and protect him from being beaten, burned, sodomized, stabbed, placed in excessively tight handcuffs, pepper sprayed, and having the burned skin scraped off his wrists but failed to do so. [*Id*. at ¶¶ 270-274]. He alleges that this failure constitutes common law negligence, and caused him to suffer physical injuries, as well as pain and suffering and other emotional injuries. [*Id*.].

"To prove a cause of action for negligence, a plaintiff must prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff incurred damages as a result." *Gibbs v. Hernandez*, 810 So. 2d 1034, 1036 (Fla. 4th DCA 2002). The Florida Supreme Court has held that "[s]o long as [a person] was placed in some sort of 'custody' or detention, he is owed a common law duty of care" from the law enforcement officers who he is in custody of. *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989) (citations omitted).

Plaintiff was a prisoner at Okeechobee C.I. and in the custody of these Defendants, so he plausibly pleads a duty of care. As for breach of duty and causation, Plaintiff alleges that the Defendants were in a position to intervene and prevent these incidents from taking place, or at least mitigate them, but that they failed to do so. As a result, Plaintiff claims that that the Defendants' allegedly negligent failure to intervene was the proximate cause of Plaintiff's significant injuries.

Thus, accepting Plaintiff's allegations as true, he plausibly pleads claims for common law negligence against Harris, Romulus, and Barron in Count 32, and against Harris, Wells, Barron, Ortiz, McClure, Christman, Cruzado, and Maguire in Count 44. Accordingly, Counts 32 and 44 should proceed.

*Counts 41 and 45 – Emotional Distress and Common Law "Outrage" Claims*

In Count 41, Plaintiff claims that Harris, Wells, McClure, Ortiz, Maguire, Barron, Christman, Cruzado, and Romulus "did maliciously inflict reckless and deliberate emotional and mental suffering on [him] and/or did aid, abet, ratify, approve, or provide substantial assistance to others who did so." [ECF No. 37 at ¶ 257]. Under Florida law, the tort of intentional infliction of emotional distress requires Plaintiff to prove the following elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct, i.e., behavior that goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused the emotional distress; and (4) the distress was severe. *See Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011); *see also Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594-95 (Fla. 2d DCA 2007).

Here, Plaintiff alleges that the sodomizing, placing of excessively tight handcuffs on him, pepper spraying, beating, burning, and cutting of his wrists, along with the refusal of medical treatment, was outrageous conduct that goes beyond all possible bounds of decency. He alleges that the conduct caused severe emotional distress. These allegations are sufficient at this time to allow Count 41 to proceed.

As for Count 45, Plaintiff alleges negligent infliction of emotional distress against Harris, Wells, Maguire, Barron, Cruzado, McClure, Ortiz, and Christman, based on the same events. [ECF No. 37 at ¶¶ 275-279]. "The Florida Supreme Court has described the four elements required to

allege a cause of action for negligent infliction of emotional distress: (1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." *Thompson v. Spears*, 336 F. Supp. 2d 1224, 1237 (S.D. Fla. 2004) (citing *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995)). The typical scenario under which such a claim is brought is when a family member suffers psychic trauma after witnessing at close range the death or serious injury of a relative. *Id.*

Here, while Plaintiff did allegedly suffer physical injuries from the above incidents, he does not allege that he suffered a physical injury caused by the psychological trauma of these incidents.  Second, Plaintiff's claims concern injury to himself, not to another. As such, he fails to state a claim for negligent infliction of emotional distress and Count 45 should be dismissed.

*Counts 42 and 63 – State Law Conspiracy and RICO*

Plaintiff's Count 42 alleges "state law conspiracy under *McLellan v. Biancaniello*, 2018 U.S. Dist. LEXIS 73088 (M.D. Fla. 2018) and 28 U.S.C. § 1367(a)." [ECF No. 37 at ¶ 261]. In support, Plaintiff alleges that "Harris, Romulus, Maguire, Wells, Cruzado, McClure, Ortiz, Christman, and Barron did maliciously agree that [Plaintiff] would be subject to excessive force by sodomy, burning, pepper spraying, beating, stabbing, assault, and 'outrage' by Harris, Maguire, and Barron." [*Id*. at ¶ 262].

Here, Plaintiff's state law conspiracy fails to state a claim upon which relief can be granted. As a threshold matter, it is unclear under what state law Plaintiff bring this conspiracy claim, since Plaintiff does not provide a statute, and the *McLellan* case cited by Plaintiff largely deals with

claims under 42 U.S.C. § 1983, along with one unelaborated "conspiracy as an independent tort." As such, Count 42 should be dismissed for failure to state a claim upon which relief can be granted.

Next, looking to Plaintiff's "state substantive civil RICO" claim, Plaintiff does identify the statutes he seeks to travel under, including Fla. Stat. § 772.103. [ECF No. 37 at ¶¶ 386-416]. "Florida's RICO statute is largely modeled after the federal version and requires similar elements: (1) conduct of (2) an enterprise (3) through a pattern (4) of criminal activity." *Berber v. Wells Fargo, NA*, 798 F. App'x 476, 481 (11th Cir. 2020) (citing Fla. Stat. § 772.103; *Gross v. State*, 765 So. 2d 39, 42 (Fla. 2000); *Bortell v. White Mut. Ins. Grp., Ltd*., 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009)).

Under Florida law, "'Enterprise' means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and the term includes illicit as well as licit enterprises and governmental, as well as other, entities." Fla. Stat. § 772.102(3). "'Pattern of criminal activity' means engaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity." Fla. Stat. § 772.102(4).

In this claim, Plaintiff's theory is that the State of Florida, the Florida Department of Corrections, the Florida Department of Law Enforcement, and a criminal gang known as the "unforgivens" are collectively a "hate group" and a statutory enterprise under Florida RICO laws. [ECF No. 37 at ¶¶ 386-416]. Plaintiff alleges that this "enterprise" engaged in a pattern of criminal activity over the course of five years, including: the theft of Plaintiff's coffee, milk, juice, and

chicken by McClure "with felonious intent;" Plaintiff's placement in confinement and being stripped to his boxers without a modesty garment by Wells; the removal of all his property for 72 hours; the use of excessive force against Holston, as detailed in great length in this Report; Maguire assisting inmate gang members' possession of weapons; Cruzado allegedly beating a witness of these incidents, Anthony Thorpe; by killing Holston's brother, Devaughn Leon Holston; and by destroying evidence and falsifying reports of these incidents. [*Id*.].

To allege a pattern of racketeering activity, Plaintiff must show that: (1) the Defendants committed two or more predicate acts within a five-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. *See* Fla. Stat. § 772.104; *see also H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 239-43 (1989); *State v. Lucas*, 600 So.2d 1093, 1094 (Fla. 1992). In addition, to prove a "pattern of racketeering activity," Plaintiff must allege two predicate acts, but also an ongoing criminal activity, rather than a single, isolated incident. *Sedima, S. P. R. L. v. Imrex Co*., 473 U.S. 479, 497 n.14 (1985). The Eleventh Circuit has made clear that, a "pattern of racketeering activity" requires more than just two predicate acts, but also "the threat of continuing racketeering activity." *United States v. Gonzalez*, 921 F.2d 1530, 1545 (11th Cir. 1991)).

Here, even liberally construing Plaintiff's claims and assuming their truth, he fails to allege a plausible claim for Florida RICO violations because his allegations regarding the State of Florida, the Florida Department of Corrections, the Florida Department of Law Enforcement, and the "unforgivens" collectively constituting a RICO enterprise that engages in a pattern of criminal activity are simply too barebones and conclusory to support a RICO claim.

For example, Plaintiff alleges that "[a]ll criminal acts are related since the victims are similar: prisoners," Defendants' "intents were similar: to engage in diversified criminal activity,"

29

and "the accomplices were the same: prison officials." [*Id*. at ¶¶ 411-413]. Plaintiff claims that this establishes a pattern, but all of the allegations pertain to what is essentially a single isolated incident that took place at Okeechobee C.I., the beating incident in retaliation for his prior complaints and grievances.

Plaintiff alleges that "open ended continuity is established" because "said conduct is the ongoing enterprise's regular way of doing business: care, custody, control, and security." This is at best barebones and conclusory as well. In an "open-ended" case, a plaintiff can meet their burden by establishing that the RICO act themselves "include a specific threat of repetition extending indefinitely into the future," or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242. Here, Plaintiff obviously seeks to establish that these acts of violence are part of the "enterprise's" regular way of doing business, but provides no factual support. Plaintiff briefly mentions incidents involving two other inmates, Anthony Thorpe and his brother, Devaughn Leon Holston, but he provides essentially no factual detail regarding these incidents and, in any event, he connects them back to his own beating by saying they were harmed in connection with Holston's incidents, undermining his continuity claim. Accordingly, for the reasons discussed above, Plaintiff's "state substantive civil RICO" claim in Count 63 should be dismissed for failure to state a claim upon which relief can be granted.

*Counts 51, 52, 53, 54, 55, 62 – Theft Related Property Claims*

In this group of claims, Holston alleges that: Harris committed "statutory civil theft" in violation of Fla. Stat. § 772.11(a) and conversion by failing to send funds to Holston's family as Holston had requested (Counts 51 and 52); Wells committed statutory civil theft when he confiscated his property while Holston was on "strip" from December 21 to 24, 2019 (Count 53); Rembert committed statutory civil theft when she refused to return his property upon his transfer

from Okeechobee C.I. on January 12 and 23, 2020 (Count 54); Siegler, Severson, Harris, Wells, Rembert, and Eschevarria negligently failed to safeguard his personal property (Count 55); and McClure committed statutory civil theft when he deprived Holston of food on seven occasions in January 2020 (Count 62). [ECF No. 37 at ¶¶ 308-3328, 384-385].

To demonstrate a claim for civil theft Plaintiff "must prove the statutory elements of theft, as well as criminal intent." *Gersh v. Cofman*, 769 So.2d 407, 409 (Fla. 4th DCA 2000) (citing Fla. Stat. § 772.11 (1997); *Country Manors Ass'n v. Master Antenna Sys., Inc.*, 534 So.2d 1187, 1191 (Fla. 4th DCA 1988)). Civil theft under Florida law requires a showing by "clear and convincing evidence" of an injury caused by Defendants' violation of one or more of the provisions of the criminal theft laws found in Fla. Stat. §§ 812.012 and Fla. Stat. § 772.11. *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1327 (11th Cir. 2006) (stating that "a cause of action for civil theft derives from two statutory sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section.") (internal citations omitted). Fla. Stat. § 812.012 provides that a person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) deprive the other person of a right to the property or a benefit from the property; or (b) appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

In Counts 51, 53, 54, and 62, Plaintiff simply alleges in conclusory fashion that the respective Defendants acted with "felonious intent" but he does not provide any factual allegations beyond these conclusory allegations. *See Twombly*, 550 U.S. at 555. With respect to his property, he alleged that Wells was required to "obtain, impound, and inventory" his property while he was on "strip" from December 21 through December 24, 2019, and failed to do so, but provides no

factual support for his conclusion that Wells acted with "felonious intent," and that Harris, Echevarria and McClure knew of Wells' intent and assisted him. As such, all of these claims fail as a matter of law. Without more, these allegations do not rise to the level of civil theft, and Plaintiff fails to demonstrate the required intent to maintain such a claim. Accordingly, Counts 51, 53, 54, and 62 should be dismissed.

As for Count 52, Plaintiff conversion/trover claim, it should also be dismissed. Under Florida law, "conversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession." *Spradley v. Spradley*, 213 So.3d 1042, 1044 (Fla. 2d DCA 2017) (internal citations and quotations omitted). The facts alleged must be sufficient to demonstrate "ownership of the subject property" and "that the other party wrongfully asserted dominion over that property." *Id*. (quoting *Edwards v. Landsman*, 51 So.3d 1208, 1213 (Fla. 4th DCA 2011)).

Here, Plaintiff alleges only that Harris is liable for conversion because he "refused to allow [him] to utilize the special withdrawal process in contravention of his expressed policy and promise whereby Harris did exercise wrongful dominion over [his] property in derogation of [his] possessory rights." [ECF No. 37 at ¶ 311]. He has not alleged sufficient facts to demonstrate that Harris has asserted a right of dominion or ownership of funds held in Holston's prison account.

Finally, with respect to the negligence claim against Siegler, Severson, Harris, Wells, Rembert, and Echevarria in Count 55, as previously mentioned, "[t]o prove a cause of action for negligence, a plaintiff must prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff incurred damages as a result." *Gibbs*, 810 So. 2d at 1036. Here, Plaintiff alleges that the Defendants had a duty to

safeguard his property and were required to fill out certain forms, and that they failed to properly do so, causing him to suffer the loss of his property. [ECF No. 37 at ¶¶ 324-328].

Liberally construed, Holston claims that prison procedures impose a duty on the officers to safeguard his property by filling out certain forms, that the officers failed to properly fulfill this duty with respect to his property, and that their failure proximately caused the loss of his property. While Plaintiff's allegations can be more specific, the allegations taken as true are sufficient to state a claim at this early juncture. As such, he has stated a claim in Count 55.

*Counts 56, 57 and 58 – Medical Negligence at Okeechobee C.I.*

Similarly to Counts 16, 17, and 18, where Plaintiff alleges that certain Defendants were deliberately indifferent to his serious medical needs after the beating incidents at Okeechobee C.I., in Counts 56, 57, and 58, Plaintiff alleges that the same conduct also constituted negligent delay of medical treatment by Harris, Wells, Maguire, Barron, McClure, Cruzado, Ortiz, and Christman (Count 56); negligent medical treatment by Bhadja (Count 57); and negligent failure to treat against Brown (Count 58). [ECF No. 37 at ¶¶ 329-351].

As previously mentioned, "[t]o prove a cause of action for negligence, a plaintiff must prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff incurred damages as a result." *Gibbs*, 810 So. 2d at 1036. As for legal duty, "[s]o long as [a person] was placed in some sort of 'custody' or detention, he is owed a common law duty of care" from the officers in whose custody he is held. *Kaisner*, 543 So. 2d at 734 (citations omitted).

In Count 56, Plaintiff alleges that Harris, Wells, Maguire, Barron, McClure, Cruzado, Ortiz, and Christman owed him a legal duty of care to take him for medical treatment after the beating incidents, but that they instead left him in an empty cell for 72 hours. [*Id*. at ¶¶ 329-339].

He alleges that, as a result, his injuries became infected and he suffered permanent injury and scarring. [*Id*.]. Taking these allegations as true, Count 56 should be proceed.

For Count 57, Plaintiff alleges that Bhadja owed him "a special duty of care to treat his wounds, suture same, provide antibiotics, and prevent the spread or development of infection." [ECF No. 37 at ¶ 340]. Rather than do so, Plaintiff alleges that Bhadja diagnosed the infection but failed to treat it, failed to suture his wounds, run tests for infection, or take cultures of his wounds. [*Id*. at ¶ 341]. As a result, Holston alleges that he suffered multiple infections and his condition worsened, causing permanent scarring. [*Id*. at ¶ 346]. Taking these allegations as true, Count 57 should proceed.

Finally, for Count 58, Plaintiff alleges that Brown owed him a legal duty of care to dress his objectively serious wounds and to alert the doctor to any onset or developing infection, but that he refused to do so. [*Id*. at ¶¶ 347-351]. As a result, he alleges his injuries became infected and his injuries were exacerbated, causing him pain and suffering. [*Id*.]. Taking these allegations as true, Count 58 should proceed.

*Count 59 – Gang Violence Claim*

In Count 59, Plaintiff alleges that "Maguire did initiate, plan, direct, and supervise gang related activity" "where he furthered the interest of the criminal gang 'unforgivens,'" which constitute violations of Fla. Stat. §§ 874.03(4) and 874.04. [ECF No. 37 at ¶ 351]. These criminal statutes make it unlawful to further the interests of a criminal gang and Fla. Stat. § 874.06 authorizes civil remedies, including treble damages and injunctive relief, if a person can establish a violation of the criminal statutes by clear and convincing evidence. Here, Plaintiff alleges that Maguire directed the unforgivens to stab and kill him, and that Maguire, along with Harris and Barron, came to an agreement with the unforgivens to attack him. [*Id*. at ¶¶ 352-353].

In furtherance of the agreement, he alleges that Maguire stated to Holston that he could either proceed through one area of the prison and be stabbed by the gang members, or through another area, where correctional officers would "torture and kill" him. [*Id*. at ¶¶ 10, 354]. Holston alleges that he was then pepper sprayed, sodomized, and beaten by Maguire and various guards in the earlier described incidents, which Holston alleges were done to "further Maguire's standing or status" with the unforgivens. [*Id*. at ¶ 359].

As evidence of this claim, Holston alleges that a week after the incident, a "grand wizard" of the unforgivens was housed in a cell next to him and confirmed to him that he was one of the unforgivens that was waiting to stab him and that they were carrying out Maguire's orders. [*Id*. at ¶¶ 360-364]. The "grand wizard" also told Holston that Maguire is a "mule" for the unforgivens and smuggles contraband into the prison for them, and that the unforgivens felt they had no choice to carry out his orders as a result. [*Id*.]. Finally, Holston was warned that he should try and leave Okeechobee C.I., because Maguire was still attempting to have the unforgivens "wet" (stab) him for being a snitch. [*Id*.].

As a threshold matter, the Undersigned was unable to find a single case in the any Florida federal district court, the Court of Appeals for the Eleventh Circuit, or any Florida state court that has analyzed this issue. However, liberally construing Plaintiff's allegations, the claim should proceed against Maguire because, taking these allegations as true, Plaintiff plausibly pleads: (1) that Maguire is a member of a criminal gang or hate group - the unforgivens - and (2) that Maguire engaged in gang related activity - the beating incidents - in violation of Fla. Stat. §§ 874.06 and 874.10. this claim should proceed against Maguire.

"Criminal gang-related activity" includes "[a]n activity committed with the intent to benefit, promote, or further the interests of a criminal gang, or for the purposes of increasing a

person's own standing or position within a criminal gang." Fla. Stat. § 874.03(4)(a). Here, Plaintiff alleges that Maguire attacked him to increase his standing in the group, which is sufficient at this early stage when combined with the allegation that Maguire is a "mule" for the group and that a "grand wizard" of the group told Plaintiff that Maguire ordered him to stab him. As such, this claim should proceed against Maguire.

As for Harris and Barron, Plaintiff makes no allegations regarding their membership in the gang, nor does he make any allegations regarding any gang-related activity they may have committed. As such, he fails to state a claim upon which relief can be granted against Harris and Barron. This claim should be dismissed against them.

### Count 60 – Negligent Supervision at Okeechobee C.I.

In Count 60, Plaintiff alleges that Severson, the warden of Okeechobee C.I., is liable for negligent supervision of Harris, Wells, and Maguire because he had a legal duty of care for him, but breached that duty by allowing the events in this complaint to occur. [ECF No. 37 at ¶¶ 366-377]. Holston alleges that Harris, Wells, and Maguire engaged in a program of abuse of inmates through excessive use of force, and that Severson should have known that this was taking place after seeing grievances about it from inmates. [*Id.*]. Holston does not name these inmates nor state when these other abuses took place.

Holston also alleges that Severson failed to keep track of Maguire's prior use-of-force incidents as required, that he failed to investigate such incidents, and that he contributed to an atmosphere of concealment of such incidents at the prison. [*Id.*]. He alleges that Severson's failures were the direct and proximate cause of the beating incidents, and that he was severely injured as a result. [*Id.*]. Again, however, he provides no facts to support the prior incidents. Plaintiff also generally refers to the warden's failure to "keep track of Maguire and others' uses of force," and

"fail[ure] to maintain update and maintain" documents regarding use of force, as well as failure to properly investigate use-of-force incidents.

To establish liability for negligent supervision or retention, a plaintiff must show that "the employer knows or should know of an employee's unfitness and fails to take further action such as 'investigating, discharge or reassignment.'" *Malicki v. Doe*, 814 So. 2d 347, 362 n.15 (Fla. 2002). Here, because Plaintiff fails to provide any facts to support the warden's knowledge of other incidents, other than by a general reference to "grievances [filed] by prisoners," his unsupported and conclusive allegations cannot proceed.

### Count 61 – Implied Contract

In this claim, Plaintiff seeks to bring a claim for "contract implied under law" against Harris, Wells, Maguire, Barron, Ortiz, McClure, Christman, and Cruzado arising from copay fees he incurred after requesting sick calls from Okeechobee C.I. medical services. [ECF No. 37 at ¶¶ 378-383]. Holston alleges that because he paid these copay fees to the Florida government, and these Defendants are "agents" of the government, the benefit of these copayments flowed to them and "it would be unjust and inequitable for 'Defendants' to retain the fees where they were the moving force that caused the very injuries for which [he] requested medical attention." [*Id.*]. Accordingly, he requests that the Defendants return these fees to him. [*Id.*].

This claim makes no sense and should be dismissed. Upon screening a case, the Court is required to dismiss as frivolous any claim that is "based on indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). Here, Plaintiff's theory that the financial benefits of his medical copays flow to the Defendants because of their status as government agents is indisputably frivolous. Plaintiff makes no assertion that Defendants actually received the money from his copays, and for good reason,

37

because it would be clearly baseless. Simply put, there is no viable claim here and Count 61 should be dismissed.

D.      Plaintiff's Renewed Motion to Remand [ECF No. 38]

After filing the Amended Complaint, Plaintiff filed a Renewed Motion to Remand Counts 46-50 to state court. [ECF No. 38]. Defendant English filed a Motion for Extension to Respond [ECF No. 39], and a Proposed Response in opposition to the Motion to Remand. [ECF No. 39-1]. Defendant has shown excusable neglect for missing the deadline to respond, so the Undersigned will grant Defendant's Motion and accept the Proposed Response without the need to refile it.

In the Renewed Motion to Remand, Plaintiff asks the Court to remand Counts 46-50 against Defendant A. Weiss to state court, because they allegedly do not arise out of the same transaction or occurrence and do not contain a common nucleus of facts with the other claims in this case. Defendant opposes remand of these claims, arguing that because the Undersigned denied Plaintiff's previous Motion to Remand [ECF No. 6] as moot after Ordering Plaintiff to file an amended complaint [ECF No. 29], that the Court has "accepted" jurisdiction of this case and Plaintiff is really seeking reconsideration of the Order pursuant to Fed. R. Civ. P. 59 or 60. Defendant's arguments miss the mark, and Counts 46-50 should be remanded.

Plaintiff's first Motion to Remand was denied as moot because once he was ordered to amend, there was no operative complaint to remand to state court. [ECF No. 29]. This was not a decision on the merits of Plaintiff's original Motion to Remand, as Defendant suggests.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority

of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citation and internal quotation marks omitted). The party invoking a federal court's jurisdiction has the burden of establishing subject matter jurisdiction. *See Kokkonen*, 511 U.S. at 378.

"Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Id*. "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented." *Id*. "[Subject matter jurisdiction] is not dispensed in gross. Rather, a plaintiff must demonstrate [subject matter jurisdiction] for each claim he seeks to press." *Davis v. FEC*, 554 U.S. 724, 734 (2008).

Upon review of the Amended Complaint and the Renewed Motion to Remand, Plaintiff's Counts 46-50 all arise under state law, and Plaintiff originally alleged that the Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a). However, Plaintiff now contends that this was in error, and that Plaintiff's allegations against A. Weiss, a food service employee at Okeechobee C.I. who he claims negligently allowed insects to be in the food he was served, have nothing to do with the violent incidents that took place at Okeechobee C.I. and the other fifteen Defendants. Plaintiff is correct, and these incidents seem wholly separate.

Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Here, Plaintiff's claims of negligence and emotional distress against a food service employee who served food with insects in it have nothing to do with his claims that a variety of guards at Okeechobee C.I. beat and

sodomized him in retaliation for being a jailhouse lawyer and making repeated grievances and lawsuits against other law enforcement personnel. As such, Counts 46-50 do not qualify for supplemental jurisdiction, and should be remanded to state court.

### III.    Recommendations

Based on the above, it is **RECOMMENDED** that the Amended Complaint [ECF No. 37] **PROCEED IN PART** and be **DISMISSED IN PART** as follows:

a) Count 1 should proceed against Harris, Romulus, Wells, Maguire, Cruzado, Barron, McClure, Ortiz, Christman, and be dismissed as to Rembert, and Eschevarria;

b) Counts 2, 3, 4, and 5 should proceed;

c) Counts 6 and 7 should proceed against Maguire, but be dismissed as to Harris, Wells, Barron, McClure, Ortiz, Cruzado, and Christman;

d) Counts 8, 9, 10, 11, 12, 13, and 15 should proceed;

e) Count 14 should proceed against Maguire, but be dismissed as to Harris, Wells, Barron, McClure, Cruzado, Ortiz, and Christman;

f) Counts 16, 17, and 18 should proceed;

g) Count 19 should proceed in part against Harris, Wells, Echevarria, Rembert, McClure, and Rembert, but be dismissed against Bhadja, Ortiz, Brown, and Barron;

h) Count 20 should be dismissed without prejudice;

i) Count 22 should be dismissed;

j) Counts 23, 24, and 27 should be dismissed;

k) Count 25 should be dismissed;

l) Count 26 should be dismissed;

m) Counts 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, and 40 should proceed;

n)  Counts 32 and 44 should proceed;

o)  Count 41 should proceed;

p)  Count 45 should be dismissed;

q)  Counts 42 and 63 should be dismissed;

r)  Counts 51, 52, 53, 54, and 62 should be dismissed;

s)  Count 55 should proceed;

t)  Counts 56, 57, and 58 should proceed;

u)  Count 59 should proceed against Maguire, but be dismissed against Harris and Barron;

v)  Count 60 should be dismissed; and

w)  Count 61 should be dismissed.

In addition, it is further **RECOMMENDED** that Plaintiff's Renewed Motion to Remand [ECF No. 38] be **GRANTED**, and Counts 46, 47, 48, 49, and 50 should be **REMANDED** to the Circuit Court of the Nineteenth Judicial Circuit in and for Okeechobee County, Florida. Defendant's motion for extension of time to respond to Plaintiff's Renewed Motion to Remand [ECF No. 39] should be **DENIED** as moot.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020) (quoting 11th Cir. R. 3-1 (2016)); *see also* 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 30th day of June, 2021.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **All Counsel of Record via CM/ECF**; and

     **Reginal L. Holston**
     L27714
     Charlotte Correctional Institution
     Inmate Mail/Parcels
     33123 Oil Well Road
     Punta Gorda, FL 33955
     *PRO SE*